FILED

2014 AUG 27 AM 8:03

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ 96 _____ DEPUTY

1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| CROSSFIT, INC., a Delaware corporation,<br><br>        Plaintiff,<br><br>v.<br><br>NATIONAL STRENGTH AND CONDITIONING ASSOCIATION, a Colorado corporation,<br><br>        Defendant. | **CASE NO.  14cv1191-JLS(KSC)**<br><br>**ORDER REGARDING ELECTRONIC DISCOVERY**<br><br>Judge:    The Honorable Janis L. Sammartino<br><br>        The Honorable Karen S. Crawford |

The Court, after considering the parties' Joint Motion for Entry of the Order Regarding Electronic Discovery, hereby grants the motion.  Accordingly, it is hereby ordered that the following Order Regarding Electronic Discovery will govern the production of material in this case:

## **DEFINITIONS**

1.     The "Litigation" means the case captioned above.

2.     "Electronically Stored Information" or "ESI" carries its broadest possible meaning consistent with Fed. R. Civ. P. 34(a) and Fed. R. Evid. 1001.

3.    "Paper Discovery" means any document or thing discoverable under Fed. R. Civ. P. 26(b)(l) and Fed. R. Civ. P. 34 that cannot be characterized as ESI.

4.    "Document" carries its broadest meaning consistent with Fed. R. Civ. P. 34 and includes both ESI and Paper Discovery.

5.    "E-mail" means an electronic means for communicating written information through non-telephone systems that will send, store, process and receive information.

6.    "Format" means the internal structure of a file, which defines the way it is stored and used.

7.    "Native Format" means the format of ESI in the application in which such ESI was originally created.

8.    "Non-Custodial Data Source" means a system or container that stores ESI, but over which an individual custodian does not organize, manage, or maintain the ESI in the system or container, such as an enterprise system or database.

9.    "Party" or "Parties" means Plaintiff Crossfit, Inc. ("CrossFit")  and Defendant The National Strength and Conditioning Association ("NSCA").

10.    "Producing Party" means a Party that produces documents.

11.    "Receiving Party" means a Party to whom documents are produced.

12.    "Responsive Document" means any document, excluding source code, that is responsive to any document requests served on the Producing Party in

the Litigation that the Producing Party has agreed to produce or that the Producing Party has been ordered to produce by the Court.

13.     "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images, with multiple compression formats and resolutions.

## SOURCES

14.     The procedures and protocols set forth in this Stipulated Order shall govern the production of Responsive Documents between the Parties in the Litigation.  Any practice or procedure set forth herein may be varied only by further written agreement of all of the Parties.

15.     Notwithstanding anything to the contrary herein, the following document types are not discoverable in the Litigation except upon a showing of good cause:

(a)     Recorded voice messages, including voice-mail in the Avaya Voice Player (.lvp) or WAVE (.wav) file formats.

(b)     Instant messaging communications, including Skype communications.

(c)     Back-up tapes or other long-term storage media that were created strictly for use as a data back-up or disaster recovery medium.

(d)     Temporary data stored in a computer's random access memory (RAM), or other ephemeral data that are difficult to preserve without disabling the operating system.

(e)     Deleted, slack, fragmented or other data only accessible by forensics.

(f)     On-line access data such as temporary Internet files, history, cache, cookies, and the like.

(g)     Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

(h)     Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

(i)     Logs of calls made from mobile devices.

(j)     Server, system, or network logs.

(k)     Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

(l)     Data remaining from systems no longer in use that is unintelligible on systems in use.

## PRIVILEGE

16.     Pursuant to Federal Rule of Evidence 502(d), if in connection with the Litigation documents or information subject to a claim of attorney-client privilege or work product protection are disclosed ("Disclosed Information") by a party (the "Disclosing Party"), the disclosure of such Disclosed Information shall not constitute or be deemed a waiver of any claim of attorney-client privilege or work product protection that the Disclosing Party would otherwise be entitled to assert with respect to the Disclosed Information and its subject matter. Any applicable privileges or protections shall only be waived on express written approval by the person or entity holding the privilege.  The non-waiver of claims of attorney-client privilege and work product protection shall apply to the litigation pending before the Court as well as any other federal or state proceeding.

17.     If a claim of disclosure is made by the Disclosing Party with respect to Disclosed Information, the party that received the Disclosed Information (the "Receiving Party") shall, within five business days of receiving notice of the claim of disclosure, return, delete, or destroy the Disclosed Information and delete or destroy the portions of all work product that reflect or are derived from such Disclosed Information, including all copies thereof, and shall make no use of any kind of such Disclosed Information and work product.

