LATHAM & WATKINS LLP
  Daniel Scott Schecter (Bar No. 171472)
  *daniel.schecter@lw.com*
355 South Grand Avenue
Los Angeles, California  90071-1560
Telephone:  (213) 485-1234
Facsimile:   (213) 891-8763

LATHAM & WATKINS LLP
  David F. Kowalski (Bar No. 265527)
  *david.kowalski@lw.com*
12670 High Bluff Drive
San Diego, California 92130
Telephone:  (858) 523-5400
Facsimile:   (858) 523-5450

LATHAM & WATKINS LLP
  Blair Connelly (Bar No. 174460)
  *blair.connelly@lw.com*
  William O. Reckler (pro hac vice)
  *william.reckler@lw.com*
  Paul A. Serritella (pro hac vice)
  *paul.serritella@lw.com*
885 Third Avenue
New York, New York 10022-4834
Telephone:  (212) 906-1200
Facsimile:   (212) 751-4864

Attorneys for Plaintiff CrossFit, Inc.

MANNING & KASS, ELLROD, RAMIREZ, TRESTER LLP
  Kenneth S. Kawabata (Bar No. 149391)
  *ksk@manningllp.com*
550 West C Street, Suite 1900
San Diego, California 92101
Telephone:  (619) 515-0269
Facsimile:   (619) 515-0268

MANNING & KASS, ELLROD, RAMIREZ, TRESTER LLP
  Anthony J. Ellrod (Bar No. 136574)
  *aje@manningllp.com*
801 S Figueroa St., 15th Floor
Los Angeles, California 90017
Telephone:  (213) 624-6900
Facsimile:   (213) 624-6999

Attorneys for Defendant National Strength & Conditioning Association

JOINT MOTION FOR DETERMINATION OF
CONFIDENTIALITY DESIGNATION DISPUTE

1

2

3

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

4

| | |
|---|---|
| CROSSFIT, INC., a Delaware corporation,<br><br>           Plaintiff,<br><br>    v.<br><br>NATIONAL STRENGTH AND CONDITIONING ASSOCIATION, a Colorado corporation,<br><br>           Defendant. | **CASE NO.  14cv1191-JLS(KSC)**<br><br>**JOINT MOTION FOR DETERMINATION OF CONFIDENTIALITY DESIGNATION DISPUTE**<br><br>Judge:     The Honorable Janis L. Sammartino<br><br>                  The Honorable Karen S. Crawford<br><br>Courtroom:  4A |

Pursuant to the Chamber Rules and Civil Pretrial Procedures of the Honorable Karen S. Crawford (the "Chamber Rules"), Plaintiff CrossFit, Inc. ("CrossFit, Inc." or "Plaintiff") hereby petitions the Court for resolution of a discovery dispute arising out of Defendant National Strength and Conditioning Association's ("NSCA" or "Defendant") designation of certain documents as "CONFIDENTIAL" under the Protective Order (Dkt. No. 14) in this case.

A.     **CONFIDENTIALITY DESIGNATIONS**

    **(1)**     Plaintiff's Contention:  Defendant Has Improperly Designated Certain Documents As "CONFIDENTIAL"

          1.     Factual Background

Defendant NSCA competes with CrossFit, Inc. in the fitness industry.  This case relates to an article Defendant published in November 2013 in its Journal of Strength and Conditioning Research (the "JSCR").  (Complaint, Dkt. No. 1, ¶¶ 4-5 (May 12, 2014).)  That article, entitled "Crossfit-based high intensity power

training improves maximal aerobic fitness and body composition" (the "Devor Article", Serritella Decl., Ex. 1.), purports to detail the results of a study conducted at The Ohio State University of a CrossFit training program. (*Id.* ¶ 38.)  The Devor Article contains false statements, including a claim that eleven participants "dropped out of the training program" and that nine of those participants cited "overuse or injury for failing to complete the program and finish follow-up testing." (*Id.* ¶ 43.)  Those statements have been repeatedly used to attack CrossFit, Inc. in the market.  (*Id.* ¶¶ 58-63.)

