# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CROSSFIT, INC., a Delaware Corporation,<br><br>            Plaintiff,<br><br>    vs.<br><br>NATIONAL STRENGTH AND CONDITIONING ASSOCIATION, a Colorado Corporation,<br><br>            Defendant. | CASE NO. 14-CV-1191 JLS (KSC)<br><br>**ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE ELEMENT OF FALSITY**<br><br>(ECF No. 38) |

Presently before the Court is Plaintiff CrossFit, Inc.'s ("CrossFit") Motion for Partial Summary Judgment on the Element of Falsity. (MSJ, ECF No. 38.) Also before the Court is Defendant National Strength and Conditioning Association's ("NSCA") Opposition (Opp'n, ECF No. 42) and CrossFit's Reply. (Reply, ECF No. 45.) The motion hearing set for April 2, 2015 was vacated and the matter taken under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). Having considered the Parties' arguments and the law, the Court **DENIES WITHOUT PREJUDICE** Plaintiff's motion for partial summary judgment.

## BACKGROUND

CrossFit is a San Diego-based fitness company with approximately 10,000 affiliate gyms around the world, 90,000 certified CrossFit trainers, and more than one

million participants. (MSJ 3, 5, ECF No. 38.) CrossFit gains a substantial portion of its revenue certifying trainers in the CrossFit method. (*Id.* at 5.)

One of CrossFit's competitors is the NCSA, which is one of the largest certifiers of personal trainers and strength and conditioning trainers in the United States. (*Id.*) The NCSA owns the Journal of Strength and Conditioning Research (the "Journal"). (*Id.*) In November 2013, the NCSA published an article in the Journal about CrossFit's effectiveness. (*Id.*) The article was primarily based on a study conducted by Steven Devor (the "Devor Study"), a Professor at The Ohio State University.

The Devor Study analyzed the effects of a CrossFit affiliate gym's exercise program, called the "Challenge," on its participants. (*Id.* at 7.) Specifically, participants in the Challenge were asked to take part in testing before and after the Challenge to measure their body composition and aerobic capacity. (*Id.* at 7–8.)

The article found that CrossFit was highly effective, however it stated, "of the 11 subjects who dropped out of the training program, two cited time concerns with the remaining nine subjects (16% of the total recruited subjects) citing overuse or injury for failing to complete the program." (Devor Article, ECF No. 41-2 at 13.) The article stated that this "notable percentage" "may call into question the risk-benefit ratio for such extreme training" and that CrossFit-based programs "may not be worth the risk of injury and lost training time." (*Id.* at 16–17.) CrossFit investigated these claims and determined that the underlying data was inaccurate. (MSJ 8–9, ECF No. 38.) However, despite CrossFit's objections, the NCSA published the article. (*Id.* at 9.) These assertions were republished by numerous media outlets.[1] (*Id.* at 8.)

On May 12, 2014, CrossFit filed a Complaint against the NCSA, alleging that the article's statement that nine participants dropped out of the Devor Study due to injury or overuse was false. (Complaint, ECF No. 1.) CrossFit brings claims for false

---

[1] Outside Magazine published an article titled "Is CrossFit Killing Us?" citing the Devor article for the troubling Statistic that 16% of the participants in that study had quit due to overuse or injury. In December 2014, The Guardian published an article titled "Exercise, Which Regimes are Worth the Pain?" citing the Devor Article.

advertising under the Lanham Act (15 U.S.C. § 1125(a)), false advertising under the California Business and Professions Code § 17500, and unfair competition under the California Business and Professions Code § 17200. (*Id.*)

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), a party may move for summary judgment as to a claim or part of each claim. Summary judgment is appropriate on an element of a claim where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." *Id.* When the Court weighs the evidence to be presented by the parties, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Id.* at 255.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. When a Plaintiff seeks summary judgment as to an element for which it bears the burden of proof, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

Once the moving party satisfies this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "by her own affidavits, or by the depositions, answers to

interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *Discenzo v. Hardin Trucking*, 2014 U.S. Dist. LEXIS 136508 at *3 (S.D. Cal., Sept. 26, 2014). Furthermore, the nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256. The nonmoving party must identify those facts of record that would contradict the facts identified by the movant.

