1  LATHAM & WATKINS LLP
   Daniel Scott Schecter (SBN 171472)
2  *daniel.schecter@lw.com*
   David F. Kowalski (SBN 265527)
3  *david.kowalski@lw.com*
   355 South Grand Avenue
4  Los Angeles, CA  90071
   Telephone:   (213) 485-1234
5  Facsimile:   (213) 891-8763

6  LATHAM & WATKINS LLP
   David F. Kowalski (Bar No. 265527)
7  *david.kowalski@lw.com*
   12670 High Bluff Drive
8  San Diego, CA 92130
   Telephone:   (858) 523-5400
9  Facsimile:   (858) 523-5450

10 LATHAM & WATKINS LLP
   Blair Connelly (SBN 174460))
11 *blair.connelly@lw.com*
   William O. Reckler (admitted *pro hac vice*)
12 *william.reckler@lw.com*
   Paul A. Serritella (admitted *pro hac vice*)
13 *paul.serritella@lw.com*
   885 Third Avenue
14 New York, NY  10022
   Telephone:   (212) 906-1658
15 Facsimile:   (212) 751-4864

16 Micha "Mitch" Danzig (SBN 177923)
   mdanzig@mintz.com
17 Justin Nahama (SBN 281087)
   jsnahama@mintz.com
18 Abbey Jahnke (SBN 302454)
   ajahnke@mintz.com
19 MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC
   3580 Carmel Mountain Road, Suite 300
20 San Diego, CA  92130
   Telephone:   (858) 314-1500
21 Facsimile:   (858) 314-1501

22 *Attorneys for Plaintiff*
   *CROSSFIT, INC.*
23

24 MANNING & KASS, ELLROD, RAMIREZ, TRESTER LLP
   Kenneth S. Kawabata (Bar No. 149391)
25 *ksk@manningllp.com*
   550 West C Street, Suite 1900
26 San Diego, California 92101
   Telephone:   (619) 515-0269
27 Facsimile:   (619) 515-0268

28

1                                                     Case No. 14CV1191 JLS KSC

MANNING & KASS, ELLROD, RAMIREZ, TRESTER LLP
Anthony J. Ellrod (Bar No. 136574)
*aje@manningllp.com*
801 S. Figueroa St., 15th Floor
Los Angeles, California 90017
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

*Attorneys for Defendant*
*NATIONAL STRENGTH AND CONDITIONING ASSOCIATION*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CROSSFIT, INC., a Delaware corporation,,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL STRENGTH AND CONDITIONING ASSOCIATION, a Colorado corporation,,<br><br>Defendant. | Case No. 14CV1191 JLS KSC<br><br>**JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**PARTIES' DECLARATIONS AND EXHIBITS FILED SEPARATELY IN SUPPORT THEREOF**<br><br>DATE: NONE SET<br>TIME: NONE SET<br>CRTRM: 4A |

TO THIS HONORABLE COURT:

The parties hereto jointly request the ruling of the Court on a protective order pursuant to FRCP Rule 45(d)(3)(A)(iii), protecting against disclosure of highly confidential financial information contained in contracts of Defendant, NATIONAL STRENGTH AND CONDITIONING ASSOCIATION, a Colorado corporation ("NSCA") with third-party Lippincott Williams & Wilkins ("LWW"), sought by Plaintiff CROSSFIT, INC., a Delaware corporation, pursuant to subpoena.

## I. NSCA'S ARGUMENT

### A. Background.

This dispute arises from a subpoena CrossFit served to LWW *nearly a year*

1 *ago*, on January 29, 2015. [Braga decl. ¶2; Exhibit A]

2     As is pertinent to this motion, the subject subpoena sought "all documents and communications concerning any partnerships, affiliations (whether formal or informal), or other relationship between [LWW] and the [NSCA]." CrossFit did not seek to enforce the subpoena until October 2015, after it served a subsequent notice of the 30(b)(6) deposition LWW.[1] At that point, LWW produced redacted versions of the publishing agreements between LWW and NSCA, without disclosing any confidential financial or revenue information [Braga decl.¶3; collectively Exhibit B] in October or November, 2015.

