1 | LATHAM & WATKINS LLP
Daniel Scott Schecter (SBN 171472)
2 | *daniel.schecter@lw.com*
David F. Kowalski (SBN 265527)
3 | *david.kowalski@lw.com*
355 South Grand Avenue
4 | Los Angeles, CA 90071
Telephone: (213) 485-1234
5 | Facsimile: (213) 891-8763

6 | LATHAM & WATKINS LLP
David F. Kowalski (Bar No. 265527)
7 | *david.kowalski@lw.com*
12670 High Bluff Drive
8 | San Diego, CA 92130
Telephone: (858) 523-5400
9 | Facsimile: (858) 523-5450

10 | LATHAM & WATKINS LLP
Blair Connelly (SBN 174460))
11 | *blair.connelly@lw.com*
William O. Reckler (admitted *pro hac vice*)
12 | *william.reckler@lw.com*
Paul A. Serritella (admitted *pro hac vice*)
13 | *paul.serritella@lw.com*
885 Third Avenue
14 | New York, NY 10022
Telephone: (212) 906-1658
15 | Facsimile: (212) 751-4864

16 | Micha "Mitch" Danzig (SBN 177923)
mdanzig@mintz.com
17 | Justin Nahama (SBN 281087)
jsnahama@mintz.com
18 | Abbey Jahnke (SBN 302454)
ajahnke@mintz.com
19 | MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC
3580 Carmel Mountain Road, Suite 300
20 | San Diego, CA 92130
Telephone: (858) 314-1500
21 | Facsimile: (858) 314-1501

22 | *Attorneys for Plaintiff*
*CROSSFIT, INC.*
23 |

24 | MANNING & KASS, ELLROD, RAMIREZ, TRESTER LLP
Kenneth S. Kawabata (Bar No. 149391)
25 | *ksk@manningllp.com*
550 West C Street, Suite 1900
26 | San Diego, California 92101
Telephone: (619) 515-0269
27 | Facsimile: (619) 515-0268

28 |

Case No. 14CV1191 JLS KSC

MANNING & KASS, ELLROD, RAMIREZ, TRESTER LLP
Anthony J. Ellrod (Bar No. 136574)
*aje@manningllp.com*
Brandon K. Braga (SBN 253233)
*bkb@manningllp.com*
David Bederman (SBN 285262)
*dsb@manningllp.com*
801 S. Figueroa St., 15th Floor
Los Angeles, California 90017
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

*Attorneys for Defendant*
*NATIONAL STRENGTH AND CONDITIONING ASSOCIATION*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| CROSSFIT, INC., a Delaware corporation,, | Case No. 14CV1191 JLS KSC |
| Plaintiff, | **RENEWED JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| NATIONAL STRENGTH AND CONDITIONING ASSOCIATION, a Colorado corporation,, | **PARTIES' DECLARATIONS AND EXHIBITS FILED SEPARATELY IN SUPPORT THEREOF** |
| Defendant. | **DATE: NONE SET**<br>**TIME: NONE SET**<br>**CRTRM: 4A** |

TO THIS HONORABLE COURT:

The parties hereto jointly request the ruling of the Court on a protective order pursuant to the FEDERAL RULES OF CIVIL PROCEDURE, Rules 26(c) and 45(d)(3)(A)(iii), protecting against disclosure of highly confidential financial information contained in contracts of Defendant NATIONAL STRENGTH AND CONDITIONING ASSOCIATION ("NSCA") with third-party Lippincott Williams & Wilkins ("LWW"), sought by Plaintiff CROSSFIT, INC. ("CrossFit"), a Delaware corporation, pursuant to subpoena.

**<u>TABLE OF CONTENTS</u>**

page

I.    INTRODUCTION AND BACKGROUND ........................................................ 1

II.   NSCA HAS NOT CONTROLLED LWW ................................................. 3

III.  THIS MOTION IS TIMELY ..................................................................... 4

IV.  NSCA'S FINANCIAL INFORMATION IS CONFIDENTIAL, PRIVATE, AND IRRELEVANT ........................................................... 5

    A.    CrossFit cannot overcome NSCA's need for the information to remain confidential and private. .............................................. 6

    B.    The information is irrelevant to this case............................................ 7

V.   CROSSFIT IS NOT ENTITLED TO DISCOVERY SANCTIONS ............... 9

VI.  CONCLUSION .................................................................................... 10

    A.    The Publishing Agreement and Underlying Financial Information are Discoverable Because They Are Evidence Relating to CrossFit, Inc.'s Damages and the NCSA's Motive to Unfairly Compete with CrossFit, Inc...................................... 14

        1.    The Journal-Related Royalties Are Discoverable Because They Are a Measure of CrossFit, Inc.'s Damages..................... 15

        2.    The Journal-Related Royalties Are Discoverable Because They Provide Evidence of a Financial Motive for the NSCA to Unfairly Compete with CrossFit, Inc........................ 17

    B.    The NSCA Should Not Be Permitted to Bury the Evidence of Royalty Payments It Received Relating to the Devor Study. .............. 17

    C.    The NSCA Has Provided No Evidence That the Parties' Stipulated Protective Order is Insufficient to Address Any Confidentiality Concerns. ................................................................. 20

    D.    CrossFit, Inc. is Entitled to Recover its Reasonable Expenses in Connection with this Joint Motion........................................................ 21

VII. CONCLUSION .................................................................................... 22

Case No. 14CV1191 JLS KSC

# TABLE OF AUTHORITIES

## CASES

*Bender v. Tropic Star Seafood, Inc.*
    2008 U.S. Dist. LEXIS 88102 (N.D. Fl. July 21, 2008) ................................. 20

*Brown Bag Software v. Symantec Corp.*
    960 F.2d 1465 (9th Cir. 1992) ................................................................... 5

*Cabell v. Zorro Prods.*
    294 F.R.D. 604 (W.D. Wash. 2013) ........................................................... 6

*Carrera v. First Am. Home Buyers Prot. Co.*
    2014 U.S. Dist. LEXIS 101064 at *2-4 (S.D. Cal. July 23, 2014) .............. 6, 7

*E.E.O.C. v. California Psychiatric Transitions*
    258 F.R.D. 391 (E.D. Cal. 2009) ............................................................... 6

*Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*
    525 F.3d 822 (9th Cir. 2008) ..................................................................... 17

*Foltz v. State Farm Mut. Auto. Ins. Co.*
    331 F.3d 1122 (9th Cir. 2003) ................................................................... 5

*Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter*
    211 F.R.D. 658 (D. Kan. 2003) ................................................................. 7

*In re Adobe Systems, Inc. Sec. Litig.*
    141 F.R.D. 155 (N.D. Cal. 1992) .............................................................. 6