18.     If a Receiving Party knows or should reasonably know that it has received  Disclosed Information, it shall promptly sequester such  Disclosed Information and refrain from using both it and the portions of all work product that

reflect or are derived from such Disclosed Information.  The Receiving Party shall promptly notify the Disclosing Party of the existence of such Disclosed Information in order to permit the Disclosing Party to take protective measures as outlined above.  Upon request by the Disclosing Party, the Receiving Party shall comply with the procedures described in Paragraphs 17-18 above.

19.    Nothing in this Order shall limit the Receiving Party's right to challenge (on grounds unrelated to the fact or circumstances of the disclosure) the Disclosing Party's claim that  Disclosed Information is protected from disclosure by the attorney-client privilege or work product doctrine.  If, after undertaking an appropriate meet-and-confer process, the parties are unable to resolve any dispute they have concerning the protection of documents for which a claim of Disclosure has been asserted, the Receiving Party may file the appropriate motion or application as provided by the Court's procedures to compel production of such material.  Any Disclosed Information submitted to the Court in connection with a challenge to the Disclosing Party's claim of attorney-client privilege or work product protection shall not be filed in the public record, but rather shall be redacted, filed under seal, or submitted for *in camera* review.

20.    The terms of this Stipulated Order shall apply to all Disclosed Information disclosed during the course of the litigation pending before the Court, including Disclosed Information disclosed prior or subsequent to the entry of this Stipulated Order.

21. Nothing in this Stipulated Order shall waive or limit any protections afforded the parties under Federal Rule of Evidence 502.

## PRESERVATION

22. The relevant time period for collection and production of documents is January 1, 2008 through the date the Complaint was filed. Parties shall preserve data from as early as January 1, 2008 to the extent such data still exists on an active data source and subject to the exception listed in Paragraph 16 above.

23. Preservation of potentially relevant ESI shall be reasonbable and proportionate. The Producing Party shall take reasonable steps to collect and process documents using methods that avoid spoliation of data. Provided that the Parties take reasonable steps to comply with this Stipulated Order, the Parties will not seek sanctions on a party for failing to produce ESI lost inadvertently.

## PRODUCTION FORMAT:
## ELECTRONICALLY STORED INFORMATION

24. **Load files.** Except where noted below, all ESI is to be produced in electronic format, with file suitable for loading into a Concordance-compatible litigation support review database. All productions will include both image and metadata load files, with the load file in the format described in Appendix A.

25. **Metadata Fields and Processing.** Each of the metadata and coding fields set forth in Appendix B that can be extracted from a document shall be

produced for that document. The Parties are not obligated to populate manually any of the fields in Appendix B if such fields cannot be extracted from a document, with the exception of the CUSTODIAN, VOLUME, and TIMEZONEPROCESSED, which shall be populated by the Producing Party.

26.     **System Files.** Common system and program files need not be processed, reviewed or produced.

27.     **Email.** Email shall be collected in a manner that preserves all original metadata and maintains the folder and source information identifying the original location.

28.     **De-Duplication.** The parties agree to remove exact duplicate ESI across custodians (*i.e.,* globally).

29.     **TIFFs.** Single-page Group IV TIFF images shall be provided using at least 300 DPI print setting. Each image shall have a unique file name, which is the Bates number of the document. Original document orientation shall be maintained (*i.e.,* portrait to portrait and landscape to landscape). TIFFs will show any and all text and images which would be visible to the reader using the native software that created the document. Documents containing color need not be produced initially in color. However, if an original document contains color necessary to understand the meaning or content of the document, the producing party will honor reasonable requests for a color image of the document.

30. **Embedded Objects.** Non-image files embedded within documents will be extracted as separate documents and treated like attachments to the document in which they were embedded. Image files embedded within documents, such as signature blocks, shall not be extracted as separate documents.

31. **Compressed files.** Compression file types (i.e., .CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files. The container file itself shall not be produced.

32. **Text Files.** For each document, a single text file shall be provided along with the image files and metadata. The text file name shall be the same as the page Bates/control number of the first page of the document. File names shall not have any special characters or embedded spaces. Electronic text must be extracted directly from the native electronic file unless the document was redacted, an image file, or a physical file. In these instances a text file created using OCR will be produced in lieu of extracted text.

33. **Redaction.** If a file that originates in ESI needs to be redacted before production, the file will be rendered in TIFF, and the TIFF will be redacted and produced. However, to the extent that the text is searchable in the native format, the producing party will still provide searchable text for those portions of the document that have not been redacted.