The falsity of the Devor Article is a central issue in this case.  The NSCA has maintained that it is not responsible for the content of the Devor Article, which was prepared by researchers at The Ohio State University, and which was subjected to a "rigorous" peer review process before it was published.  Revised Rule 26(f) Statement, Dkt. No. 18, at 3 (Sept. 5, 2014); *see also* Answer, Dkt. No. 9, ¶ 22 (June 17, 2014) ("NSCA admits that it publishes scientific, peer-reviewed journals.")  The NSCA has also stated this position publicly, in the form of a press release stating in relevant part:

> As with all research published in NSCA's journals, the
> article in question was authored by independent
> researchers and was accepted for publication following a
> rigorous peer-review process.  While NSCA has no
> opinion on the validity or invalidity of claims made in the
> article or the criticism of same being leveled by CrossFit,
> NSCA has full confidence that the review and
> publication processes for research published in NSCA
> journals is beyond reproach.

"NSCA Responds to CrossFit Lawsuit" (July 2014) at http://www.nsca.com/about-us/news-and-media/press-releases/nsca-responds-to-crossfit-lawsuit/.  The NSCA doubled down on this position last month, issuing

1    another press release touting the independence of the research published in its

2    journals:

3              Articles submitted for publication in the JSCR must first

4              go through a thorough double blind peer review process.

5              This process prevents authors and reviewers from

6              knowing each other's identity, thereby reducing potential

7              bias based on personal information.  The peer review

8              process invites experts in relevant areas of research to

9              evaluate the research study for scientific merit, to ask

10             rigorous questions, to clarify any gaps in the research

11             methodology, or address any oversight regarding the

12             current body of knowledge.

13   "NSCA Update to CrossFit Inc [sic] Claims and Allegations" at

14   http://www.nsca.com/articles/nsca-update-to-crossfit-lawsuit/.

15        The NSCA has thus portrayed itself both in this lawsuit and to the general

16   public as a neutral, unbiased publisher of "independent" third-party research for

17   which it bears no responsibility.  CrossFit, Inc., however, contends that the NSCA

18   in fact manipulated the editorial and peer review process to ensure that the Devor

19   Article contained negative statements about its competitor.  (Compl. ¶ 4.)

20        Both parties have produced various documents.  Under the Protective Order,

21   documents designated as "CONFIDENTIAL" may not be made public and can

22   only be shared in this litigation with specific enumerated groups of people.

23   (Protective Order ¶¶ 9, 12.)  A party may designate a document as

24   CONFIDENTIAL "only if, in the good faith belief of such party and its counsel,

25   the unrestricted disclosure of such information could be potentially prejudicial to

26   the business or operations of such party."  (*Id.* ¶ 4(a).)

27        The NSCA has designated as CONFIDENTIAL a large volume of the

28   documents it has produced thus far in the case.  Ten of those documents (the

1   "Challenged Documents") are the subject of this motion.  The Challenged

2   Documents belie the NSCA's repeated and public assertions that it was merely a

3   passive publisher of "independent," third-party research.  The Challenged

4   Documents (along with others obtained from third-parties) show that in fact, the

5   NSCA manipulated the process to ensure that the Devor Article contained negative

6   statements about CrossFit that would undermine the researchers' otherwise

7   positive findings.

8        The Challenged Documents consist of the following:



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 ██████████

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

**JOINT MOTION FOR DETERMINATION OF
CONFIDENTIALITY DESIGNATION DISPUTE**

1  
2  
3  
4  
5  
6  
7  
8  
9  
10  
11  
12  
13  
14  
15  
16  
17  
18  
19  
20  
21  
22  
23  
24  
25  
26  
27  
28

1 ████████████████████████████████████████████

2 ████████████████████████████████████████

3 █████████████████████████████████████████

4 ██████████████████████████████████

5 * * * * *

6      Pursuant to the Protective Order, CrossFit, Inc. notified the NSCA on March

7 30, 2015 that it believed the Challenged Documents were improperly designated as