## ANALYSIS

CrossFit's Complaint contains four claims: (1) false advertising under the Lanham Act; (2) false advertising under the California Business and Professions Code; (3) unfair competition under the California Business and Professions Code; and (4) a request for declaratory judgment.

CrossFit contends that falsity is an element of each of these claims. To demonstrate falsity under either the Lanham Act or the California Business and Professions Code, "a Plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997); *Cleary v. News Corp.*, 30 F.3d 1255, 1263 (9th Cir. 1994).

CrossFit requests that the Court grant its motion with respect to falsity based on the evidence available at this stage in the litigation. Crossfit contends that it has obtained sworn declarations from all but two of the nine participants that *could have been* those who dropped out due to injury or overuse. (MSJ 6, ECF No. 41.) Each of those declarants stated that they were not injured as part of their participation in the Challenge and that they did not tell anyone that they were injured as part of the Challenge. (*Id.*) Accordingly, CrossFit contends that there is no issue of triable fact on the element of falsity because it is undisputed that the statements regarding the injury data were false.

### 1. Testing Data

Crossfit's arguement is predominantly based on testing data it obtained from Ohio State University in response to a subpoena for information related to the Devor Study. Michael M. Smith was personally involved in gathering and producing documents in response to the subpoena as well as conducting the Devor Study.[2] (Smith Decl., ECF No. 41-2 at 45.) The first spreadsheet provided in response to the subpoena documents the pre-testing and post-testing data for participants ("Data Spreadsheet"). (Smith Decl., Ex. 1, ECF No. 41-2 at 49.) The second spreadsheet documents the calculations subsequently done with the testing data ("Calculations Spreadsheet"). (Smith Decl., Ex. 2, ECF No. 41-2 at 51.)

The Data Spreadsheet has pre-testing data for 55 participants, however there is no post-testing data for ten of those participants: Participant Nos. 9, 22, 33, 34, 37, 43, 47, 48, 50, and 54. (*See* Smith Decl., Ex. 1, ECF No. 41-2 at 49.)  Each of those ten participants are also excluded from the calculations subsequently performed with the data as shown by the Calculations Spreadsheet. (*See* Smith Decl., Ex. 2, ECF No. 41-2 at 51.) In addition, two participants, Nos. 26 and 53, have post-testing data in the Data Spreadsheet, however they were excluded from the calculations subsequently performed with the data as shown by the Calculations Spreadsheet. (*See* Smith Decl., Ex. 1, 2, ECF No. 41-2 at 49, 51.) CrossFit contends that these twelve participants not included in the Calculations Spreadsheet are the Participants whose information was not used to complete the study. (MSJ 10–11, ECF No. 41; Smith Decl., ECF No. 41-2 at 45.)

---

[2] NSCA objects to portions of Smith's Declaration: Exhibit C, page 35, line 6 through page 36, line 11 and pages 37–40.  NSCA states that Smith never stated in his declaration that the documents he discusses were produced as part of the OSU subpoena, created as part of the Devor study, or in relation to the preparation of the article at issue in this suit. (Obj 9, ECF No. 42.) Accordingly, NSCA argues that the statement is hearsay and there is no foundation for the exhibits. (*Id.*)  NSCA states that Smith offers no testimony with respect to how the exhibits were prepared, where the information in the exhibits came from, or assurances that the information is accurate. (*Id.*)  Thus, NSCA argues the spreadsheets are inadmissible as business records. The Court overrules this objection because at this stage in the proceedings, the evidence need not be presented in a form that would be admissible at trial, it is sufficient that the evidence could be submitted in admissible form at trial. *Hughes v. United States*, 953 F.2d 531, 543 (9th Cir. 1992); F.R.C.P. 56(c)(4).

The Devor Article states that out of the original 54 participants,[3] 43 individuals (23 males, 20 females) fully completed the study. (Devor Article, ECF No. 41-2 at 13.) The Calculations Spreadsheet is consistent with the article and includes data from 43 individuals (23 males, 20 females). (*See* Smith Decl., Ex. 2, ECF No. 41-2 at 51.)