    NSCA did not and does not object to production of the subject documents in their redacted state, subject to the Joint Protective Order filed August 16, 2014. [Dkt 12] NSCA does object, however, to the disclosure of unredacted version of the subject documents as they are irrelevant, and contain sensitive and confidential information, namely, the payment by NSCA to LWW for its services under the publishing agreements and royalty payments by LWW to NSCA under the same. [Braga decl. ¶2; Exhibit A, pp. 7-8.] This is especially true given that this Court has noted that NSCA's financial business projections were confidential, subject to a right of privacy, and that disclosure of the same was not relevant to CrossFit's case. [Dkt 58] NSCA considers the publishing agreements to be confidential, private and irrelevant to any issue in this matter, and subject to the Court's Order. [Braga decl. ¶5]

    It was not until December 15, 2015 that counsel for NSCA became aware that CrossFit was demanding that LWW produce unredacted copies of the publishing agreements. Thereafter, counsel for NSCA wrote to counsel for CrossFit to advise that NCSA objected to its attempts to obtain disclosure of private financial

---

[1] The subsequent subpoena is not the subject of this motion. However, for the Court's reference it has been included to the Declaration of Brandon K. Braga as Exhibit E.

3      Case No. 14CV1191 JLS KSC

information from LWW. [Braga decl.¶6; Exhibit C]

NSCA met and conferred with both LWW—who did not want to obstruct any subpoena—and with CrossFit during January 2016. [Braga decl.¶7; collectively, Exhibit D] The parties reached an impasse on or about January 25, 2016, when CrossFit continued to demand the unredacted contracts and that NSCA seek judicial relief to prohibit LWW's production of the documents. [Braga decl. ¶ 8; Exhibit D]

Thus, this motion for protective order is timely, brought within 45 days of the event giving rise to the dispute, as contemplated by the Court's Chambers' Rules, Rule V. A. This protective order is sought as to the second October 2015 subpoena to LWW in which LWW produced the redacted publishing agreement(s) between NSCA and LWW, and is not, as CrossFit continues to argue, based upon the January 2015 subpoena..

### A. NSCA Has Not Controlled LWW

CrossFit erroneously contends that NSCA has "instruct[ed] a third-party…to not produce documents." [CrossFit's Argument "CA" 7] No evidence supports this statement, nor does CrossFit even attempt to point to any.

CrossFit contends that NSCA's publisher, LWW, also hosts a software program used to record the JSCR's peer review process, to which CrossFit wanted access. [CA 7-8] NSCA obtained the cooperation of LWW in order to comply with the Court's discovery order and provide the requested information. [Braga decl. ¶11.] CrossFit argues that this shows control over LWW. [CA 8] Not so. NSCA has worked with LWW to gather information. It has never told LWW what to do in response to a subpoena.

In fact, since CrossFit admits that NSCA never contacted LWW about the first January 2015 subpoena to LWW [CA 9], this shows that there was no instruction or direction whatsoever from NSCA to LWW as to how to respond. CrossFit did nothing.

The unredacted publishing agreements are subject to a motion to quash or for

a protective order on the grounds of that they involve private, confidential and irrelevant matters. NSCA is objecting to the subpoena based upon the grounds of "privileged or confidential" information, as contemplated in *Rankine Roller Bearing Co. of Am., Inc.*, 2013 U.S. Dist. LEXIS 109827, *12 (S.D. Cal. Aug. 5, 2013). CrossFit's argument to the contrary ignores the entire purpose for redaction of the private financial information contained in the agreement(s). [CA 15]

In addition, they are subject to protection based upon this Court's prior Order re Joint Motion for Determination of Discovery Dispute re Production of Metadata and Financial Records filed July 15, 2015. [Dkt 58] They are privileged and not relevant to any issue in this case.

### B. This Motion Is Timely

NSCA presented this motion to CrossFit's counsel for filing as a joint motion within forty-five days after NSCA learned that CrossFit sought the unredacted documents at issue.  The motion is not brought too late.  CrossFit erroneously focuses on the first subpoena, which it never sought to enforce. [CA 14]  Rather, this motion is directed at the second subpoena served in October 2015.  Whether CrossFit believes it or not, counsel for NSCA did not become aware of the demand for unredacted contracts based upon the second subpoena to LWW until December 15, 2015.  Meet and confer efforts were made and the parties reached an impasse on or about January 25, 2016.  This motion is brought within 45 days of the event giving rise to this dispute under the Court's Chambers' Rules (which are ignored by CrossFit).  NSCA did not waive its right to bring this motion.  Clearly, the time to object came and went without NSCA even knowing about the second subpoena.  No waiver can be found based on these facts.

NSCA's motion is therefore timely.  As set forth above, NSCA's motion complies with this Court's Chamber's Rules.

### C. CrossFit Should Request Production From NSCA

As an initial matter, CrossFit should be required to attempt to seek the

contracts in issue from NSCA, a party to this case, and not attempt to make a non-party produce confidential documents.