*Knoll, Inc. v. Moderno, Inc.*
    2012 U.S. Dist. LEXIS 138497 at *5-6 (N.D. Cal. Sept. 26, 2012) ............. 3, 8

*Moon v. SCP Pool Corp.*
    232 F.R.D. 633 (C.D. Cal. 2005) .............................................................. 7

*POM Wonderful LLC v. Purely Juice, Inc.*
    362 Fed. Appx. 557 (9th Cir. 2009) .......................................................... 15

*Rankine v. Roller Bearing Co. of Am., Inc.*
    2013 U.S. Dist. LEXIS 109827 (S.D. Cal. Aug. 5, 2013) ........................... 4

*Reygo Pacific Corp. v. Johnston Pump Co.*
    680 F.2d 647 (9th Cir. 1982) ..................................................................... 10

*Roberts v. Clark Cnty. Sch. Dist.*
    312 F.R.D. 594 (D. Nev. 2016) ................................................................. 10

*Roberts v. Prudential Ins. Co. of Am.*
    2013 U.S. Dist. LEXIS 51110 (S.D. Cal. April 9, 2013) ........................... 6

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

*Smith v. Dowson*
    158 F.R.D. 138 (D. Minn. 1994) .....................................................................5, 7

*Takata v. Hartford Comprehensive Emple. Benefit Serv. Co.*
    283 F.R.D. 617 (E.D. Wash. 2012) ...............................................................5, 6

*Wells Fargo & Co. v. ABD Ins.*
    2012 U.S. Dist. LEXIS 173365 at *6.........................................................20, 21

*Whit v. United Behavioral Health*
    2016 U.S. Dist. LEXIS 7242 (N.D. Cal. Jan. 21, 2016) ...............................14

## <u>STATUTES</u>

Business & Professions Code
    Section 17200 ...............................................................................................15, 17

Federal Rule Civil Procedure
    Section 45 ..................................................................................................3, 5, 7

Federal Rule Civil Procedure
    Section 37(a)(5).........................................................................................10, 21

Federal Rule Civil Procedure
    Section 26 .....................................................................................................passim

Lanham Act
    Section 17500 ....................................................................................................15

# I.   INTRODUCTION AND BACKGROUND

This ongoing discovery dispute arises from a subpoena that CrossFit served to LWW on <u>January 29, 2015</u>.  [Braga Decl. ¶ 2; Exhibit A]  CrossFit did not seek to enforce the subpoena until October 2015, after it served a subsequent notice of the 30(b)(6) deposition on LWW.[1]  [Braga Decl. ¶ 3.]  Pursuant to this Court's Chambers Rule V(D)(1), Defendant discloses that the subpoena at issue sought: "All documents and communications concerning any partnerships, affiliations (whether formal or informal), or other relationships between Lippincott and the NSCA, the JSCR, and/or the ACSM." [*Id.*, Ex. A at p. 5 ¶ 5.]  In response to the subpoena, LWW produced *redacted* versions of the publishing agreements between LWW and NSCA, without disclosing any confidential financial or revenue information, in October or November 2015.  [Braga Decl. ¶ 3; Exs. B1-B3.][2]

It was not until December 15, 2015 that counsel for NSCA became aware CrossFit was demanding that LWW produce *unredacted* copies of the publishing agreements.  Thereafter, counsel for NSCA wrote to counsel for CrossFit to advise that NSCA objected to its attempts to obtain disclosure of its private financial information from LWW. [Braga Decl.¶ 6; Ex. C.]  Next, NSCA met and conferred with both LWW—who did not want to obstruct any subpoena—and with CrossFit during January 2016.  [Braga Decl. ¶ 7; Ex. D.]  The parties reached an impasse on or about January 25, 2016, when CrossFit continued to demand the *unredacted* contracts and argued that NSCA would need to seek judicial relief to prohibit LWW's production of the documents.  [Braga Decl. ¶ 8; Ex. D.]

---

[1]  For the court's reference, the subsequent subpoena is attached to the Declaration of Brandon K. Braga as Exhibit E, but this motion does not relate to any requests in this second subpoena.

[2]  Pursuant to Chambers Rule V(D)(2), these documents are attached to the Braga Declaration as Exhibits B1 through B3 because they form LWW's substantive response to the challenged discovery request.

Case No. 14CV1191 JLS KSC

Thus, this motion is timely under Chambers Rule V(A), as it was originally brought within 45 days of the event giving rise to the dispute. A protective order is sought as to the renewal of the January 2015 subpoena to LWW, in response to which LWW produced the *redacted* publishing agreements between NSCA and LWW.

In this case, NSCA did not and does not object to production of the subject documents in their *redacted* state, subject to the Joint Protective Order filed August 16, 2014. [Doc. No. 12.] NSCA *does* object, however, to the disclosure of *unredacted* versions of the subject documents as they are irrelevant to CrossFit's causes of action and contain sensitive and confidential information; namely, payments by NSCA to LWW for its services under the publishing agreements and royalty payments by LWW to NSCA under the same. [Braga Decl. ¶¶ 2, 5; Ex. A, pp. 7-8.] This is especially true given this Court's prior ruling that NSCA's financial business projections were confidential and subject to a right of privacy, and that disclosure of the same was not relevant to CrossFit's case. [Doc. No. 58.] This Court has also suggested more recently that even if the agreements were produced in *unredacted* form, they are not relevant to CrossFit's causes of action because the agreements do not show a motive to publish false information and, more importantly, because royalty payments are not generated from the views of a specific article. [*See generally* Doc. No. 89.]

In the Ninth Circuit, courts determining whether to issue a protective order regarding trade secrets conduct a balancing test of the risk of inadvertent disclosure to competitors against the risk that protection of the trade secret will impair the opposing party's case. Here, Defendant considers the redacted data in the publishing agreements to be confidential, private, and irrelevant to any issue in this matter, and subject to the Court's Order. [Braga Decl. ¶ 5.] The NSCA has strong concerns that the disclosure of such information, **even under the Joint Protective Order in this case**, would be harmful to its business.[3] Specifically, the NSCA is concerned that its competitors

_____

[3] There also is legal authority that even where a protective order is in effect, irrelevant information

Case No. 14CV1191 JLS KSC

publishing journals through LWW, including but not limited to the American College of Sports Medicine ("ACSM"), could obtain access to the NSCA's negotiated payments to LWW and LWW's royalty rates to the NSCA, which are paid for two journals together, the JSCR and the SCJ. The NSCA fears that inadvertent disclosure of the redacted information to its competitors will occur, which would cause the NSCA to lose its negotiated competitive advantage. [*See generally* Braga Decl., Ex. G.] Indeed, the NSCA's concern is fully justified because CrossFit has already inadvertently filed confidential, unredacted documents in the public record, thus necessitating their withdrawal. [Braga Decl., Ex. H; *see also* Doc. No. 86.] And, given the financial data's clear irrelevance to CrossFit's case, the balancing test tips strongest in the NSCA's favor.