34.   **Spreadsheets and PowerPoints.** Various types of files, including but not limited to MS Excel spreadsheets, MS PowerPoint documents, media files, Microsoft documents with embedded media files, documents with "macros", etc., lose significant information and meaning when produced as an image.  Any native files that are produced shall be produced with a Bates-numbered TIFF image slip-sheet stating the document has been produced in native format.  Any native files that are produced shall be produced with the Source File Path provided, as well as all extracted text and applicable metadata fields set forth in Appendix B.

a.   **Spreadsheets.** Excel spreadsheets shall be produced as a native document file along with the extracted text and relevant metadata identified in Appendix B for the entire spreadsheet, plus a Bates-numbered TIFF image slip-sheet stating the document has been produced in native format.

b.   **Microsoft PowerPoint or slide programs.** PowerPoint documents shall be processed with hidden slides and all speaker notes unhidden, and shall be processed to show both the slide and the speaker's notes on the TIFF image. If PowerPoint versions are not produced as native files, then (a) color PowerPoint documents shall be converted to color JPG images, and (b) black and white PowerPoint documents shall be converted to black and white TIFF images, provided however proper grayscale printing shall be enabled to ensure that any dark colored text will not be hidden from view by other dark objects/drawings around the text.

35.   **Other ESI that is Impractical to Produce in Traditional Formats (including Structured Data).** The Parties understand and acknowledge that certain categories of ESI are structurally complex and do not lend themselves to

production as native format or other traditional formats. To the extent a response to discovery requires production of discoverable electronic information contained in a database, the Parties shall negotiate appropriate parameters for querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file (for example, Excel, CSV or SQL format).

36.     **Endorsements.** The Producing Party will brand all TIFF images in the lower right-hand corner with their corresponding bates numbers, using a consistent font type and size.  The bates number must not obscure any part of the underlying data. The Producing Party will brand all TIFF images in the lower left-hand corner with all confidentiality designations, as needed, in accordance with confidentiality definitions as agreed to by the Parties.

37.     **Password-Protected Files.** To the extent any produced documents are password-protected, the Producing Party must either unlock the document prior to production or provide passwords in order to allow access by the Receiving Party.  If the Producing Party is unable to process a document because of unknown passwords or other encryption that cannot be cracked using reasonable standard means, the Producing Party shall provide the Receiving Party with an exception report listing such documents.

38.     **ESI of Limited Accessibility**.  If a Producing Party contends that any responsive ESI is not reasonably accessible within the meaning of Fed. R. Civ. P. 26(b)(2)(B), that Party shall timely identify such ESI with reasonable particularity

and shall provide the Receiving Party with the basis for declining to produce such ESI, including but not limited to information about the nature of any limitations on access, the likely costs that might be incurred in producing such ESI, the method used for storage of such ESI (e.g., the type of system used to store the ESI) and the places in which such ESI is kept. The parties shall negotiate in good faith concerning the production of any such ESI.

39. Notwithstanding the foregoing, a Producing Party may produce ESI materials that were produced as TIFF image files in a prior litigation in the same manner as they were produced in that litigation. A Receiving Party make seek re-production of any such ESI in accordance with the processing specifications above, provided the ESI is available to the Producing Party and the request is made for good reason.

## PRODUCTION FORMAT: HARD COPY DOCUMENTS

40. **TIFFs.** Hard copy paper documents shall be scanned as single page, Group IV compression TIFF images using a print setting of at least 300 dots per inch (DPI). Each image shall have a unique file name, which is the Bates number of the document. Original document orientation shall be maintained (i.e., portrait to portrait and landscape to landscape).

41. **Metadata Fields.** The metadata fields listed in Appendix B shall be produced for hard copy documents and provided in the data load file at the same time that the TIFF images and the Optical Character Recognition (OCR)-acquired

text files are produced. Each metadata field shall be labeled as listed in Appendix B.

42. **OCR Acquired Text Files.** When subjecting physical documents to an OCR process, the settings of the OCR software shall maximize text quality over process speed. Any settings such as "auto-skewing," "auto-rotation" and the like should be turned on when documents are run through the process.

43. **Database Load Files/Cross-Reference Files.** Documents shall be provided with (a) a delimited metadata file (.dat or .txt) and (b) an image load file (.opt), as detailed in Appendix A.

44. **Unitizing of Documents.** In scanning paper documents, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records *(i.e.,* paper documents should be logically unitized). In the case of an organized compilation of separate documents - for example, a binder containing several separate documents behind numbered tabs - the document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the beginning and ending document and attachment fields. The Parties will make their best efforts to unitize documents correctly.