8 CONFIDENTIAL, and requested that the NSCA remove such designations.  (*Id.* at

9 ¶ 12 & Ex. 12.)  The NSCA disagrees and refuses to do so, forcing CrossFit, Inc. to

10 seek Court intervention to remove those improper designations.  (*Id.* at ¶¶ 13-14 &

11 Ex. 13.)

12      2.    Legal Analysis

13      The public is presumed to have the right to "access litigation documents and

14 information produced during discovery."  *Phillips v. Gen. Motors Corp.*, 307 F.3d

15 1206, 1210 (9th Cir. 2002); *Collegesource, Inc. v. Academyone, Inc.*, 2013 U.S.

16 Dist. LEXIS 46250, at *2-3 (S.D. Cal. Mar. 29, 2013) ("There is a presumptive

17 right of public access to court records based upon the common law and the first

18 amendment.").  A limited exception exists when nondisclosure is necessary to

19 "protect sensitive confidential information."  *Collegesource*, 2013 U.S. Dist.

20 LEXIS 46250, at *3.

21      A party that seeks to shield a document from public view bears the burden of

22 establishing "good cause" for its confidentiality designation.  *Father M. v. Various*

23 *Tort Claimants (In re Roman Catholic Archbishop of Portland in Or.)*, 661 F.3d

24 417, 424 (9th Cir. 2011).  Good cause only exists where "particularized harm will

25 result from disclosure of information to the public."  *Id.*  This standard cannot be

26 met by "[b]road allegations of harm, unsubstantiated by specific examples or

27 articulated reasoning."  *Id.* (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d

28 470, 476 (9th Cir. 1992)).  Rather, the party opposing disclosure bears the burden

1   to "allege specific prejudice or harm." *Id.*  In a case "[w]here a business is the

2   party seeking protection, it will have to show that disclosure would cause

3   significant harm to its competitive and financial position." *Contratto v. Ethicon,*

4   *Inc.*, 227 F.R.D. 304, 307 (N.D. Cal. 2005).  Only if Defendant meets its burden of

5   establishing particular harm does the court then "balance[] the public and private

6   interests to decide whether a protective order is necessary." *Phillips v. General*

7   *Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002).

8           a.      The NSCA Cannot Show That It Would Suffer

9                   "Particular Harm" From The Disclosure Of The

10                  Challenged Documents.

11          There is no basis to shield the Challenged Documents from public

12   disclosure, as the NSCA cannot meet its threshold burden of showing particular

13   harm.  The documents do not contain information that, if disclosed, is "potentially

14   prejudicial to the business or operations" of the NSCA, as required under the

15   Protective Order.  (Protective Order, ¶ 4(a).)  The Devor Article has already been

16   published, so there is no way that the NSCA could suffer competitive or financial

17   harm by disclosure of drafts, comments, and submission emails related to the

18   Devor Article.  Indeed, (i) the drafts of the Devor Article are work product of

19   authors from The Ohio State University, where the study was conducted, not the

20   NSCA, (ii) the comments to the Devor Article are largely the work product of the

21   peer reviewers, not the NSCA, and (iii) the entirety of the Devor Article relates to a

22   study of CrossFit, so it is unfathomable how the NSCA could suffer particularized

23   harm from the disclosure of these documents.

24          Moreover, disclosure of the Challenged Documents would not result in

25   disclosure of sensitive confidential information because much of the information

26   contained in these documents is already publicly available.  CrossFit, Inc. received

27   documents from The Ohio State University in response to a request under Ohio's