Chelsea Rankin was the study coordinator at the CrossFit affiliate gym during the Devor Study. (Rankin Decl., ECF No. 41-2 at 53.) As part of the study, Ms. Rankin assigned each individual a unique participant number. (*Id.*) As part of her declaration, Ms. Rankin attached a copy of an email she sent to Michael Smith which lists the participant names and their associated numbers.[4] (*Id.*) Using this list and the Calculations Spreadsheet, CrossFit identified the names of each of the twelve participants whose data was not used in the study and whose numbers are missing from the Calculations Spreadsheet.

CrossFit attempted to obtain declarations from each of these 12 participants, however 2 individuals did not agree to participate.[5] (MSJ 12, ECF No. 41.) Of the ten sworn declarations CrossFit obtained, each person stated the reason they dropped out of the Devor Study. (MSJ, Exs. E–N, ECF No. 41-2 at 58–103.) None of the participants stated their reason as injury or overuse as part of the Challenge. A summary of the declarations follow.

---

[3]There is a minor discrepancy here. The Devor Article states that there were originally 54 participants while the spreadsheet shows 55 original participants. Additionally, an email from Chelsea Rankin shows 56 Participants' names and numbers.

[4]NSCA objects to portions of Rankin's Declaration: Exhibit D, Paragraph 4 and Exhibit 1. NSCA states that the email attached to the declaration is inadmissible hearsay. (Obj 10, ECF No. 42.) NSCA argues that Rankin offers no testimony with respect to how the exhibit was prepared, where the information in the exhibit came from, or assurances that the information is accurate. (*Id.*) Thus, NSCA argues the list would not be admissible as a business record. The Court overrules this objection because at this stage in the proceedings, the evidence need not be presented in a form that would be admissible at trial, it is sufficient that the evidence could be submitted in admissible form at trial. *Hughes v. United States*, 953 F.2d 531, 543 (9th Cir. 1992); F.R.C.P. 56(c)(4).

[5]The Court makes no inferences about the two individuals CrossFit identified who chose not to submit a declaration.

| PARTICIPANT | DECLARATION |
|---|---|
| 9 | Completed Challenge, however did not attend second round of testing due to other commitments |
| 22 | Coach at gym, not a participant in the Challenge. Completed first round of testing out of curiosity. |
| 26 | Completed Challenge, however did not complete second round of testing because he left early. |
| 33 | Did not complete the Challenge because she moved out of state before it ended. |
| 34 | Did not complete the Challenge because of work-related time commitments. |
| 37 | Completed the Challenge and attended the second round of testing. Unclear why data not used in study. |
| 43 | Coach at gym, not a participant in the Challenge. Completed first round of testing out of curiosity. |
| 47 | Did not complete the Challenge because of pre-existing health condition not caused by Challenge. |
| 48 | N/A |
| 50 | N/A |
| 53 | Completed the Challenge and attended the second round of testing. Unclear why data not used in study. |
| 54 | Did not complete the Challenge because of weight-lifting injury sustained outside of the Challenge. |

### 2. Plaintiff's Burden of Proof

CrossFit argues that the unambiguous false message conveyed by the article is that 16% of the participants dropped out due to injury or overuse. (MSJ 18, ECF No. 41.) First the article states that 16% of the subjects dropped out citing overuse or injury. (Devor Article, ECF No. 41-2 at 13.) Next, it notes that a unique concern of CrossFit-type programs is overuse injury followed by a citation to the 16% dropout in the study. (*Id.* at 16–17.) CrossFit contends that the message that nine individuals failed to complete the challenge due to injuries or overuse is literally false as discussed below. (MSJ 19, ECF No. 41.)

CrossFit argues that discovery has shown that there are only twelve participants whose data was not used in the study. (*Id.*) Ten of those twelve participants have submitted sworn declarations that they were not injured as part of the Challenge. (*Id.*) Each of these declarants deny telling anyone that they failed to complete the testing due to injury or overuse. (*Id.*) CrossFit contends that these declarations show that two participants dropped out from injuries unrelated to the Challenge; two finished the Challenge and completed testing; two finished the Challenge, but were unable to complete testing; one did not complete the Challenge because she moved out of state; one did not complete the Challenge due to time commitments; and the last two were coaches at the gym and were not actually participants in the Challenge. (MSJ 12, ECF No. 41.) The only two participants who cited an injury stated that the injuries were unrelated to the Challenge, and that they did not recall telling the Devor authors their reasons for not completing the challenge. (*Id.* at 19–20.) Accordingly, CrossFit argues that it has satisfied its burden of proving that the following statement was false: "nine subjects (16% of the total recruited subjects) cit[ed] overuse or injury for failing to complete the program." (MSJ 17, ECF No. 41.)