"In general, there is a preference for parties to obtain discovery from one another before burdening non-parties with discovery requests. See, e.g., *Moon*, 232 F.R.D. at 638 (because "plaintiffs have not shown they have attempted to obtain these documents from defendant, the Court finds that, at this time, requiring [the] non-party. . . to produce these documents is an undue burden"); *Insituform Technologies, Inc. v. CAT Contracting, Inc*., 914 F.Supp. 286, 287 (N.D. Ill. 1996) (holding a party should not be permitted to seek information from a non-party that they can obtain from the opposing party); *Davis v. Ramen*, 2010 U.S. Dist. LEXIS 115432, at *3 (E.D. Cal. May 11, 2010) (denying a request for a subpoena duces tecum because the plaintiff had not demonstrated that the records were only obtainable through the non-party). Consequently, where plaintiffs have not shown they attempted to obtain documents from the defendant in an action prior to seeking the documents from a non-party, a subpoena duces tecum places an undue burden on a non-party." *Soto v. Castlerock Farming & Transp., Inc*., 282 F.R.D. 492, 505 (E.D. Cal. 2012).

This matter should be litigated between the parties and not through a subpoena to LWW. Notably, CrossFit does not argue that it has ever asked NSCA to provide the subject contracts and/or that NSCA refused. It vaguely states that it intends to bring a separate joint discovery motion pertaining to a request for production. [CA 11], but even if it involves the publishing agreements, this issue is clearly not resolved and should be litigated between the parties, not through a third-party.

### D. NSCA's Financial Information Is Confidential and Private.

FRCP Rule 45(d)(3) permits a motion to quash or modify a subpoena to be brought which "requires disclosure of privileged or other protected matter…." [FRCP 45(d)(3)(A)(iii)]

Sensitive financial information is a recognized area entitled to protection, and Federal Courts generally recognize a right to privacy of financial information. *E.E.O.C. v. California Psychiatric Transitions,* 258 F.R.D. 391, 394-395 (E.D. Cal 2009)  Indeed, this Court has noted that NSCA's annual revenue from its certifications, licensing and educational programs as well as its business plans and revenue projections are confidential, subject to a right of privacy, and that disclosure of the same were not relevant to CrossFit's case.  [Dkt 58]  As is the case with those documents, there is no legitimate reason for CrossFit to be permitted to obtain similarly confidential information, especially through a third party.

The revenue information in the publishing agreements is privileged, confidential and not relevant, as this Court has ruled on a similar motion [Dkt 58], and a review of the contracts demonstrates that the royalty payment is not generated from the views of a specific article, which appears to be the primary argument made by CrossFit here. [CA 9, 10]  CrossFit argues that because so many views/purchases of the article were allegedly made, that this evidence is relevant to show that NSCA had a financial motive [CA 10], when NSCA could not have known about the purported "popularity" of the article beforehand, or that it is relevant to damages because CrossFit seeks disgorgement of profits made [CA 10], when as shown above, the contracts do not attribute royalties to the "popularity" of a particular article.  Neither of these arguments is persuasive as a basis to permit disclosure of NSCA's private financial information.

**B.     The Requested Information Has No Relevance to This Case.**

"Although irrelevance is not among the litany of enumerated reasons for quashing a subpoena found in Rule 45, courts have incorporated relevance as a factor when determining motions to quash a subpoena. *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter,* 211 F.R.D. 658, 662 (D. Kan. 2003). Specifically, under [former] Rule 45(c)(3)(A), "[a]n evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the

1 information to the serving party[,]" *Travelers Indem. Co.,* 228 F.R.D. at 113, and, in
2 particular, requires the court to consider: 'such factors as relevance, the need of the
3 party for the documents, the breadth of the document request, the time period
4 covered by it, the particularity with which the documents are described and the
5 burden imposed.' *Id*. (quoting IBM, 83 F.R.D. at 104)." *Moon v. SCP Pool Corp*.,
6 232 F.R.D. 633, 637 (C.D. Cal. 2005)

       The documents LWW produced responsive to CrossFit's subpoena contain amounts NSCA pays to LWW for publishing services provided by LWW and royalties NCSA receives from LWW.  As to amounts NSCA pays to LWW for publishing services provided by LWW, this information is private financial information which is completely irrelevant to any allegation contained in CrossFit's Complaint.  Indeed, what NSCA pays for publishing services has absolutely no value to this case.

       Likewise, any royalties NCSA receives from LWW are equally irrelevant to this litigation.  CrossFit, however, will likely contend that the royalty payments are relevant as they pertains to its damage claims.  In other words, CrossFit will likely contend that the royalty payment (or some portion thereof) is attributable to the publication of the subject article and, CrossFit, should it be successful in this action, would therefore be entitled to the royalty payment (or some portion thereof).  To find this argument persuasive, the Court will need to conclude that the royalty payment from LWW to NSCA is generated from the subject article.  This, of course, is not the case.  As seen from the agreement, the royalty payment consists of revenue from subject journal, the JSCR, *and* an additional journal, the SCJ, collected by LWW and actually received from LWW from all sources from all sources (i.e., membership subscription revenues, handling charges and air freight charges, advertising, reprints, back issues, etc.)  In fact, the subject agreement makes no reference to the royalties being attributed to views of any particular article.  And even if that were the case, the JSCR publishes hundreds of articles in a single year.