Whether this Court views the instant dispute under the lens of Rule 26 or Rule 45, the result is the same: CrossFit cannot show any relevance of the redacted financial data to this case, and also cannot overcome Defendant's strong need for confidentiality. Accordingly, this Court should issue an order prohibiting disclosure of the redacted data, even under the Joint Protective Order.[4]

## II. NSCA HAS NOT CONTROLLED LWW

CrossFit has erroneously contended that NSCA has "instruct[ed] a third-party . . . to not produce documents." [Doc. No. 70 at 9:17-19.] No evidence supports this statement, nor does CrossFit ever attempted to point to any.

CrossFit contended that NSCA's publisher, LWW, also hosts a software program used to record the JSCR's peer review process, to which CrossFit wanted access. [Doc. No. 70 at pp. 9-10.] NSCA obtained the cooperation of LWW in order to comply

---

may still be redacted from documents that are disclosed under that order. *See Knoll, Inc. v. Moderno, Inc.*, 2012 U.S. Dist. LEXIS 138497 at *5-6 (N.D. Cal. Sept. 26, 2012).

[4] In its initial ruling on this discovery dispute on May 10, 2016, the Court ordered the parties to re-brief this issue, following its Chambers Rules, within 20 days. The parties again attempted to meet and confer under the Chambers Rules, but reached the same impasse, leading to this motion's re-briefing and refiling. [Braga Decl. ¶ 13; Ex. F.]

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

Case No. 14CV1191 JLS KSC

with the Court's discovery order and provide the requested information. [Braga Decl. ¶ 11.] CrossFit argues that this shows control over LWW. [Doc. No. 70 at p. 10.] This is false: the NSCA has worked with LWW to gather information, and never told LWW what to do in response to a subpoena. In fact, since CrossFit admits that NSCA never contacted LWW about the first January 2015 subpoena to LWW, [Doc. No. 70 at pp. 10-11], this shows that there was no instruction or direction whatsoever from NSCA to LWW as to how to respond.

The *unredacted* publishing agreements are subject to a motion to quash and/or for a protective order on the grounds of that they involve private, confidential, and irrelevant matters. NSCA is objecting to the subpoena based upon the grounds of "privileged or confidential" information, as contemplated in *Rankine v. Roller Bearing Co. of Am., Inc*., 2013 U.S. Dist. LEXIS 109827, *12 (S.D. Cal. Aug. 5, 2013). CrossFit's argument to the contrary ignores the entire purpose for redaction of the private financial information contained in the agreement(s). [Doc. No. 70 at pp. 16-18.]

In addition, the agreements are subject to protection based upon this Court's prior Order re Joint Motion for Determination of Discovery Dispute re Production of Metadata and Financial Records filed July 15, 2015. [Doc. No. 58.] They are privileged and not relevant to any issue in this case.

### III.   THIS MOTION IS TIMELY

NSCA presented the initial version of this motion to CrossFit's counsel for filing as a joint motion within forty-five (45) days after NSCA learned that CrossFit sought the *unredacted* documents at issue. The motion is not brought too late. CrossFit erroneously focuses on the first subpoena, which it never sought to enforce. [*See* Doc. No. 70 at pp. 15-16.] Rather, this motion is directed at the second subpoena served in October 2015. Whether CrossFit believes it or not, counsel for NSCA did not become aware of the demand for *unredacted* contracts based upon the second subpoena to LWW until December 15, 2015. Meet and confer efforts were made and the parties reached an impasse on or about January 25, 2016, such that this motion was brought

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

within 45 days of the event giving rise to this dispute under the Court's Chambers' Rules. Defendant did not waive its right to bring this motion.

After this Court ruled on this discovery dispute on May 10, 2016, the Court ordered the parties to re-brief this issue, following its Chambers Rules, within 20 days and satisfy the meet and confer requirements. The parties have attempted to meet and confer, but reached an impasse again, necessitating the bringing of this motion. [Braga Decl. ¶ 13; Ex. F.] As such, this motion is also timely in response to this Court's order calling for re-briefing. [Doc. No. 89.]

## IV. NSCA'S FINANCIAL INFORMATION IS CONFIDENTIAL, PRIVATE, AND IRRELEVANT

FED. R. CIV. P. 45(d)(3)(A)(iii) permits a motion to quash or modify a subpoena to be brought which "requires disclosure of **privileged** or other **protected matter** . . . ." (emphasis added). Additionally, Rule 26(c) and Rule 26(c)(1)(G) jointly authorize this Court to enter a protective order, upon a showing of good cause, to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense," such as an order ensuring "that a **trade secret** or other **confidential . . . commercial information** not be revealed." (emphasis added).

In the Ninth Circuit, courts considering the issuance of a protective order regarding trade secrets balance the risk of inadvertent disclosure to competitors against the risk that protection of the trade secrets will impair the opposing party's case. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992). In the context of confidential commercial information, the party asserting the privilege must show "that there is confidential information and that disclosure would result in harm." *Takata v. Hartford Comprehensive Emple. Benefit Serv. Co.*, 283 F.R.D. 617, 621 (E.D. Wash. 2012); *accord Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130-31 (9th Cir. 2003). Additionally, "a showing of irrelevancy of proposed discovery can satisfy the 'good cause' requirement of Rule 26(c)." *Smith v. Dowson*, 158 F.R.D. 138, 140 (D. Minn. 1994); *see also Carrera v. First Am. Home Buyers Prot.*

Case No. 14CV1191 JLS KSC

*Co.*, 2014 U.S. Dist. LEXIS 101064 at *2-4 (S.D. Cal. July 23, 2014).

A. ***CrossFit cannot overcome NSCA's need for the information to remain confidential and private.***

Sensitive financial information is a recognized area entitled to protection, and federal courts generally recognize a right to privacy of financial information. *E.E.O.C. v. California Psychiatric Transitions*, 258 F.R.D. 391, 394-95 (E.D. Cal. 2009). "The Ninth Circuit recognizes that district courts have great flexibility to protect documents that contain confidential or commercially sensitive information." *Cabell v. Zorro Prods.*, 294 F.R.D. 604, 610 (W.D. Wash. 2013). Indeed, courts in the Ninth Circuit have regularly issued protective orders to protect confidential commercial information. *See, e.g.*, *In re Adobe Systems, Inc. Sec. Litig.*, 141 F.R.D. 155, 162-63, 165 (N.D. Cal. 1992); *Takata, supra*, 283 F.R.D. at 621-22. Courts also have issued protective orders to protect trade secrets that amount to a "competitive advantage." *Takata, supra*, 238 F.R.D. at 621-22; *Roberts v. Prudential Ins. Co. of Am.*, 2013 U.S. Dist. LEXIS 51110, at *7-*8 (S.D. Cal. April 9, 2013).