## LIMITATIONS ON PRODUCTION

45. The Parties will endeavor to produce documents in a reasonably timely manner and in accordance with the timelines set forth in the Federal Rules

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER REGARDING ELECTRONIC DISCOVERY
CASE NO.  14cv1191-JLS(KSC)

of Civil Procedure.  The Parties recognize, however, that strict adherence to those requirements may not be possible in all situations and with all data.  Production in the Litigation is anticipated to be conducted on a rolling basis with Parties making reasonable efforts to expedite the process.  If either Party feels production has been unreasonably delayed, the Parties agree to confer via telephone or in person to reach a mutually agreeable consensus prior to court involvement.

46.     Except where a specific exception has been noted in writing, a Party shall not be obligated to preserve, collect or produce ESI that is in the actual possession or custody of a non-party to the Litigation.

## PRIVILEGE LOG

47.     Consistent with Federal Rules of Civil Procedure, a Party withholding or redacting any Responsive Document on the grounds of privilege, immunity or any similar claim shall provide to the Receiving Party a log except that:

    a.     the Parties shall have no obligation to log information generated after the time the Litigation was commenced;

    b.     The Parties shall have no obligation to log correspondence sent exclusively between in-house attorneys acting as counsel and outside counsel; and

    c.     activities undertaken in compliance with the duty to preserve information (including, but not limited to, litigation hold letters) are protected from disclosure under Fed. R. Civ. P. 26(b)(3)(A) and (B).

48.     For each document withheld or redacted, the Privilege Log shall contain the following information: (i) the date of the document; (ii) the identity of

all persons who sent, authored, signed or otherwise prepared the document; (iii) the identity of all persons designated as addressees or copyees; (iv) a description of the contents of the document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the document and the basis of the claim of privilege or immunity; (vi) the type or nature of the privilege asserted (e.g., attorney-client privilege, work product doctrine, etc.); and (vii) for redacted documents only, the bates numbers corresponding to the first and last page of any document redacted.

49.     To the extent email is  included and described on the privilege log, any email chain (i.e., a series of emails linked together by email responses and forwarding) that is withheld or redacted on the grounds of privilege, immunity or any similar claim may be logged as a single entry and identified by the most recent (i.e., top-most) email.  The Parties shall not be required to break up an email chain and log each individual email separately.  If, however, email contained within a given chain exists as a separate document, then the Parties shall log that document in accordance with this Paragraph.  If an email chain contains one or more privileged emails requiring redaction, the email chain may be logged as a single entry and identified by the most recent redacted email.

50.     Each member of a family (i.e., email attaching memorandum) that is withheld or redacted on the grounds of privilege, immunity or any similar claim shall be identified on the log separately.

1

2       51.   The Court may modify this Order in the interests of justice or for

3   public policy reasons.

4   Date: _Aug. 26_____, 2014

5

6

7                                              _____

8                                              KAREN S. CRAWFORD
                                               United States Magistrate Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## APPENDIX A: REQUESTED LOAD FILE FORMAT FOR ESI

**1. Delimited Text File**: A delimited text file (DAT File) containing the fields listed in 3(a)(v) should be provided. The delimiters for the file should be Concordance defaults:

Comma - ASCII character 20 ( )

Quote -  ASCII character 254 (þ)

Newline - ASCII character 174 (®)

**2. Image Cross-Reference File (Opticon Load File)**: The Opticon cross-reference file is a comma delimited file consisting of six fields per line. There must be a line in the cross-reference file for every image in the database. The format for the file is as follows:

ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount

- ImageID: The unique designation that Concordance and Opticon use to identify an image. This should be the Bates number of the document.

- VolumeLabel: The name of the volume.

- ImageFilePath: The full path to the image file.

- DocumentBreak: If this field contains the letter "Y," then this is the first page of a document. If this field is blank, then this page is not the first page of a document.

- FolderBreak: Leave empty.

- BoxBreak: Leave empty.

- PageCount: Number of pages in the document.