28   Public Records Act.  (*See* Serritella Decl., Ex. 14.)  Among these is a document

1   containing the same "Editorial Office Comments" set forth in Ms. Kraemer's
2   November 23, 2012 communication, including her instruction that the injury data
3   is "very important" and "needs to be emphasized."  (*Compare id.*, Ex. 16 with *id.*,
4   Ex. 11.)  Another document received through Ohio's Public Records Act is the
5   initial draft of the Devor Article submitted on June 14, 2012.  (*Id.* at Ex. 15.)  Yet
6   the NSCA seeks to shield from public view another document containing the very
7   same content, as well as earlier drafts and similar comments regarding the same
8   article, and even the email sent by the JSCR on June 15, 2012 confirming receipt
9   of the initial submission (*id.*, Exs. 2-3, 6, 9), on the grounds that they are
10  purportedly CONFIDENTIAL materials.  There can be no credible assertion that
11  the Challenged Documents are trade secrets that should be hidden from public
12  view, given that much of the relevant content of those documents is *already*
13  *publicly available*.
14          The NSCA has provided no valid reason for designating the documents as
15  CONFIDENTIAL.  The only explanation it has provided for that designation is
16  that the drafts of the Devor Article and the emails concerning it "are not public
17  documents," that its Editorial Manager program "is accessed by user name and
18  password" and "reflects the internal workings of editing process by the JSCR," and
19  that those "processes" are "not intended for public use."  (Serritella Decl., Ex. 14.)
20  But that says nothing more than that the NSCA would prefer to keep the
21  documents private:  It does not in any way show that the documents reflect
22  *proprietary trade secrets* that actually merit such protection under the law.  Nor is
23  the NSCA's "process" somehow proprietary.  The fact that the NSCA submits
24  articles to editors and peer reviewers is not a secret at all, let alone a legally
25  protected trade secret.  That general process is common to peer-reviewed journals
26  and the NSCA itself has described that "process" in its press releases.  Nor is there
27  anything proprietary about the fact that the NSCA uses a website with a password
28  to communicate with authors and peer reviewers.  In any event, the fact that some

of these communications are already publicly available should end the inquiry. *See Medtronic Sofamor Danek USA, Inc., v. Nuvasive, Inc.*, No. 08-cv-1512, 2009 WL 8590869, at *2-3 (S.D. Cal. Aug. 13, 2009) (holding that documents derived from and containing publically available information are not confidential, and rejecting party's assertion that public information had become protectable and private by virtue of the party's "unique analysis and application"); *Contratto*, 227 F.R.D. at 312 (denying motion to uphold confidential designations, noting that portions of the documents are publically available or concern publically available information).

The real reason the NSCA has tried to hide the Challenged Documents by designating them as CONFIDENTIAL is because they shed light on the NSCA's shoddy editorial and peer review process, through which the JSCR's editors and peer reviewers pressured the Devor Article's authors to include data showing that participants were injured, even though none were, and commentary warning about the "risks" of CrossFit. (*See* Ex. 4 (an email to the lead editor suggesting that the Devor Article be revised to convey that CrossFit makes participants "fit but at what cost[?]"); Exs. 9 & 10 ("I think it would be prudent to disclose the rate of injury and the reasons from dropout from the protocol."); Ex. 7 ("You also need to caution readers as to the context of your findings due to the fact that many people do get injured doing these types of workouts."); Ex. 11 ("A major concern is brought out in your subjects section as to overuse potential for these workouts as too much too soon . . . . This is very important and needs to be emphasized as this is a major issue with the C[ross]F[it] training and a concern for those who use it.").) Indeed, the NSCA refused to withdraw the designations precisely because it is concerned that CrossFit, Inc. could then use the documents "to publish disparaging and harmful material … to attack and discredit the NSCA." (Serritella Decl., Ex. 13.)

1    However, a "desire to avoid public scrutiny of potentially embarrassing

2    company records is insufficient justification for the protection sought, particularly

3    when the natural consequence of Defendants' designations may result in the

4    litigation being conducted behind closed doors, through filings under seal, and

5    outside the view of the public." *In re Lifescan Consumer Litig.*, 1999 U.S. Dist.