The Court finds that CrossFit has satisfied its burden of showing an absence of material fact with respect to the falsity of that statement. The Court finds convincing CrossFit's analysis that there were only twelve participants whose data was not used in the Calculations Spreadsheet and Study. The evidence further shows that eight of these twelve participants did not complete the study for reasons other than injury or overuse. Accordingly, based on the evidence CrossFit presented, it would be impossible for there to be nine participants who dropped out due to overuse or injury. Because CrossFit has met its burden of proving no genuine issue of material fact, the burden shifts to NSCA to show the existence of a triable issue. (*Id.* at 21.)

**3. Defendant's Arguments**

As a preliminary matter, NSCA states that CrossFit "appears to have defined the 'element of falsity' as its claim that two specific statements in the article" were false.

(Opp'n to MSJ 4, ECF No. 42.) Accordingly, because CrossFit failed to discuss one of the statements in its motion for summary judgment, NSCA argues that CrossFit has failed to meet its burden. (*Id.* at 7–8.) However, it is clear from CrossFit's briefing that the present Motion addresses only the statement that "of the 11 subjects who dropped out of the training program, two cited time concerns with the remaining nine subjects (16% of the total recruited subjects) citing overuse or injury for failing to complete the program." (Devor Article, ECF No. 41-2 at 13.) There is no requirement that CrossFit establish the falsity of both statements, and a ruling with respect to one statement would have no effect on the other.

Next, NSCA contends that the Court should either deny the motion because CrossFit has failed to show an absence of material fact under F.R.C.P. 56(a) or alternatively, the Court should exercise its discretion under F.R.C.P. 56(d) to deny, defer, or continue the hearing due to NSCA's inability to defend itself by presenting evidence in opposition at this time.

**A.     *Absence of Material Fact***

First, NSCA maintains that summary judgment is improper because CrossFit has not established the statement's falsity or shown a lack of genuine dispute as to falsity. (Opp'n to MSJ 4, ECF No. 42.) NSCA argues that CrossFit has no admissible basis for making the assertion that it has obtained declarations from all but two of the nine subjects referred to in the statement. (*Id.* at 9.) However, as discussed above, the Court may appropriately consider the declarations of Smith and Rankin as evidence at this stage of the proceedings.

Next, NSCA takes issue with CrossFit's combination of the Smith and Rankin declarations to create a list of twelve people that, CrossFit argues, necessarily includes the nine participants referenced in the allegedly false statement. (*Id.* at 10.) NSCA disagrees with this characterization of the evidence and argues that the testimony offered in the ten declarations "conclusively proves that at least some of these people could not have been the persons referred to" in the statement at issue. (*Id.*)

1  Specifically, NSCA argues that the persons referenced in the statement must have been
2  participants in the program who failed to complete the program and did not show up
3  for follow-up testing. (*Id.* at 11.) NSCA states that because six of the identified
4  persons do not meet these criteria, "there is either an error in the list of names and
5  participant numbers in Ms. Rankin's E-mail, or in the data included in the two exhibits
6  attached to Mr. Smith's declaration." (*Id.*) However, this argument necessarily
7  assumes the accurateness of the statement which is directly at issue in this case. In
8  addition, aside from the twelve participants that CrossFit identified as omitted from the
9  Calculations Spreadsheet, an analysis of the evidence shows that the other participants
10 all completed the Devor Study and went through the follow-up testing.

11     Further, NSCA argues that the participants could have indicated to anyone, at
12 any time, in any manner, the reason they left the program. (*Id.* at 12.) Accordingly,
13 just because the declarations state that those participants did not tell a specific person
14 the reason for dropping out, does not mean the statement at issue is necessarily false.
15 (*Id.* at 11–12.) NSCA argues that the only way to conclusively establish the falsity
16 would be to offer declarations from every participant to show that the statement did not
17 refer to other participants. (*Id.*) However, the Court does not find this argument
18 convincing absent actual evidence explaining the factual basis for the statement at
19 issue. Based on the evidence presently before the Court, eight of the potential twelve
20 participants have denied telling anyone that they failed to complete the testing due to
21 injury or overuse.