Thus, it is impossible to conclude that any portion of the royalty payment from LWW to NSCA is derived from viewing the subject article.

In sum, the Court should not permit CrossFit to push a non-party to provide confidential information about a party, especially when there is no valid reason to permit disclosure of this information at all, even if it were requested directly from NSCA.

CrossFit has attempted to change NSCA's motion into a discovery motion and requests attorneys' fees based thereon. [CA 17]  This motion is properly brought under FRCP Rule 45, and not Rule 26.  There is no basis for an award of attorneys' fees.

## II.   CROSSFIT, INC.'S ARGUMENT

Throughout this litigation, the NSCA's participation in discovery has been, at best, half-hearted.  CrossFit has consistently challenged the adequacy of the NSCA's discovery responses and completeness of the NSCA's document productions.  [See, e.g., Dkt. No. 32.] And to date, the NSCA has yet to produce documents consistent with the Court's ESI Order despite being ordered to do so in July 2015.  [Dkt. No. 58.]  What the NSCA has done, however, is instruct a third-party within the NSCA's control to not produce documents and information that illustrate a financial incentive for the NSCA's alleged misconduct.

In 2014, CrossFit, Inc. served the NSCA with various discovery requests focusing on the NSCA journal article at issue, the Devor Article.   [Declaration of Paul A. Serritella in Support of CrossFit, Inc.'s Joint Discovery Motion ("Serritella Decl."), ¶1.] During discovery, CrossFit, Inc. learned that LWW served as the publisher for the Journal of Strength and Conditioning Research (the "JSCR"), the NSCA journal containing the Devor Article.  [Declaration of Justin S. Nahama in Support of CrossFit, Inc.'s Joint Discovery Motion ("Nahama Decl."), ¶1.]   In addition to publishing the JSCR, LWW hosts the Editorial Management System ("EMS"), the software program used to coordinate and record the JSCR's peer-

1  review process that CrossFit, Inc. alleges the NSCA grossly manipulated to further
2  its efforts to unfairly compete with CrossFit, Inc.  [Id.]
3      The NSCA failed to identify LWW as custodian in their Rule 26 Disclosures
4  as an individual "likely to have discoverable information."  [Serritella Decl., ¶2.]
5  In response to CrossFit, Inc.'s discovery requests, the NSCA produced documents
6  on behalf of itself and its agents on September 4, 2014 and October 27, 2014.
7  [Serritella Decl., ¶4.]  CrossFit, Inc. observed numerous deficiencies in the NSCA's
8  productions, including its failure to produce numerous documents of which CrossFit,
9  Inc. was aware. [Id.] Those shortcomings were the basis of several Joint Motions,
10 including one filed on December 18, 2014 (Dkt. No. 32).  In that December 18, **2014**
11 joint discovery motion, the NSCA represented that the EMS and related LWW
12 documents were within the NSCA's control:  "The NSCA has recently obtained the
13 cooperation of the publisher of the JSCR (an entity separate and apart from the
14 NSCA) to obtain the communications within the Editorial Manager in a native
15 format so as to comply with the ESI Order." [Dkt. No. 32-2 at p.3 (Kenneth
16 Kawabata December 18, 2014 Declaration); Serritella Decl., ¶5.]
17     Further illustrating the NSCA's control over LWW, the NSCA's counsel
18 represented that it would work with LWW to gather and produce LWW's responsive
19 documents in response to CrossFit, Inc.'s discovery requests.  [Serritella Decl., ¶3.]
20     In January 2015, after questioning the completeness of the NSCA's document
21 production as related to CrossFit, Inc.'s discovery requests, CrossFit, Inc.
22 subpoenaed LWW.  [Serritella Decl., ¶7, Ex. A.]  In the email attaching the notice
23 provided to the NSCA, CrossFit, Inc.'s counsel noted in part, "This subpoena of
24 course does not affect the NSCA's obligation to collect and produce all responsive
25 documents that are in its possession, custody, or control, including those held by
26 LWW." [Id.]
27      In contrast to the NSCA's claim that was working cooperatively with LWW
28 to collect responsive documents, CrossFit, Inc. later learned that the NSCA never

contacted LWW about the January 2015 subpoena.  [Nahama Decl., ¶2.]  Additionally, the NSCA never instructed LWW to place a litigation hold on discoverable documents, including documents maintained within the EMS.  [Id.]

After suspecting for a second time that the NSCA failed to produce critically-relevant documents from the EMS that would corroborate the misconduct alleged in CrossFit, Inc.'s complaint, CrossFit, Inc. issued LWW a second subpoena in October 2015.  [Nahama Decl., ¶3, Ex. A.] CrossFit, Inc. served the NSCA with notice of the subpoena the same day.  [Id.]  LWW's counsel was accommodating and began working with CrossFit, Inc. to gather responsive documents.   [Nahama Decl., ¶4.]  LWW's counsel also confirmed that the NSCA's counsel had never approached LWW in January 2015 about gathering responsive documents to CrossFit, Inc.'s first subpoena.  [Id.]  LWW then produced over two-hundred pages of documents strongly supporting CrossFit, Inc.'s claims and theories.  [Id. at ¶5.]  One of those documents was a redacted publishing agreement ("Publishing Agreement").  [Brandon Braga Decl., Ex. B-1.] The Publishing Agreement, among other things, provided that LWW paid the NSCA royalties based on JSCR sales.  [Id. at ¶6.]

Around the same time, CrossFit, Inc. also learned that the Devor Article received more and higher quality attention than any other JSCR article in the journal's history.  [Nahama Decl., ¶7, Ex. D.]

Now that CrossFit, Inc. has confirmed its initial suspicions that the NSCA's previous document productions were incomplete, the NSCA seeks to bury the Publishing Agreement by disavowing its relevance and making the untenable claim that it only learned of the issue in December 2015.  As explained below, the NSCA's Motion is untimely and should denied on that basis alone.  If the Court does consider the NSCA's Motion, it should be denied because the Publishing Agreement and related royalty payments to the NSCA are plainly relevant to CrossFit, Inc.'s claims because they provide direct evidence of motive to publish

false information and provide evidence supporting CrossFit, Inc.'s damages theories.

### A. The Publishing Agreement and Underlying Financial Information are Discoverable and Relevant.

The NSCA claims that the Publishing Agreement, and related underlying financial information illustrating that the NSCA received significant revenue from JSCR sales is irrelevant. The NSCA's position misses the mark because the information at issue is both discoverable and relevant.

The NSCA focuses on relevance rather than the appropriate discovery standard. As explained below, the Publishing Agreement and related financial information are relevant and certainly discoverable. Information is discoverable if it concerns: "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). "Traditionally, the relevance requirement of Rule 26(b)(1) has been construed broadly," and the 2015 Amendments to Rule 26 did nothing to change that traditional interpretation. *Whit v. United Behavioral Health,* 2016 U.S. Dist. LEXIS 7242, *35-36 (N.D. Cal. Jan. 21, 2016) ("The Comments relating to the 2015 Amendments explain that the purpose of the changes was to restore and reinforce the focus on proportionality in discovery but that the amendments did not change the existing responsibilities of the court and the parties to consider the proportionality.").

Here, the information at issue is both discoverable and relevant. When CrossFit, Inc. received the redacted Publishing Agreement from LWW, it was surprised to learn the NSCA received contractual royalty payments from LWW based on JSCR sales. [Nahama Decl. at ¶6; *see also* Braga Dec. at Exhibit B1, ¶10] Shortly thereafter, CrossFit, Inc. also learned that the Devor Article – the Article upon which CrossFit, Inc. bases its claims in this case – **was one of the most viewed/purchased articles in the JSCR's history**. [*See* Nahama Decl., at ¶7, Ex.

D.]  The NSCA therefore had a clear financial motive to publish the false information in the Devor Article because it stood to enjoy royalty revenues based upon the popularity of the article.  The royalty payments and structure in the Publishing Agreement provide direct evidence of the benefits the NSCA received from its false advertising and unfair business practices.  *See Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.,* 525 F.3d 822, 826 (9th Cir. 2008) ("Whether a business practice constitutes unfair competition under Cal. Bus. & Prof. Code § 17200 involves an examination of that practice's impact on its alleged victim, balanced against ***the reasons, justifications and motives of the alleged wrongdoer***.") (emphasis added).

Additionally, the NSCA's royalty revenues from LWW are relevant to the measure of CrossFit, Inc.'s damages. CrossFit, Inc. has pled, and if successful at trial will be entitled to, disgorgement of the NSCA's profits stemming from the NSCA's false advertising and unfair business practices in connection with the Devor Article.  *See POM Wonderful LLC v. Purely Juice, Inc.*, 362 Fed. Appx. 557 (9th Cir. 2009) (noting that plaintiff awarded disgorgement of defendant's profits in connection with plaintiff's Lanham Act and §17500 false advertising claims and plaintiff's §17200 unfair completion claim).  Accordingly, the Publishing Agreement and royalty information are discoverable and relevant.

### B. The NSCA Should Not Be Permitted to Bury the Evidence of Royalty Payments It Received Relating to the Devor Article.

In its attempt to bury all evidence regarding JSCR royalties, the NSCA omits several important facts that provide complete context to the specific issue now before the Court.

The NSCA has refused to produce the documents in **its direct possession** regarding the Publishing Agreement and royalty information for reasons that will be presented to the Court in a forthcoming joint discovery motion.  The NSCA also has improperly instructed a third party, LWW, to not produce the Publishing Agreement

1 and royalty information in LWW's possession, custody, or control.

2 　　　The NSCA's claim that "CrossFit did not seek to enforce the subpoena until
3 October 2015" is belied by the NSCA's previous representations.  Specifically,
4 CrossFit, Inc. relied on representations from the NSCA's counsel that they were
5 proactively working with LWW in connection with discovery. [Serritella Decl. at
6 ¶¶2-3 and Exhibit A]   During discovery, however, CrossFit, Inc. learned
7 information suggesting the NSCA had not completely produced documents in the
8 EMS that CrossFit, Inc. believed would corroborate its allegations that the NSCA
9 grossly manipulated the peer-review process.

10 　　　CrossFit, Inc. later learned that these documents, including logs and email
11 correspondence, contained information directly relevant to CrossFit, Inc.'s claims.
12 [*See* Nahama Decl. at ¶¶5,8.]  CrossFit, Inc. learned in or around September 2015
13 that the NSCA's counsel never contacted LWW with respect to CrossFit, Inc.'s
14 January 2015 subpoena. [Id. at ¶2.] CrossFit, Inc. also learned that the NSCA had
15 not instructed LWW to preserve documents that may be relevant to this case and/or
16 responsive to the January 2015 subpoena. [Id.]   Tellingly, the NSCA admitted that
17 it did not instruct LWW to apply a litigation hold until October 2015—10 months
18 after CrossFit, Inc.'s January 2015 subpoena to LWW—after CrossFit, Inc. was
19 pressing the NSCA for reassurances concerning the EMS documents.  [Id. at ¶9, Ex.
20 E.] CrossFit, Inc. eventually issued a second subpoena to LWW on October 1, 2015,
21 in an attempt to discover the EMS and other discoverable documents the NSCA had
22 failed to produce to CrossFit, Inc.

23 　　　LWW's document production in response to the October 2015 subpoena
24 validated CrossFit, Inc.'s suspicions that the NSCA either withheld discoverable
25 documents or failed to diligently search for responsive documents.  [Id. at ¶8.]
26 For example, LWW's production included logs from the JSCR's Editorial
27 Management System that provided new information on the peer-review process.
28 [Id. at ¶8]   The LWW-produced logs contained previously unproduced evidence

consistent with CrossFit, Inc.'s theory that the NSCA grossly manipulated the peer-review process for the Devor Article in furtherance of the NSCA's efforts to unfairly compete with CrossFit, Inc. Further, LWW's production included a redacted copy of LWW's Publishing Agreement with the NSCA, the primary document at issue in the current Joint Motion. [Nahama Decl., ¶6.]

It is untenable that "counsel for NSCA became aware that CrossFit, Inc. was demanding that LWW produce unredacted copies of the publishing agreements" for the first time on December 15, 2015. In reality, CrossFit, Inc.'s counsel served the NSCA's counsel with Notice of the LWW subpoena on January 29, 2015. [*See* Braga Dec. ¶2, Exhibit A.] That subpoena commanded LWW to produce "[a]ll agreements, whether informal or formal, including drafts or proposed agreements between (a) [LWW] and (b) the NSCA, the JCSR,…" [*Id.* at Request No. 4.] Simply put, "unredacted copies of the publishing agreements" would have fallen within the scope of that request, and thus, the NSCA should have been aware that CrossFit, Inc. was seeking such documents as early as January 29, 2015. At best, the NSCA was asleep at the wheel. The NSCA woke up once LWW's counsel indicated that it would produce the complete Publishing Agreement to CrossFit, Inc. if the NSCA did not seek and receive judicial intervention. [Nahama Decl., ¶11, Ex. G.]

Finally, LWW has confirmed that they consider the Publishing Agreement at issue to be responsive to the subpoena and that any confidentiality concerns can be adequately protected by the Court's existing Protective Order [Nahama Decl., Ex. F.] LWW has only withheld production based on the NSCA's improper instruction. [Id.]

Accordingly, the NSCA should not be permitted to instruct LWW to withhold information central to CrossFit, Inc.'s claims.

### C.   The NSCA Has No Viable Basis for the Relief It Requests.

Fed. R. Civ. P. 45 provides no basis upon which the NSCA may quash or

modify the subpoena to third-party LWW.  Instead, the only possible basis for the NSCA's requested relief would be a protective order issued pursuant to Fed. R. Civ. P. 26(c) – a basis that is entirely omitted from the NSCA's moving papers.

### 1. The NSCA Waived Any Right it May Have Had to Object to the LWW Subpoena Pursuant to Fed. R. Civ. P. 45.

Any objection to a subpoena made pursuant to Fed. R. Civ. P. 45 "must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B).  If a party fails to raise such an objection within this timeframe, that party's objection is deemed waived. *See Avila v. Cate*, 2013 U.S. Dist. LEXIS 79941, *6-7 (E.D. Cal. June 6, 2013) (compelling production of documents because "the objections were untimely because they were not served either before the time specified for compliance or fourteen days after the subpoena was served, whichever was earlier.").

Here, the NSCA's counsel received Notice of the first LWW subpoena on January 29, 2015. [Braga Dec. ¶2, Exhibit A.]  At that time, the NSCA was aware that CrossFit, Inc. was seeking copies of the NSCA's agreements with LWW, including the Publishing Agreement at issue in the current Joint Motion.  Despite this knowledge, the NSCA failed to raise any objection to the subpoena within the time provided for in Fed R. Civ. P. 45(d)(1)(B), and thus, the NSCA has waived any objection to the LWW subpoena pursuant to Fed. R. Civ. P. 45. *See Avila,* 2013 U.S. Dist. LEXIS 79941 at *6-7.

### 2. Even if the NSCA Had Not Waived its Fed. R. Civ. P. 45 Objection, The NSCA's Request Is Premised on Misguided Arguments and Must be Denied.

As a general rule, a party lacks standing under Fed. R. Civ. P. 45 "to challenge a subpoena issued to a non-party unless the party claims a personal right or privilege with respect to the documents requested in the subpoena." *In re Remec, Inc.*, 2008 U.S. Dist. LEXIS 47412, *4 (S.D. Cal. May 30, 2008).  "A party's

1  objection that a subpoena to a nonparty seeks irrelevant information or would
2  impose an undue burden are not grounds on which a party has standing to move to
3  quash a subpoena when the non-party has not objected." *Wells Fargo and Co. v.*
4  *ABD Ins.*, 2012 U.S. Dist. LEXIS 173365, *6 (N.D. Cal. Dec. 6, 2012). In the
5  absence of a joining objection by the non-party witness, the party's "only cognizable
6  basis for quashing the subpoena is that it seeks privileged or confidential
7  information." *Rankine v. Roller Bearing Co. of Am., Inc.*, 2013 U.S. Dist. LEXIS
8  109827, *12 (S.D. Cal. Aug. 5, 2013).

9  Here, the NSCA's primary argument is that the "requested information has no
10 relevance to the case." [*See infra.*, Section I.E] Even if that were true – which it is
11 not – relevance and/or undue burden are not grounds upon which the NSCA may
12 object to the LWW subpoena. *See Wells Fargo*, 2012 U.S. Dist. LEXIS 173365 at
13 *6. Instead, the only cognizable basis for quashing the LWW subpoena would be a
14 claim that the subpoena seeks privileged or confidential information. *See Rankine*,
15 2013 U.S. Dist. LEXIS 109827 at *12. For this reason, the vast majority of the
16 NSCA's argument is inapposite and provides no support for the NSCA's requested
17 relief.

18 Beyond its relevance arguments, the NSCA does devote three sentences
19 claiming "the NSCA's financial information is confidential and private." [*See infra.*
20 at Section I.D] Upon further scrutiny, however, this argument is merely a reiteration
21 of the NSCA's primary "relevance/undue burden" argument because it is premised
22 upon a misinterpretation of this Court's prior Order re Joint Motion for
23 Determination of Discovery Dispute. [Dkt. No. 58] Nowhere in its prior Order did
24 the Court find that the NSCA's revenue and business plans "are confidential, subject
25 to a right to privacy, and that disclosure of the same were not relevant to CrossFit's
26 case," as the NCSA suggests. Instead, the Court found that "[s]ince Document
27 Request No. 30 is ***overly broad and unduly burdensome*** and there is insufficient
28 information for the Court to determine appropriate time and scope limitations for

this request, the Court declines to issue an order compelling defendant to provide a further response to this request." [Dkt. No. 58 p. 9, ln. 23-27] [emphasis added] Accordingly, the Court's prior Order lends no support for the NSCA's argument in the current Joint Motion. *See Wells Fargo*, 2012 U.S. Dist. LEXIS 173365 at *6.

### 3. The NSCA Has Neither Argued Nor Illustrated That it is Entitled to a Protective Order Pursuant to Fed. R. Civ. P. 26.

In the absence of any available relief pursuant to Fed. R. Civ. P. 45, "a party may seek a protective order pursuant to Rule 26(c) regarding a subpoena issued to a non-party if it believes its own interest is jeopardized by the discovery sought from the non-party." *Wells Fargo*, 2012 U.S. Dist. LEXIS 173365 at *6. To be entitled to such a protective order under Fed. R. Civ. P. 26(c), a party must make a "showing of good cause" that limiting the requested discovery is necessary "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* at *7 (quoting Fed. R. Civ. P. 26). Such a showing cannot be premised upon the assertion that the requested documents or information are irrelevant to the requesting party's case. *Bender v. Tropic Star Seafood, Inc.*, 2008 U.S. Dist. LEXIS 88102, *10 (N.D. Fl. July 21, 2008) ("A party is not subjected to 'annoyance, embarrassment, oppression, or undue burden or expense' when the opposing party uses a Rule 45 subpoena to gather irrelevant documents from a non-party.").

Here, the NSCA has made no reference to the "annoyance, embarrassment, oppression or undue burden or expense" standard articulated in Fed. R. Civ. P. 26. In fact, the NSCA's moving papers do not reference Fed. R. Civ. P. 26.

However, if the Court were inclined to morph the NSCA's request into something consistent with the applicable rules, the NSCA still fails to provide evidence justifying its instruction to LWW. As set forth above, the NSCA's argument focuses on relevance. The NSCA's myopic focus on relevance does not provide a valid basis to grant the NSCA a protective order pursuant to Fed. R. Civ.

P. 26. *See Bender,* 2008 U.S. Dist. LEXIS 88102 at *10 ("A party is not subjected to 'annoyance, embarrassment, oppression, or undue burden or expense' when the opposing party uses a Rule 45 subpoena to gather irrelevant documents from a non-party."). Indeed, nothing in the NSCA's motion papers even hints at how LWW producing the Publishing Agreement would result in "annoyance, embarrassment, oppression or undue burden or expense" for the NSCA so as to satisfy the "good cause" requirement of Fed. R. Civ. P. 26(c). Perhaps most telling, LWW confirmed that it believes the parties' existing protective order will protect against any confidentiality concerns. [Nahama Decl., Ex. F.]

For these reasons, the NSCA's request must be denied.

### D. CrossFit, Inc. is Entitled to Recover its Reasonable Expenses in Connection with this Joint Motion.

As described above, the NSCA's request is not a request to quash or modify the LWW subpoena pursuant to Fed R. Civ. P. 45, but rather a request for a protective order pursuant to Fed. R. Civ. P. 26. As such, if the NSCA's motion is denied, the Court must award CrossFit, Inc. its reasonable expenses, including attorneys' fees, in connection with this Joint Motion. *See* Fed. R. Civ. P. 26(c)(3) ("Rule 37(a)(5) applies to the award of expenses" with respect to motions for protective orders); Fed. R. Civ. P. 37(a)(5) ("If the motion is denied, the court … must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees."). CrossFit, Inc. respectfully requests $10,000 in connection with the reasonable expenses incurred with opposing this motion. [Nahama Decl., ¶12.]

### E. CrossFit, Inc. Requests an Order Compelling LWW to Produce the Un-Redacted Publishing Agreement and Related Royalty Information.

For the foregoing reasons, CrossFit, Inc. respectfully requests that the Court

deny the NSCA's motion in full. Because LWW has indicated they will only produce the un-redacted Publishing Agreement if the Court does not grant the NSCA's motion, CrossFit, Inc. also requests an order compelling LWW to produce the complete Publishing Agreement and related royalty-payment information detailing royalties paid to the NSCA in connection with the JSCR in 2013, 2014, 2015, and 2016.

DATED: February ___, 2016     **MANNING & KASS**
                                                  **ELLROD, RAMIREZ, TRESTER LLP**

By: _____/s/_____
      Anthony J. Ellrod
      Attorneys for Defendant NATIONAL STRENGTH AND CONDITIONING ASSOCIATION

MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC

By  */s/*
      Micha Danzig, Esq.
      SBN 177923

3580 Carmel Mountain Road, Suite 300
San Diego, CA  92130
Telephone:  (858) 314-1500
Facsimile:   (858) 314-1501

*Counsel for Plaintiff*
*CROSSFIT, INC.*