Here, this Court has already noted that NSCA's annual revenue from its certifications, licensing and educational programs, as well as its business plans and revenue projections, are confidential and subject to a right of privacy, and that disclosure of the same was not relevant to CrossFit's case. [Doc. No. 58.] As was the case with those documents, there is no legitimate reason now for CrossFit to be permitted to obtain similarly confidential information, especially through a third party.

Further, Defendant considers the information to be a highly confidential competitive advantage and trade secret, and has strong, justified concerns that this information will be inadvertently disclosed to its competitors even under the Joint Protective Order in this case. The NSCA has negotiated competitive combined payment and royalty rates with LWW for two journals, the JSCR and SCJ. [Braga Decl., Ex. G ¶¶ 3-5.] LWW also publishes journals of NSCA competitors, including but not limited to the ACSM. [*Ibid.*] The NSCA is strongly concerned that

even under the Joint Protective Order, its competitors will obtain access to the financial data, thereby damaging the NSCA's competitive advantage. [*Id.*, ¶¶ 6-7.] The NSCA's fear is not unfounded, either, given that CrossFit has already inadvertently filed documents in the public record that were supposed to be filed under seal pursuant to the Joint Protective Order, thereby necessitating their withdrawal. [Braga Decl., Ex. H; *see also* Doc. No. 86.] The NSCA thus fears that its negotiated combined payment rates to LWW and royalty rates from LWW will be inadvertently be disclosed to competitors during this litigation, thereby resulting in higher payments to and lower payments from LWW in the future for the JSCR and SCJ. [Braga Decl., Ex. E ¶¶ 6-7.] Given the obvious irrelevance of the payments and royalty data to CrossFit's case as discussed *infra*, the balance tips strongly in favor of maintaining the redactions to the data.

### B. *The information is irrelevant to this case.*

"Although irrelevance is not among the litany of enumerated reasons for quashing a subpoena found in Rule 45, courts have incorporated relevance as a factor when determining motions to quash a subpoena. *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter,* 211 F.R.D. 658, 662 (D. Kan. 2003). Specifically, under [former] Rule 45(c)(3)(A), '[a]n evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party[,]' *Travelers Indem. Co.,* 228 F.R.D. at 113, and, in particular, requires the court to consider: 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.' *Id*. (quoting IBM, 83 F.R.D. at 104)." *Moon v. SCP Pool Corp*., 232 F.R.D. 633, 637 (C.D. Cal. 2005).

Further, "a showing of irrelevancy of proposed discovery can satisfy the 'good cause' requirement of Rule 26(c)." *Smith, supra*, 158 F.R.D. at 140; *see also Carrera v. First Am. Home Buyers Prot. Co.*, 2014 U.S. Dist. LEXIS 101064 at *2-4 (S.D. Cal. July 23, 2014). In fact, even where a protective order is already operative, information that is "not relevant to the underlying litigation" may still be produced in redacted form.

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

*See Knoll, Inc. v. Moderno, Inc.*, 2012 U.S. Dist. LEXIS 138497 at *5-6 (N.D. Cal. Sept. 26, 2012).

Here, CrossFit clearly cannot show relevance under Rule 26 or Rule 45 because the revenue information in the publishing agreements is plainly irrelevant, as this Court already held when considering a similar motion. [Doc. No. 58.] Indeed, the redacted contracts themselves demonstrate that any royalty payment is not generated from the views of a specific article, which appears to be the primary argument made by CrossFit. [Doc. No. 70 at pp. 11-13.] Even though NSCA could not have known about the purported "popularity" of the article beforehand, CrossFit argues that because so many views/purchases of the article were allegedly made, that this evidence is relevant to show that NSCA had a financial motive. [*Id.* at 12-13.] CrossFit also argues that the information is relevant to damages because CrossFit seeks disgorgement of profits, [*id.* at 13], even though, as shown above, the contracts do not attribute royalties to the "popularity" of a particular article. Neither of these arguments is persuasive as a basis to permit disclosure of NSCA's private financial information.

Indeed, this Court recognized as much when it rejected CrossFit's arguments as "pure, unconvincing speculation" because: (1) despite CrossFit's speculation that the royalties would go to a motive to disparage CrossFit, "[i]t is just as likely that defendant would be highly motivated to build and maintain its reputation in order to support continued royalties"; and (2) even a "cursory review" of one redacted publishing agreement showed that the royalties are paid annually and in aggregate, such that "there is nothing to indicate that the structure of the redacted royalty payment information would provide 'direct evidence of the benefits the NSCA [allegedly] received from its false advertising and unfair business practices' for the Devor Article." [Doc. No. 89 at pp. 6-7.]

The responsive documents LWW produced pursuant to CrossFit's subpoena contain redacted sums that NSCA pays to LWW for publishing services, and royalties that NCSA receives from LWW. The amount that NSCA pays to LWW for publishing

services is private financial information that is completely irrelevant to any allegation contained in CrossFit's pleadings, and has absolutely no value to this case whatsoever. Likewise, any royalties NCSA receives from LWW are equally irrelevant to this litigation. Despite CrossFit's belief that the royalty payments (or some portion thereof) are attributable to the publication of the subject article, to find this argument persuasive, the Court will need to conclude that the royalty payment from LWW to NSCA is generated from the subject article. This, of course, is not the case: as seen from the agreement, the royalty payment consists of revenue from the JSCR **and** an additional journal, the SCJ, collected by LWW and actually received from LWW from **all sources** (i.e., membership subscription revenues, handling charges and air freight charges, advertising, reprints, back issues, etc.). **In fact, the subject agreement makes no reference to the royalties being attributed to views of any particular article.** And, even if that were the case, the JSCR publishes hundreds of articles in a single year. [*See, e.g.*, Doc. No. 82-12 at p. 1 ¶ 3.] Thus, it is impossible to conclude that any portion of the royalty payment from LWW to NSCA is derived from viewing the subject article. CrossFit's attempt to create relevance by arguing that redacted sections of the contract show individualized journal royalties still does not solve this underlying problem: royalties are not attributed to views of any particular article.

In sum, the Court should not permit CrossFit to push a non-party to provide confidential information about a party in this case, and especially when there is no valid reason to permit disclosure of this information at all—even if it were requested directly from NSCA. The information that is sought here is simply irrelevant as to CrossFit's causes of action, which fact ensures that, even under the operative Joint Protective Order in this case, Defendant may still redact irrelevant information. And, in light of the balancing test discussed above, the obvious irrelevance of the redacted information tips the balance in favor of maintaining the redactions.

## V.    CROSSFIT IS NOT ENTITLED TO DISCOVERY SANCTIONS

Tacked on as an afterthought argument, CrossFit seeks discovery sanctions in the

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

event that the NSCA's motion is denied and LWW is ordered to produce the unredacted information. CrossFit's argument is conclusory and grossly misstates the text of Rule 37(a)(5) by presenting the Rule as though sanctions are awarded as a matter of course if CrossFit prevails on the motion. This is not the law, and CrossFit's quotation of the rule tellingly omits the requirement that "the Court must not order this payment" if the motion was "substantially justified" or "other circumstances make an award of expenses unjust." Pursuant to this rule, "[t]he court will not order monetary or other sanctions when it finds that a position was substantially justified in that the parties had a genuine dispute on matters on which reasonable people could differ as to the appropriate outcome." *Roberts v. Clark Cnty. Sch. Dist.*, 312 F.R.D. 594, 609, (D. Nev. 2016); *see also Reygo Pacific Corp. v. Johnston Pump Co.*, 680 F.2d 647, 649 (9th Cir. 1982) ("A request for discovery is 'substantially justified' under the rule if reasonable people could differ as to whether the party requested must comply.").

Here, substantial justification is obviously present because, as the Court noted in its initial Order regarding this discovery dispute, there was nothing in the record except for speculation that would show any relevance of the redacted information to CrossFit's case. [Doc. No. 89 at pp. 6-7.] In other words, this Court noted that there was a genuine dispute at issue and that the NSCA's objections appeared to be well-taken. The Court also invited the parties to rebrief this issue if the discovery dispute could not be resolved through meet and confer efforts following its Order. [*Ibid.*] After the Court's Order, CrossFit continued to maintain that the information was relevant and discoverable, leading to the rebriefing of this motion. [Braga Decl. ¶ 13; Ex. F.] Owing to the unsettled nature of the motion and the Court's expressed opinion that the NSCA's objections appeared to be well-taken, the NSCA's filing of both motions regarding this discovery dispute was substantially justified. *See Roberts, supra*, 312 F.R.D. at 609.

## VI. CONCLUSION

Based on the foregoing, this Court should deny CrossFit's request for unredacted

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

1 copies of the agreements at issue, should enter an order quashing the challenged

2 subpoena, and should enter a protective order limiting the agreements' disclosure to the

3 redacted copies already produced to CrossFit.

## CROSSFIT, INC.'S RESPONSE

## I.  INTRODUCTION AND ISSUES BEFORE THE COURT

6 CrossFit, Inc.'s complaint centers on a supposed scientific study (the "Devor

7 Study" or "Study") the NSCA published in its premier journal, the Journal of Strength

8 & Conditioning Research ("JSCR" or "Journal").  The Devor Study concluded that

9 CrossFit training was effective, but noted (falsely) that a significant number of Study

10 participants were injured by the CrossFit training underlying the Study.  The media and

11 CrossFit's competitors quickly latched onto the Devor Study's false injury data days

12 after it was published ahead of print in February 2013.

13 CrossFit, Inc. learned that the injury data and related conclusions were untrue,

14 which the NSCA finally conceded in a September 2015 Erratum.  The NSCA waited

15 *over 30 months* to investigate the fraudulent injury data while the media coverage of the

16 Devor Study saturated the fitness market.  Even after the allegedly-injured Study

17 participants' submitted sworn declarations confirming they (1) were not injured by the

18 CrossFit training in the Study and (2) never told anyone they were injured by the

19 CrossFit training during the Study, the NSCA waited an additional 9 months to issue

20 the Erratum while the false scientific data continued to circulate in the market.

21 The Journal's publisher—Lippincott, Williams & Wilkins—keeps publically-

22 available data on Journal sales.  It is not disputed that the Journal edition containing the

23 Devor Study was the most popular edition in the Journal's history. The NSCA has a

24 royalty arrangement with Lippincott based, in part, on the volume of Journal sales. The

25 NSCA failed to identify this relationship to CrossFit, Inc.; failed to produce the

26 Publishing Agreement itself; failed to produce the underlying financial records detailing

27 the royalty payments it received; and has now instructed Lippincott to withhold the un-

28 redacted Publishing Agreement and related royalty information.

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
_Attorneys at Law_

Against this backdrop, the primary issues before the Court are as follows:

1. Disgorgement of defendant's profits is one measure of damages for CrossFit, Inc.'s claims. The NSCA received royalty payments from its publisher based on Journal sales. <u>The Journal edition containing the Devor Study was the most popular edition in the Journal's history</u>. The NSCA refuses to produce, and has instructed its publisher not to produce, all royalty-related information. If the NSCA enjoyed increased royalties based on the popularity of the Devor Study, are the Journal-related royalties discoverable as a measure of CrossFit, Inc.'s damages?

2. The Publishing Agreement at issue requires Lippincott to maintain *individual* records of revenues for each of the two journals governed by the Publishing Agreement. Lippincott has not produced the records relating to the individual revenues for the Journal based on the NSCA's instruction. Are Lippincott's records detailing the revenues for <u>the Journal</u> discoverable?

3. The Parties' Stipulated Protective Order governs confidential information exchanged during discovery. The Journal-related royalty information can be designated CONFIDENTIAL or CONFIDENTIAL-FOR COUNEL ONLY under the Stipulated Protective Order. The NSCA offers no evidence that CrossFit, Inc. has or will violate the Stipulated Protective Order. Will the Stipulated Protective Order adequately address the NSCA's confidentiality concerns?

As described below, the answer to each of the above questions is yes.

## II.    RELEVANT BACKGROUND

The NSCA failed to identify Lippincott as custodian in their Rule 26 Disclosures as an individual "likely to have discoverable information." [Serritella Decl., ¶2.] In response to CrossFit, Inc.'s discovery requests, the NSCA produced documents on behalf of itself and its agents on September 4, 2014 and October 27, 2014. [Serritella Decl., ¶4.] CrossFit, Inc. observed numerous deficiencies in the NSCA's productions, including its failure to produce numerous documents of which CrossFit, Inc. was aware. [Id.] Those shortcomings were the basis of several Joint Motions, including one filed on December 18, 2014 (Dkt. No. 32). In that December 18, **2014** joint discovery motion, the NSCA represented that Lippincott's documents were within the NSCA's control:

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

"The NSCA has recently obtained the cooperation of the publisher of the JSCR (an entity separate and apart from the NSCA) to obtain the communications within the Editorial Manager in a native format so as to comply with the ESI Order." [Dkt. No. 32-2 at p.3 (Kenneth Kawabata December 18, 2014 Declaration); Serritella Decl., ¶5.]

Further illustrating the NSCA's control over Lippincott, the NSCA's counsel represented that it would work with Lippincott to gather and produce Lippincott's responsive documents in response to CrossFit, Inc.'s discovery requests. [Serritella Decl., ¶3.]

In January 2015, after questioning the completeness of the NSCA's document production as related to CrossFit, Inc.'s discovery requests, CrossFit, Inc. subpoenaed Lippincott. [Serritella Decl., ¶7, Ex. A.] In the email attaching the notice provided to the NSCA, CrossFit, Inc.'s counsel noted in part, "This subpoena of course does not affect the NSCA's obligation to collect and produce all responsive documents that are in its possession, custody, or control, including those held by LWW." [Id.]

In contrast to the NSCA's claim that it was working cooperatively with Lippincott to collect responsive documents, CrossFit, Inc. later learned that the NSCA never contacted Lippincott about the January 2015 subpoena. [Nahama Decl., ¶2.] Additionally, the NSCA never instructed Lippincott to place a litigation hold on discoverable documents, including documents maintained within the EMS. [Id.]

After suspecting for a second time that the NSCA failed to produce critically-relevant documents that would corroborate the misconduct alleged in CrossFit, Inc.'s complaint, CrossFit, Inc. issued Lippincott a second subpoena in October 2015. [Nahama Decl., ¶3, Ex. A.] CrossFit, Inc. served the NSCA with notice of the subpoena the same day. [Id.] Lippincott's counsel was accommodating and began working with CrossFit, Inc. to gather responsive documents. [Nahama Decl., ¶4.] Lippincott's counsel also confirmed that the NSCA's counsel had never approached Lippincott in January 2015 about gathering responsive documents to CrossFit, Inc.'s first subpoena. [Id.] Lippincott then produced over two-hundred pages of documents strongly

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

supporting CrossFit, Inc.'s claims and theories. [Id. at ¶5, Exs. B,C.] One of those documents was a redacted publishing agreement ("Publishing Agreement"). [Braga Decl., Ex. B-1.] The Publishing Agreement, among other things, provided that Lippincott paid the NSCA royalties based on Journal sales. [Id. at ¶6.]

Around the same time, CrossFit, Inc. also learned that the Devor Study received more and higher quality attention than any other article in the Journal's history. [Nahama Decl., ¶7, Ex. D.] Now that CrossFit, Inc. has confirmed its initial suspicions that the NSCA's previous document productions were incomplete, the NSCA seeks to bury the Publishing Agreement by disavowing its relevance and making the untenable claim that it only learned of the issue in December 2015.

### III. ARGUMENT

**A.** **The Publishing Agreement and Underlying Financial Information are Discoverable Because They Are Evidence Relating to CrossFit, Inc.'s Damages and the NCSA's Motive to Unfairly Compete with CrossFit, Inc.**

The NSCA claims that the Publishing Agreement, and related underlying financial information illustrating that the NSCA received significant revenue from Journal sales is irrelevant. Information is discoverable if it concerns: "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). "Traditionally, the relevance requirement of Rule 26(b)(1) has been construed broadly," and the 2015 Amendments to Rule 26 did nothing to change that traditional interpretation. *Whit v. United Behavioral Health,* 2016 U.S. Dist. LEXIS 7242, *35-36 (N.D. Cal. Jan. 21, 2016) ("The Comments relating to the 2015 Amendments explain that the purpose of the changes was to restore and reinforce the focus on proportionality in discovery but that the amendments did not change the existing responsibilities of the court and the parties to consider the proportionality."). As explained below, Journal-related royalties are relevant to CrossFit, Inc.'s claims and proportional to the needs of the case.

**1.** **The Journal-Related Royalties Are Discoverable Because They Are a Measure of CrossFit, Inc.'s Damages.**

CrossFit, Inc. has pled, and if successful at trial will be entitled to, disgorgement of the NSCA's profits stemming from the NSCA's false advertising and unfair business practices in connection with the Devor Study. *See POM Wonderful LLC v. Purely Juice, Inc.*, 362 Fed. Appx. 557 (9th Cir. 2009) (noting that plaintiff awarded disgorgement of defendant's profits in connection with plaintiff's Lanham Act and §17500 false advertising claims and plaintiff's §17200 unfair completion claim).

In its Order denying the NSCA's first request for a protective order, the Court noted that because the Publishing Agreement appears to provide an aggregate payment for two journals, there is nothing to indicate access to the redacted Publishing Agreement "would be helpful in attributing any of the royalties to alleged false advertising and/or unfair business practices 'stemming from' the popularity of any particular article." [Doc. No. 89, at 6-7.] The NSCA's updated motion focuses on the Court's comments, yet glosses over several critical details illustrating why Lippincott is in possession of various records detailing revenues and royalties related strictly to the Journal.

As an initial consideration, Publishing Agreement paragraph 10(d) notes that Lippincott "will provide an annual financial statement listing the Journals' revenues to be rendered each year…" [See Braga Decl., Ex. B-1.] Similarly, paragraph 10(b) notes that Lippincott maintains revenues "***attributed to an individual Journal***…" Lippincott has refused to produce these records relating solely to the Journal based only on the NSCA's instruction. [Nahama Decl., ¶11.]

Next, the NSCA does not address whether it received increased royalties beginning when the Devor Study was published. Because the Journal edition containing the Devor Study was the most popular article in the Journal's history, the NSCA presumably enjoyed increased royalties springing from the broad media coverage the Devor Study's injury data received. The NSCA has obstructed CrossFit, Inc.'s (and the

Court's) access to the very terms of its royalty arrangement identifying exactly how the two categories of royalty payments are calculated.

Although CrossFit, Inc. agrees that royalties the NSCA received from its other journal has marginal relevance, royalties based on Journal sales before and after the Devor Study are plainly relevant to CrossFit, Inc.'s damages claims. The NSCA has failed to illustrate that its royalty payments from Lippincott cannot be segregated by each journal. For example, the full sub-paragraph below Publishing Agreement paragraph 10(a) is redacted, which explains how the royalty will be calculated.

As another example, section 10(d) of the Publishing Agreement provides that the NSCA will receive an annual (1) "guaranteed" royalty and (2) an "excess royalty" payment. If the NSCA received "excess royalty" payments based on a surge in Journal sales beginning with the Edition containing the Devor Study, then those "excess royalties" are profits that should be subject to disgorgement.

The NSCA also offers a flawed premise in support of its argument that the royalty payments from Lippincott are irrelevant: "the Court will need to conclude that the royalty payment from LWW to NSCA is generated from the subject article." (*See* p. 9, *supra*.) The NSCA's premise is flawed because an increase in royalties starting with the Journal <u>edition</u> containing the Devor Study is strong evidence—especially when combined with Lippincott's data on the popularity of the Study—that the Study was the catalyst for the surge in royalties. [*See* Nahama Decl., at ¶7, Ex. D.] CrossFit, Inc. should be afforded an opportunity to assess and present evidence that the NSCA's royalty payments from Lippincott increased due to the Journal edition containing the Study.

It appears the NSCA made substantial profits from publishing false, provocative information about a popular competitor that spread like wildfire in the media. The NSCA's profits are therefore discoverable as a potential measure of CrossFit, Inc.'s damages.

## 2. The Journal-Related Royalties Are Discoverable Because They Provide Evidence of a Financial Motive for the NSCA to Unfairly Compete with CrossFit, Inc.

Two important issues in the case are <u>why</u> the NSCA (1) published the false injury data and, (2) waited over two years[5] to publically acknowledge the false injury data. In its Answer to the First Amended Complaint ("FAC"), the NSCA alleges that it and CrossFit, Inc. are not competitors. (Doc No. 88, Answer to FAC, ¶2 (stating in part, "The NSCA . . . denies it and CrossFit are competitors…".)

The Publishing Agreement and underlying financial records strongly suggest the NSCA had a financial motive to publish the false information in the Devor Study. *See Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.,* 525 F.3d 822, 826 (9th Cir. 2008) ("Whether a business practice constitutes unfair competition under Cal. Bus. & Prof. Code § 17200 involves an examination of that practice's impact on its alleged victim, balanced against ***the reasons, justifications <u>and motives</u> of the alleged wrongdoer***.") (emphasis added).

While the NSCA's claim that is not a competitor with CrossFit is belied by corroborated internal documents it produced, the royalty information is additional evidence of the NSCA's financial incentive to unfairly compete. CrossFit, Inc. will be handicapped from meaningfully assessing whether and to what extent there was a financial incentive for the NSCA to publish the false injury data and refuse to correct the false injury data for over two years while its Journal sales soared without access to the profits the NSCA enjoyed from those sales.

## B. The NSCA Should Not Be Permitted to Bury the Evidence of Royalty Payments It Received Relating to the Devor Study.

In its attempt to bury all evidence regarding Journal royalties, the NSCA omits

---

[5] CrossFit, Inc. emailed the NSCA's Board a detailed investigation alleging scientific misconduct in May 2013. The NSCA's erratum was issued in September 2015.

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

several important facts that provide complete context to the specific issue now before the Court.

The NSCA's claim that "CrossFit did not seek to enforce the subpoena until October 2015" is belied by the NSCA's previous representations. Specifically, CrossFit, Inc. relied on representations from the NSCA's counsel that they were proactively working with Lippincott in connection with discovery. [Serritella Decl. at ¶¶2-3 and Exhibit A]  During discovery, however, CrossFit, Inc. learned information suggesting the NSCA had not completely produced documents in the Journal's editorial management system that CrossFit, Inc. believed would corroborate its allegations that the NSCA grossly manipulated the peer-review process.

CrossFit, Inc. later learned that these documents, including logs and email correspondence, contained information directly relevant to CrossFit, Inc.'s claims. [*See* Nahama Decl. at ¶¶5,8, Exs. B,C.] CrossFit, Inc. learned in or around September 2015 that the NSCA's counsel never contacted Lippincott with respect to CrossFit, Inc.'s January 2015 subpoena. [Id. at ¶2.] CrossFit, Inc. also learned that the NSCA had not instructed Lippincott to preserve documents that may be relevant to this case and/or responsive to the January 2015 subpoena. [Id.]  Tellingly, the NSCA admitted that it did not instruct Lippincott to apply a litigation hold until <u>October</u> 2015—10 months after CrossFit, Inc.'s January 2015 subpoena to Lippincott —after CrossFit, Inc. was pressing the NSCA for reassurances concerning the EMS documents. [Id. at ¶9, Ex. E.] CrossFit, Inc. eventually issued a second subpoena to Lippincott on October 1, 2015, in an attempt to discover the EMS and other discoverable documents the NSCA had failed to produce to CrossFit, Inc.

Lippincott's document production in response to the October 2015 subpoena validated CrossFit, Inc.'s suspicions that the NSCA either withheld discoverable documents or failed to diligently search for responsive documents. [Id. at ¶8.] For example, Lippincott's production included logs from the JSCR's Editorial Management System that provided new information on the peer-review process. [Id. at

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
—— Attorneys at Law ——

[¶8] The Lippincott-produced logs contained previously unproduced evidence consistent with CrossFit, Inc.'s theory that the NSCA grossly manipulated the peer-review process for the Devor Study in furtherance of the NSCA's efforts to unfairly compete with CrossFit, Inc. Further, Lippincott's production included a redacted copy of Lippincott's Publishing Agreement with the NSCA, the primary document at issue in the current Joint Motion. [Nahama Decl., ¶6.]

It is untenable that "counsel for NSCA became aware that CrossFit, Inc. was demanding that Lippincott produce unredacted copies of the publishing agreements" for the first time on December 15, 2015. In reality, CrossFit, Inc.'s counsel served the NSCA's counsel with Notice of the Lippincott subpoena on January 29, 2015. [*See* Braga Dec. ¶2, Exhibit A.] That subpoena commanded Lippincott to produce "[a]ll agreements, whether informal or formal, including drafts or proposed agreements between (a) [Lippincott] and (b) the NSCA, the JCSR,…" [*Id.* at Request No. 4.] Simply put, "unredacted copies of the publishing agreements" would have fallen within the scope of that request, and thus, the NSCA should have been aware that CrossFit, Inc. was seeking such documents as early as January 29, 2015. At best, the NSCA was asleep at the wheel. The NSCA woke up once Lippincott's counsel indicated that it would produce the complete Publishing Agreement to CrossFit, Inc. if the NSCA did not seek and receive judicial intervention. [Nahama Decl., ¶11, Ex. G.]

Finally, Lippincott has confirmed that they consider the Publishing Agreement at issue to be responsive to the subpoena and that any confidentiality concerns can be adequately protected by the Court's existing Protective Order [Nahama Decl., Ex. F.] Lippincott has only withheld production based on the NSCA's improper instruction. [Id.] Accordingly, the NSCA should not be permitted to instruct Lippincott to withhold information central to CrossFit, Inc.'s claims.

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

C. **The NSCA Has Provided No Evidence That the Parties'**
**Stipulated Protective Order is Insufficient to Address Any**
**Confidentiality Concerns.**

"A party may seek a protective order pursuant to Rule 26(c) regarding a subpoena issued to a non-party if it believes its own interest is jeopardized by the discovery sought from the non-party." *Wells Fargo & Co. v. ABD Ins.*, 2012 U.S. Dist. LEXIS 173365 at *6. To be entitled to such a protective order under Fed. R. Civ. P. 26(c), a party must make a "showing of good cause" that limiting the requested discovery is necessary "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* at *7 (quoting Fed. R. Civ. P. 26). Such a showing cannot be premised upon the assertion that the requested documents or information are irrelevant to the requesting party's case. *Bender v. Tropic Star Seafood, Inc.*, 2008 U.S. Dist. LEXIS 88102, *10 (N.D. Fl. July 21, 2008) ("A party is not subjected to 'annoyance, embarrassment, oppression, or undue burden or expense' when the opposing party uses a Rule 45 subpoena to gather irrelevant documents from a non-party.").

Beyond its misguided relevance arguments, the NSCA claims it has a "strong interest" in protecting the royalty-information from the NSCA's competitors. (See above, pp. 6-7.) But the NSCA fails to offer any evidence addressing why the existing Stipulated Protective Order is insufficient to protect the NSCA's privacy or confidentiality concerns. [Nahama Decl., Ex. F.]

In support of its position, the NSCA presents a disingenuous argument alleging that CrossFit, Inc. "has already inadvertently filed documents in the public record that were supposed to be filed under seal pursuant to the Joint Protective Order, thereby necessitating their withdrawal." [*See* p. 7, supra, and Braga Decl., Ex. H.] This statement is false. Exhibit H to the Braga declaration notes that CrossFit, Inc.'s legal team unintentionally labeled a **redacted** joint motion as an Application to Seal during its electronic filing. As Exhibit H plainly states, CrossFit, Inc. quickly identified the

issue and resolved it. But even if CrossFit, Inc. had not identified and addressed the issue, *no confidential information was ever placed in the public record*. The NSCA's argument is therefore inaccurate.

Putting the NSCA's spin aside, it offers no legal or factual support for its position that the Stipulated Protective Order will not address its misplaced confidentiality concerns. Upon further scrutiny, this argument is merely a reiteration of the NSCA's primary "relevance/undue burden" argument because it is premised upon a misinterpretation of this Court's prior Order re Joint Motion for Determination of Discovery Dispute. [Dkt. No. 58]

Nowhere in its prior Order did the Court find that the NSCA's revenue and business plans "are confidential, subject to a right to privacy, and that disclosure of the same were not relevant to CrossFit's case," as the NCSA suggests. Instead, the Court found that "[s]ince Document Request No. 30 is ***overly broad and unduly burdensome*** and there is insufficient information for the Court to determine appropriate time and scope limitations for this request, the Court declines to issue an order compelling defendant to provide a further response to this request." [Dkt. No. 58 p. 9, ln. 23-27 emphasis added.] Accordingly, the Court's prior Order lends no support for the NSCA's argument in the current Joint Motion and the NSCA has failed to establish "good cause" under Rule 26. *See Wells Fargo*, 2012 U.S. Dist. LEXIS 173365 at *6.

## D. CrossFit, Inc. is Entitled to Recover its Reasonable Expenses in Connection with this Joint Motion.

If the NSCA's motion is denied, the Court should award CrossFit, Inc. its reasonable expenses, including attorneys' fees, in connection with this Joint Motion. *See* Fed. R. Civ. P. 26(c)(3) ("Rule 37(a)(5) applies to the award of expenses" with respect to motions for protective orders); Fed. R. Civ. P. 37(a)(5) ("If the motion is denied, the court … must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's

Case No. 14CV1191 JLS KSC

fees."). CrossFit, Inc. respectfully requests $15,000 in connection with the reasonable expenses incurred with opposing this renewed motion and the original motion. [Nahama Decl., ¶12.]

## VII. CONCLUSION

Lippincott is in possession of an unknown quantity of financial records relating to revenues and royalties generated from the Journal. Lippincott's own data illustrating the popularity of the Journal edition containing the Devor Study strongly suggests the NSCA enjoyed additional profits based on the false information in the Devor Study. Lippincott has confirmed that it will comply with CrossFit, Inc.'s subpoena once the NSCA's protective order request is denied. CrossFit, Inc. respectfully requests that the Court deny the NSCA's request for a protective order.

DATED: June 1, 2016

**MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP**

By: _____/s/_____
David Bederman
Attorneys for Defendant NATIONAL
STRENGTH AND CONDITIONING
ASSOCIATION

MINTZ LEVIN COHN FERRIS GLOVSKY
AND POPEO PC

By _/s/_____
Micha Danzig, Esq.
SBN 177923

3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
Telephone: (858) 314-1500
Facsimile: (858) 314-1501

*Counsel for Plaintiff
CROSSFIT, INC.*

22

Case No. 14CV1191 JLS KSC

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures of the United States District Court for the Southern District of California, I certify that the content of this document is acceptable to counsel for the Defendant and that I have obtained authorization from Micha Danzig to affix his electronic signature to this document.

_s/David Bederman_
David Bederman

**PROOF OF SERVICE**

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**


CROSSFIT, INC., v. NATIONAL STRENGTH AND CONDITIONING ASSOCIATION,

District Court Case No. 14-cv-1191-JLS(KSC)


I, Evelia Izaguirre, hereby certify that I am over the age of eighteen and not a party to the within action; I am employed by Manning Kass Ellrod Ramirez Trester LLP, in the County of Los Angeles at 801 S. Figueroa Street, 15th Floor, Los Angeles CA 90017.

On June 1, 2016, I served the document below described as :

**JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE**
The document was served by the following means:

- **BY ELECTRONIC TRANSMISSION VIA NEF:** I hereby certify that I electronically filed the foregoing document(s) with the Clerk of Court using the CM/ECF system, which sent Notifications of Electronic Filing to the persons at the e-mail addresses listed immediately below. Accordingly, pursuant to the Court's Local Rule 5.4(c), I caused the document(s) to be sent electronically to the persons listed immediately below.

I declare under penalty of perjury under the laws of United States of America that the foregoing is true and correct.

Executed on June 1, 2016 at San Diego, California.


_s/Evelia Izaguirre_
Evelia Izaguirre

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SERVICE LIST**
*Cross-Fit, Inc. v. National Strength and Conditioning Association;*
**USDC Case No.: 14CV1191 JLS KSC**

Daniel Schecter
LATHAM & WATKINS LLP
355 South Grand Avenue
Los Angeles, CA 90071-1560
Telephone: (213) 485-1234
E-Mail: daniel.schecter@lw.com
Attorneys for Plaintiff CROSSFIT, INC.

Blair Connelly
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022-4834
Telephone: (212) 906-1632
Facsimile: (212) 751-4864
E-Mail: blair.connelly@lw.com
Attorneys for Plaintiff CROSSFIT. INC.

William Reckler
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022-4834
Telephone: (212) 906-1632
Facsimile: (212) 751-4864
E-Mail: william.reckler@lw.com
Attorneys for Plaintiff CROSSFIT. INC.

Paul Serritella
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022-4834
Telephone: (212) 906-1632
Facsimile: (212) 751-4864
E-Mail: paul.serritella@lw.com
Attorneys for Plaintiff CROSSFIT. INC.

Micha Danzig
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
Telephone: (858) 314-1500
Facsimile: (858) 314-1501
E-Mail: mdanzig@mintz.com
Attorneys for Plaintiff CROSSFIT, INC.

48189025v.1