Sample Data

MT 00000001,BOX100,E:\100\ MT00000001.TIF,Y,,5

MT 00000002, BOX100,E:\100\ MT00000002.TIF,,,,

MT 00000003, BOX100,E:\100\ MT00000003.TIF,,,,

MT 00000004, BOX100,E:\100\ MT00000004.TIF,,,,

MT 00000005, BOX100,E:\100\ MT00000005.TIF,,,,

MT 00000006, BOX100,E:\100\ MT00000006.TIF,Y,,1

## APPENDIX B: REQUESTED METADATA FIELDS

### A. FOR ESI

| FIELD NAME | EXAMPLE/FORMAT | DESCRIPTION |
|---|---|---|
| **PRODBEG** | ABC0000001 (Unique ID) | The Document ID number associated with the first page of a document. |
| **PRODEND** | ABC0000003 (Unique ID) | The Document ID number associated with the last page of a document. |
| **PRODBEGATTACH** | ABC0000001 (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |
| **PRODENDATTACH** | ABC0000008 (Unique ID Parent-Child Relationships) | The Document associated with the last page of the last attachment. |
| **PGCOUNT** | 3 (Numeric) | The number of pages for a document. |
| **CUSTODIAN** | | The custodian / source of a document. **Note:** If the documents are de-duped on a global level, this field will contain the name of each custodian from which the document originated. |
| **VOLUME** | VOL001 | The name of CD, DVD or Hard Drive (vendor assigns). |
| **MASTERDATE** | MM/DD/YYYY | The date the email was sent. **NOTE:** For attachments to emails, this field should be populated with the date sent of the email transmitting the attachment. |
| **MASTERTIME** | HH:MM | The time the email was sent. |
| **CREATEDATE** | MM/DD/YYYY | The date the document was created. |
| **CREATETIME** | HH:MM | The time the document was created. |
| **LASTMODDATE** | MM/DD/YYYY | The date the document was last modified. |
| **LASTMODTIME** | HH:MM | The time the document was last modified |
| **RECEIVEDDATE** | MM/DD/YYYY | The date the document was received. |
| **RECEIVEDTIME** | HH:MM | The time the document was received. |
| **TIMEZONEPROCESSED** | PST, CST, EST, etc | The time zone the document was processed in. **NOTE:** This should be the time zone where the documents were located at time of collection. |
| **EDSOURCE** | i.e. Joe Smith/email/Inbox Joe Smith/email/Deleted Items Joe Smith/Loose Files/Accounting/... Joe Smith/Loose Files/Documents and | Location of the original document. The source should be the start of the full path. |

| FIELD NAME | EXAMPLE FORMAT | DESCRIPTION |
|---|---|---|
|  | Settings/... |  |
| **AUTHOR_EDOC** | jsmith | The author of a document from entered metadata. |
| **AUTHOR_EMAIL** | Joe Smith <jsmith@email.com> | The display name and email of the author of an email. If only email is given, then just list the email address. An email address should always be provided for every document. |
| **RECIPIENT** | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the recipient(s) of an email. If only email is given, then just list the email address. An email address should always be provided for every document. |
| **CC** | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the copyee(s) of an email. If only email is given, then just list the email address. An email address should always be provided for every document. |
| **BCC** | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the blind copyee(s) of an email. If only email is given, then just list the email address. An email address should always be provided for every document. |
| **TITLE_EDOC** |  | The extracted document title of a document. |
| **UNREAD** | TRUE or FALSE | Y if an email is unread, N if it has been read. This value is blank for attachments and non email documents. |
| **IMPORTANCE** | 0 or 1 or 2 | email Importance Flag (0 = Normal, 1 = Low Importance, 2 = High importance |
| **ATTACHCOUNT** | Numeric | The number of attachments to a document. |
| **FILEEXT** | .doc, .xls | The file extension of a document. |
| **FILENAME** | Document Name.xls | The file name of a document. |
| **FILEDESCRIP** | MS Word, MS Excel, etc. | Application used |
| **FILESIZE** | Numeric | The file size of a document (including embedded attachments). |
| **MD5HASH** |  | The MD5 or SHA Hash value or "de-duplication key" assigned to a document. |
| **NATIVELINK** | D:\NATIVES\ABC000001.xls | The full path to a native copy of a document. |
| **FULLTEXT** | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate Unicode text file per |

| FIELD NAME | EXAMPLE / FORMAT | DESCRIPTION |
|---|---|---|
| | | document. These text files should be named with their bates numbers. **Note**: emails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided |

## B. FOR HARD-COPY DOCUMENTS

| FIELD NAME | EXAMPLE / FORMAT | DESCRIPTION |
|---|---|---|
| PRODBEG | ABC0000001 (Unique ID) | The Document ID number associated with the first page of a document. |
| PRODEND | ABC0000003 (Unique ID) | The Document ID number associated with the last page of a document. |
| PRODBEGATTACH | ABC0000001 (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document (if applicable). |
| PRODENDATTACH | ABC0000008 (Unique ID Parent-Child Relationships) | The Document associated with the last page of the last attachment (if applicable). |
| PGCOUNT | 3 (Numeric) | The number of pages for a document. |
| VOLUME | VOL001 | The name of CD, DVD or Hard Drive (vendor assigns). |
| CUSTODIAN | | The custodian / source of a document. **Note:** If the documents are de-duped on a global level, this field will contain the name of each custodian from which the document originated. |