6    LEXIS 9894, at *10 (N.D. Cal. June 23, 1999); *see Welsh v. City & County of San

7    Francisco*, 887 F. Supp. 1293, 1297 (N.D. Cal. 1995) ("Mere embarrassment by

8    the release of information is insufficient to constitute serious harm.").  The NSCA

9    cannot meet its burden to show particularized harm that would result from public

10   disclosure of the Challenge Documents, and therefore the confidentiality

11   designations should be stricken.

12                    b.       The Public Interest In Knowing The Truth Outweighs

13                             The NSCA's Interest In Avoiding Embarrassment.

14   Because Defendant cannot carry its burden to demonstrate harm, the Court

15   need not balance the interest in disclosure against Defendant's confidentiality

16   interest.  *See Phillips*, 307 F.3d at 1211.  However, even if the Court were to reach

17   that issue, that analysis favors disclosure.  The factors considered in this analysis

18   include:

19                    (1) whether disclosure will violate any privacy interests;

20                    (2) whether the information is being sought for a

21                    legitimate purpose or for an improper purpose; (3)

22                    whether disclosure of the information will cause a party

23                    embarrassment; (4) whether confidentiality is being

24                    sought over information important to public health and

25                    safety; (5) whether the sharing of information among

26                    litigants will promote fairness and efficiency; (6) whether

27                    a party benefitting from the order of confidentiality is a

28

1    public entity or official; and (7) whether the case

2        involves issues important to the public.

3  *Father M.*, 661 F.3d at 424 n. 5 (citing *Glenmede Trust Co. v. Thompson*, 56 F.3d

4  476, 483 (9th Cir. 1995)).

5        Here, disclosure of this information will not violate any privacy interests.

6  As noted above, the NSCA published the Devor Article in the JSCR one-and-a-half

7  years ago and has refused to retract the Devor Article since then, and the editorial

8  process of that article reflects only the non-personal work of the authors and peer

9  reviewers.[1]  On the other side of the ledger, disclosure here is entirely legitimate in

10 that the Devor Article's false data depicts CrossFit as dangerous, a contention that

11 has been given credence in the marketplace because the JSCR masquerades as an

12 objective, peer-reviewed journal.  CrossFit, Inc. continues to be damaged with each

13 day that the Devor Article's false statements remains unrefuted in the public

14 domain.  The only way to minimize that ongoing harm is to allow the public to see

15 the documents that reveal the NSCA's true role in promoting the Devor Article's

16 false injury data.[2]

17        Confidentiality also does a disservice to the public, which is being led to

18 believe that CrossFit-based exercise programs, which demonstrably provide health

19 benefits, are unreasonably risky and should be a source of concern.  Moreover, to

20 the extent that the JSCR purports to be an academic journal that only publishes

21 "independent" third-party research (as the NSCA has claimed in its press releases),

---

23 [1]  The only persons with a legitimate privacy interest here are the study participants; however,
24 the Challenged Documents do not disclose any additional non-public personal information
beyond the information already published in the Article.

25 [2]  The NSCA complains that CrossFit, Inc. "has utilized information obtained either through
filings or discovery in this case in an effort to publish disparaging and harmful materials,
26 articles, comments, blogs, etc. in social media and on the internet" (Kawabata Decl., ¶ 6), and
yet the examples the NSCA cites do not support this statement.  The postings and video the
27 NSCA links to discuss information that came from CrossFit, Inc.'s own emails and
publically-filed affidavits—not information obtained from the NSCA's document
28 productions or filings.  *See id.* at ¶ 7.

the public has an interest in understanding how the NSCA's editorial process shapes its content, so that the public may assess the credibility of that content for itself.

Finally, disclosure of the Challenged Materials will increase the fairness and efficiency of the litigation process by simplifying the filing and submission of materials:  The de-designation of these materials reduces the need for sealing documents, and proceeding in closed court, merely to protect the supposedly confidential peer review process related to the Devor Article.

The only factor weighing against disclosure is the potential embarrassment to the NSCA, whose shoddy peer review process and direct manipulation of the Devor Article's contents to serve its agenda may be exposed.  However, that embarrassment is a consequence only of the NSCA's own actions and is a necessary consequence of its publication of false data that it has continued to defend despite the absence of any evidence.  Standing alone, this element does not mitigate in favor of non-disclosure.

For the foregoing reasons, the Court should grant an order striking the confidentiality designations from the Challenged Documents.

**(2)**   Defendant's Response

It is apparent that CrossFit desires to try this case in the public arena rather than in a court of law.  The subject of this joint motion (this is a motion brought and pursued by CrossFit; however, pursuant to Chamber Rules the format of a "joint motion" is utilized) is the remove the "Confidential" designation to ten emails and other documents that have been produced by the NSCA in response to the demands for production of documents.  Thus, CrossFit has these documents and pursuant to the Protective Order, such documents are to be used for the legitimate purposes of this litigation.

Pursuant to the Protective Order, the NSCA has the right to designate certain documents as "Confidential" if it deems, in good faith, that unrestricted disclosure

1   of such information could be potentially prejudicial to the business or operations of

2   such party.  (Protective Order, para. 4(a)).  The documents at issue relate to drafts

3   of the manuscript submitted by author Michael Smith and certain emails contained

4   within the Editorial Manager that is part of the Journal of Strength and

5   Conditioning Research's ("JSCR") database for the editing process of submitted

6   manuscripts.  (See Declaration of Kenneth S. Kawabata, para. 4).

7        The emails are part of an internal database utilized by the NSCA's Journal of

8   Strength and Conditioning research ("JSCR").  The emails are part of the Editorial

9   Manager in which submitting authors may correspond with the editors of the JSCR

10  with regard to submitted manuscripts.  The documents contained within the

11  editorial manager are confidential documents, not disclosed to or accessible by the

12  public.  In order to access the editorial manager, the submitting author is assigned a

13  user name and passcode in order to access the database in order to correspond

14  within the editorial manager.  The NSCA has never intended any of the contents of

15  the editorial manager to be accessible to the public at large.  Rather, the editorial

16  manager is designed to enable the editorial process to go forward with regard to

17  submitted manuscripts to the JSCR.

18       CROSSFIT desires to make these emails public by having the designation

19  "confidential" removed from said documents.  These documents have already been

20  produced to counsel for CROSSFIT; thus, the issue is not that the NSCA has not

21  produced these documents, but rather, CROSSFIT wishes for these documents to

22  become public so that CROSSFIT can use these documents in order to further its

23  own agenda, both in general, and with relation to the attacks on the NSCA in this

24  litigation.

25       The factors outlined in Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483

26  (3rd Cir. 1995) [cited in Father D. v. Various Tort Claimants (In Re: Roman

27  Catholic Archbishop of Portland in Oregon), 661 F.3d 417, 424] are applicable in

28  the instant case.  Those factors are:  (1) whether disclosure will violate any privacy

1   interests; (2) whether the information is being sought for a legitimate purpose or

2   for an improper purpose; (3) whether the disclosure of the information will cause a

3   party embarassment; (4) whether confidentiality is being sought over information

4   important to public health and safety; (5) whether the sharing of information

5   among litigants will promote fairness and efficiency; (6) whether a party

6   benefitting from the order of confidentiality is a public entity or official; and (7)

7   whether the case involves issues important to the public.  Id.

8        Here, there is no issue of public interest whatsoever.  CrossFit is seeking

9   damages arising from a private dispute between two entities.  The disputed article

10  is a scholarly submission related to a private study by a member of the Ohio State

11  University.  As noted by the NSCA, the disputed documents are contained in a

12  private database for which access is allowed only to the submitting author and

13  which requires a user name and password.  The contents of the Editorial Manager

14  are not available to the public.  It is clear CrossFit will utilize these documents to

15  promote its own agenda to continue to disparage and discredit the NSCA outside

16  the confines of the legitimate legal process.

17       These attacks by CrossFit in the social media must stop.  As it has escalated

18  in recent months, CrossFit has demonstrated no legitimate purpose in using

19  information obtained through the discovery process.  It is clear that CrossFit

20  wishes to use such materials obtained in discovery in order to further its agenda to

21  attach and discredit the NSCA, not for legitimate purposes in regards to this

22  litigation, but rather as a method to attack and disparage the NSCA in social media.

23  Such attacks are at the very least potentially prejudicial and harmful to the business

24  and operations of the NSCA.  NSCA respectfully requests that the Court deny

25  CrossFit's motion to have the "Confidential" designations to those NSCA

26  documents withdrawn.

27

28              Respectfully submitted,

1    Dated: April 20, 2015

2
3    LATHAM & WATKINS LLP                 MANNING & KASS, ELLROD,

        RAMIREZ, TRESTER LLP
4

5
     By: ___/s/_Paul A. Serritella_____    By: ___/s/ Kenneth S. Kawabata _
6        Paul A. Serritella                      Kenneth S. Kawabata
         (*pro hac vice*)                         (Bar No. 149391)
7

8        885 Third Avenue                         550 West C Street, Suite 1900
         New York, New York 10022-4834            San Diego, CA 92101
9        Telephone:  (212) 906-1200               Telephone:  (619) 515-0269
         Facsimile:    (212) 751-4864             Facsimile:    (619) 515-0268
10       *paul.serritella@lw.com*                  *ksk@manningllp.com*

11       *Counsel for Plaintiff CrossFit,*         *Counsel for Defendant National*
         *Inc.*                                   *Strength & Conditioning*
12                                               *Association*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT MOTION FOR DETERMINATION OF
CONFIDENTIALITY DESIGNATION DISPUTE**

1
2          Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative
3     Policies and Procedures of the United States District Court for the Southern
4
5     District of California, I certify that the content of this document is acceptable to
6     counsel for the Defendant and that I have obtained authorization from Kenneth S.
7     Kawabata to affix his electronic signature to this document.
8
9
10                                         ____/s/  Paul A. Serritella_____
11                                            Paul A. Serritella
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JOINT MOTION FOR DETERMINATION OF
CONFIDENTIALITY DESIGNATION DISPUTE**

**PROOF OF SERVICE**

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

CROSSFIT, INC. v. NATIONAL STRENGTH AND CONDITIONING

ASSOCIATION,

District Court Case No. 14-cv-1191-JLS(KSC)

I, Paul A. Serritella, hereby certify that I am over the age of eighteen and not a party to the within action; I am employed by Latham & Watkins LLP in the County of New York at 885 Third Avenue, New York, New York 10022.

On April 20, 2015, I served the document below described as:

**JOINT MOTION FOR DETERMINATION OF CONFIDENTIALITY DESIGNATION DISPUTE**

The document(s) was/were served by the following means:

- **BY ELECTRONIC TRANSMISSION VIA NEF:** I hereby certify that I electronically filed the foregoing document(s) with the Clerk of Court using the CM/ECF system, which sent Notifications of Electronic Filing to the persons at the e-mail addresses listed immediately below. Accordingly, pursuant to the Court's Local Rule 5.4(c), I caused the document(s) to be sent electronically to the persons listed immediately below.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 20, 2015 at New York, New York.

___/s/ Paul A. Serritella___

Paul A. Serritella

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SERVICE LIST**

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

CROSSFIT, INC. v. NATIONAL STRENGTH AND CONDITIONING
ASSOCIATION,

District Court Case No. 14-cv-1191-JLS(KSC)

MANNING & KASS, ELLROD, RAMIREZ, TRESTER LLP

Kenneth S. Kawabata

ksk@manningllp.com

550 West C Street

Suite 1900

San Diego, California 92101

Telephone:  (619) 515-0269

Facsimile:    (619) 515-0268


Anthony J. Ellrod

aje@manningllp.com

801 S Figueroa St., 15th Floor

Los Angeles, California 90017

Telephone:  (213) 624-6900

Facsimile:    (213) 624-6999