22     Accordingly, the Court agrees with CrossFit that it has met its burden of proving
23 no triable issue of material fact and the burden shifts to NSCA to set forth specific facts
24 showing that there is a genuine issue for trial.

25 **B.   *NSCA's Inability to Provide Evidence Disputing the Motion***

26     NSCA contends that due to the premature nature of plaintiff's motion, "it would
27 be impossible for the defendant to offer such evidence at this time." (*Id.*) Although
28 NSCA believes that CrossFit "seems to be taking a great deal of liberty with its

interpretation and presentation of the facts" it contends that it is unable to respond to the merits of the motion. (*Id.* at 5.) Accordingly, NSCA asks the Court to deny, defer, or continue the hearing on Plaintiff's motion pursuant to Federal Rule of Civil Procedure 56(d).

Under Rule 56(d), the Court may defer or deny ruling on a summary judgment motion where the non-moving party shows by affidavit or declaration that, "for specified reasons, it cannot present facts essential to justify its opposition." In addition, Rule 56(d) provides that the Court may allow time to obtain affidavits or declarations or to take discovery; or issue any other appropriate order. "The requesting party must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). District courts should grant a Rule 56(d) motion "fairly freely" where a summary judgment motion is filed before a party has had a realistic opportunity to pursue discovery relevant to its theory of the case. *Burlington Northern Santa Fe R. Co. v. Assinboine and Sioux Tribes of Fort Peck Reservation,* 323 F.3d 767, 773 (9th Cir. 2003). Continuance of a motion for summary judgment for the purposes of discovery should be granted almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence. *Id.*

NSCA attached a Declaration from its counsel, Steven Renick, explaining what depositions he believes are necessary prior to being able to substantively respond to the motion. (*See* Renick Decl., ECF No. 42-3.) Renick states that NSCA needs to take the following depositions prior to substantively opposing CrossFit's Motion: (1) Steven Devor, Michael Smith, Allan Sommer, and Brook Starkoff, the individuals who authored the article; (2) the agents and employees of CrossFit who identified the individuals who dropped out of the study and confirmed that they did not do so because of overuse or injury; (3) the owner of Ohio Fit Club where the Challenge took place; (4) the agents and employees of CrossFit to whom the owner of Ohio Fit Club allegedly

1  identified the individuals who dropped out of the study and confirmed that they did not
2  do so because of overuse or injury; (5) the CrossFit representative who contacted a
3  sample of those who dropped out to confirm they dropped out for reasons other than
4  injury; (6) Russel Berger, who had a phone call with Steven Devor who allegedly made
5  admissions; and (7) possibly all of the participants in the program. (*Id.*)

6  NSCA contends that in light of the number of depositions that need to be completed, the Court should exercise its discretion to deny or defer consideration of the motion. (Opp'n 14, ECF No. 42.) The Court finds that Defendant has sufficiently identified the specific facts it seeks from further discovery related to (1) whether CrossFit accurately identified the individuals and (2) whether those individuals in fact made statements with respect to overuse or injury. NSCA contends that the information in these depositions could show a triable issue of fact as to whether the statements at issue were false. (Renick Decl., ECF No. 42-3.) Further investigation of this issue could play an important role in NSCA's defense in this case. Further, the discrepancies between the data and the article suggest that there may be a credible foundation for Defendant's discovery requests. NSCA further states that it cannot produce this evidence because the depositions have yet to take place as the discovery deadlines have not yet passed. (*Id.*) NSCA argues that fairness requires that it be permitted to obtain testimony and evidence to allow it to contest the Motion on its merits. (Opp'n 14, ECF No. 42.)

21  Accordingly, in light of Defendant's briefing and associated declaration, the Court finds that the appropriate course of action is to permit Defendant the opportunity to take discovery as to these issues before having to oppose the motion for summary judgment. Therefore, the Court **DENIES WITHOUT PREJUDICE** Plaintiff's Motion as premature under F.R.C.P. 56(d).

26  ///
27  ///
28  ///

**CONCLUSION**

For the reasons stated above, the Court **DENIES WITHOUT PREJUDICE** Plaintiff's Motion for Partial Summary Judgment on the Element of Falsity.

**IT IS SO ORDERED.**

DATED: July 20, 2015

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge