UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CROSS-FIT, INC., a Delaware corporation,<br><br>                              Plaintiff,<br><br>v.<br><br>NATIONAL STRENGTH AND CONDITIONING ASSOCIATION, a Colorado corporation,<br><br>                              Defendant. | Case No.:  14cv1191-JLS(KSC)<br><br>**ORDER RE RENEWED JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE (PUBLISHING AGREEMENTS);**<br><br>**PROTECTIVE ORDER; AND ORDER QUASHING, IN PART, SUBPOENA SERVED ON THIRD PARTY LWW**<br><br>**[Doc. No. 104.]** |

Before the Court is a Renewed Joint Motion for Determination of Discovery Dispute. [Doc. No. 104.] In the Renewed Joint Motion, defendant seeks an order: (1) quashing a subpoena plaintiff served on third party Lippincott Williams & Wilkins ("LWW") pursuant to Federal Rule of Civil Procedure 45 which seeks, in part, to obtain un-redacted copies of certain publishing agreements; and (2) limiting disclosure of the publishing agreements to redacted copies. [Doc. No. 104, at pp. 15-16.] Defendant does not object to production of the subject publishing agreements in redacted form subject to the joint Protective Order filed in this case on August 16, 2014. [Doc. No. 104, at p. 7,

citing Doc. No. 12.] Plaintiff seeks an order enforcing the subpoena on LWW and compelling production of un-redacted copies of the publishing agreements subject to the August 16, 2014 stipulated Protective Order. In addition, plaintiff seeks to recover reasonable expenses for participating in bringing the Joint Motion. [Doc. No. 104, at pp. 24-27.]

For the reasons outlined more fully below, the Court finds that plaintiff's request for an order enforcing, in part, the Rule 45 subpoena and compelling LWW to produce un-redacted copies of the publishing agreements must be DENIED. The Court also finds that defendant's request for an order quashing, in part, plaintiff's Rule 45 subpoena served on LWW must be GRANTED, to the extent the subpoena seeks un-redacted copies of defendant's publishing agreements with LWW. In addition, the Court finds that defendant's request for a protective order precluding production of un-redacted copies of its publishing agreements with LWW must be GRANTED.

## *Allegations in the First Amended Complaint*

The First Amended Complaint ("FAC") filed on February 29, 2016 includes causes of action for false advertising, unfair competition, declaratory relief, and trade libel. [Doc. No. 71-6, at p. 3.] According to the FAC, plaintiff Cross-Fit, Inc. and defendant National Strength and Conditioning Association ("NSCA") "are competitors in the fitness industry." [Doc. No. 71-6, at p. 3.] The FAC alleges that defendant NSCA and "its long-time peer, the American College of Sports Medicine (the 'ACSM'), are two pillars of this traditional fitness establishment." [Doc. No. 71-6, at p. 4.] Plaintiff, on the other hand, "is a relatively new player in the fitness space" with "a radically different approach" to fitness. [Doc. No. 71-6, at p. 4.]

Defendant publishes the *Journal of Strength and Conditioning Research* ("JSCR") which has a "large readership." [Doc. No. 71-6, at pp. 5, 9.] The key allegations in the FAC are as follows: "In November 2013, the JSCR published a study by Steven T. Devor (an ACSM 'fellow'), Michael M. Smith, Allan J. Sommer, and Brooke E. Starkoff, entitled 'Crossfit-based [sic] high intensity power training improves maximal aerobic fitness and

body composition' (the 'Devor Study').[1]  The Devor Study purported to track a ten-week CrossFit program. While the Devor Study correctly found that CrossFit improved the athletes' fitness levels, it also reported that nine of fifty-four participants (16% of the sample population) dropped out of the program due to 'overuse or injury.' That assertion was based on false data." [Doc. No. 71-6, at p. 5.]

More specifically, the FAC alleges that defendant published the following false, misleading, and/or deceptive statements about CrossFit's injury rates in the Devor Study: (1) "[N]ine subjects (16% of total recruited subjects) cit[ed] overuse or injury for failing to complete the [CrossFit] program and finish follow up testing;" and (2) "[T]here are emerging reports of increased rates of musculoskeletal and metabolic injury in these programs [including CrossFit]." [Doc. No. 71-6, at pp. 18-19.]

According to the FAC, it is simply not true that nine participants dropped out of the program because of overuse or injury. [Doc. No. 71-6, at p. 3, 5.] In addition, plaintiff believes that the false data and information in the Devor Study was "contrived" not only to dissuade people from using CrossFit as a form of exercise but also to dissuade trainers from seeking certification as CrossFit trainers. [Doc. No. 1, at pp. 5-6.]  Plaintiff confronted defendant with facts indicating study participants did not drop out of the program because of overuse or injury, but defendant "failed to retract the false Devor Study." [Doc. No. 71-6, at p. 14-15.]

New allegations in the FAC are that defendant published and distributed an "Erratum" related to the Devor Article that included two additional false, misleading, and harmful statements.  [Doc. No. 71-1, at p. 2; 71-6, at pp. 17-18.]  The first challenged statement in the Erratum is that "'the injury rate should not be considered a factor in this [S]tudy.  This change does not affect the overall conclusion of the article.'" [Doc. No. 71-6, at p. 17.]  The FAC alleges that it was not appropriate for defendant to stand behind the

---

[1]  The Devor Study is sometimes referred to as the "Devor Article," the "published article," and the "Study."

"overall conclusion" of the Devor Study knowing it included false and/or misleading information. [Doc. No. 71-6, at p. 18.] The second challenged statement in the Erratum is that "'[a]fter the article was published, 10 of the 11 participants who did not complete the study have provided their reasons for not finishing, with only 2 mentioning injury or health conditions that prevented them from completing follow-up testing.'" [Doc. No. 71-6, at p. 17.] The FAC alleges that "[i]n reality, the two Study participants that 'mention[ed] injury or health conditions' explicitly clarified that their injury or health conditions stemmed from activities outside of the Devor Study." [Doc. No. 71-6, at p. 18.]

### *Relevant Procedural History*

On August 20, 2014, the Court entered a stipulated Protective Order governing the exchange of documents during the litigation that might contain "trade secret or other confidential research, technical, cost, price, marketing or other confidential research, technical, cost, price, marketing or other commercial information, as contemplated by Federal Rule of Civil Procedure 26(c)(1)(G)." [Doc. No. 14, at p. 1.] Under the Protective Order, a disclosing party may designate and mark documents or information as "confidential" or "confidential – for counsel only" if the party has a good faith belief that unrestricted disclosure could be harmful or prejudicial. [Doc. No. 14, at p. 3.] Any such documents are then entitled to special treatment and can only be disclosed to persons designated in the Protective Order. [Doc. No. 14, at pp. 4-6.] Use of any documents or information marked as "confidential" or "confidential – for counsel only" can only be used for purposes of this action. [Doc. No. 14, at p. 6.] In addition, the parties must "take reasonable precautions to prevent the unauthorized or inadvertent disclosure of such information" and must not seek to file any such documents with the Court without a motion to file the documents under seal. [Doc. No. 14, at pp. 6-7.]

The parties refer to the instant Joint Motion as "Renewed," because the Court previously addressed the same issues in a prior Joint Motion. [Doc. Nos. 70, 89.] Based on the briefing submitted by the parties in the prior Joint Motion, the Court was unable to determine whether a protective order prohibiting production of un-redacted copies of the

publishing agreements was really warranted or whether plaintiff was entitled to an order compelling production of the un-redacted copies of the publishing agreements. [Doc. No. 189, at p. 5.] As a result, the Court denied both parties' requests in the Joint Motion without prejudice and allowed the parties additional time to meet and confer and re-brief the issues. [Doc. No. 89, at p. 7.]

Although the parties filed their "renewed" Joint Motion, they did not satisfy the meet and confer requirements. Local Civil Rule 26.1(a) requires the parties to meet and confer in person if they are located in the same county and by telephone if they are located in different counties. CivLR 26.1(a). According to the Declaration of Brandon Braga, the parties merely exchanged e-mails about this issue before filing their "renewed" Joint Motion. [Doc. No. 104-11, at p. 3, citing Exhibit F.] Ordinarily, the Court would reject the parties' Joint Motion for failure to satisfy the meet and confer requirements. However, the Court will resolve the parties' "renewed" Joint Motion at this time for the sake of judicial efficiency. Discovery has been closed for some time now and the parties are headed for trial. Requiring the parties to meet and confer and re-file their "renewed" Joint Motion would only serve to further delay the case. ***Counsel are advised that any future motions will be rejected if they fail to satisfy the meet and confer requirements***.

### *Discussion*

The parties' discovery dispute arises from a Rule 45 subpoena served by plaintiff on third party LWW seeking: "All documents and communications concerning any partnerships, affiliations (whether formal or informal), or other relationships between [LWW] and [defendant], the JSCR, and/or ACSM." [Doc. No. 104, at p. 6.] In response to plaintiff's subpoena, LWW produced redacted versions of its publishing agreements with defendant. When plaintiff later demanded that LWW produce un-redacted copies of the publishing agreements, defendant objected, and the matter remains in dispute. [Doc. Nos. 104, at p. 6; 89, 70.]

///

Defendant argues that disclosure of the publishing agreements in un-redacted form would reveal irrelevant, sensitive, confidential, private financial information that defendant considers to be a trade secret.[2] [Doc. No. 104, at p. 7-8; Doc. No. 104-20, at p. 2.] Because of the nature of the information in the un-redacted portions of the publishing agreements, defendant believes that the August 20, 2014 Protective Order does not provide sufficient protection against inadvertent disclosure that would be harmful to defendant's business. [Doc. No. 104, at p. 7.] Defendant argues that it justifiably has "strong concerns" about the risk of inadvertent disclosure of the confidential information in its publishing agreements even under the August 20, 2014 Protective Order, because plaintiff has already made an "inadvertent" filing with the Court of confidential, un-redacted documents that had to be withdrawn from the public record. [Doc. No. 104, at p. 8, citing Doc. No. 86, Notice of Withdrawal of Doc. No. 82.]

Plaintiff argues that un-redacted copies of the publishing agreements are discoverable because they are relevant to the calculation of plaintiff's alleged damages. Based on its false advertising claim under the Lanham Act and its unfair business practices claim, plaintiff's theory of damages is disgorgement of defendant's profits stemming from the Devor Study. [Doc. No. 104, at pp. 20-21.]

---

[2] In support of this argument, defendant refers to "this Court's prior ruling that [defendant's] financial business projections were confidential and subject to a right of privacy, and that disclosure of the same was not relevant to [plaintiff's] case. [Doc. No. 58.]" [Doc. No. 104, at p. 7. *See also* Doc. No. 104, at p. 13 (stating plaintiff "cannot show relevance . . . , as this Court already held when considering a similar motion. [Doc. No. 58.]"); Doc. No. 104, at p. 11 (asserting that "this Court has already noted that [defendant's] annual revenue from its certifications, licensing and education programs, as well as its business plans and revenue projections, are confidential and subject to a right of privacy, and that disclosure of the same was not relevant to [plaintiff's] case. [Doc. No. 58)".] The Court will not rehash the matter here but notes that defendant reads too much into the cited "prior ruling." [*See* Doc. No. 58, at pp. 6-10.] The Court also notes that the cited "prior ruling" [Doc. No. 58] is not relevant to the matters at issue in the instant Joint Motion.

Plaintiff also argues that un-redacted copies of the publishing agreements and "underlying financial records" are discoverable because they show defendant had a financial motive for unfair competition against plaintiff. [Doc. No. 104, at pp. 19-24.] According to plaintiff, the royalty information is "additional evidence" corroborating defendant's financial motive for unfair competition. As a result, plaintiff argues that it will be "handicapped from meaningfully assessing whether and to what extent there was a financial incentive for [defendant] to publish the false injury data and refuse to correct the false injury data for over two years while its Journal sales soared without access to the profits [defendant] enjoyed from those sales." [Doc. No. 104, at p. 22.]

Plaintiff further asserts that LWW "is in possession of an unknown quantity of financial records relating to revenues and royalties generated from the Journal" and that LWW's "own data illustrating the popularity of the Journal edition containing the Devor Study strongly suggests [defendant] enjoyed additional profits based on the false information in the Devor Study." [Doc. No. 104, at p. 27.]

Based on the arguments presented in the Joint Motion, it appears that plaintiff is attempting to expand the scope of the parties' discovery dispute from the disclosure of un-redacted copies of the publishing agreements to also include other financial records and/or data kept by LWW related to royalties. To the extent plaintiff is attempting to do so, it is too late.[3] Fact discovery in the case has been closed for some time now [Doc. No. 65, at pp. 1-2], and the only issue being considered by the Court in connection with the parties' current Joint Motion is whether LWW must disclose un-redacted copies of its royalty agreements with defendant in response to plaintiff's Rule 45 subpoena. [*See*

---

[3]   Order Granting Joint Motion to Extend the Deadline for Completing Fact Discovery, Doc. No. 65, at pp. 1-2 (extending the fact discovery deadline to ***November 30, 2015*** solely for the purpose of deposing third party witnesses, including LWW); Chambers' Rule V(A) (stating that "discovery motions shall be filed no later than 45 days after the event giving rise to the dispute . . . ." and "[f]or written discovery, the event giving rise to the dispute is the service of an objection, answer, or response. . . .")

7

Order re Joint Motion for Determination of Discovery Dispute, Doc. No. 89, at pp. 1-7 (denying defendant's request for a protective order and plaintiff's request for an order compelling production of un-redacted copies of the publishing agreements and allowing the parties to re-brief the issue within 20 days).]

Federal Rule of Civil Procedure 26(b)(1), as amended, provides in part as follows: "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(1). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, . . . including . . . (A) forbidding the disclosure or discovery; . . . (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; . . . (G) requiring that a trade secret or other confidential . . . or commercial information not be revealed or be revealed only in a specified way. . . ." Fed.R.Civ.P. 26(c)(1).

As noted in prior Orders [Doc. No. 60, at pp. 4-8; Doc. No. 89, at p. 5], "[a] party asserting good cause [for a protective order] bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130-1131 (2003). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman v. International*, 966 F.2d 470, 476 (9th Cir. 1992), quoting *Cipollone v. Liggett 11 Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). When considering whether a protective order is appropriate, the Ninth Circuit has also indicated that the Court must balance conflicting interests, such as the risk of inadvertent disclosure of trade secrets to competitors against the risk that protection of a trade secret or confidential information would impair the ability of the

party seeking disclosure to prosecute or defend its claims. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992).

Under Federal Rule 45(d)(3), the Court "***must*** quash or modify a subpoena that: . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies. . . ." Fed.R.Civ.P. 45(d)(3)(A)(iii) (emphasis added). In addition, the Court may quash or modify a Rule 45 subpoena "if it requires:  (i) disclosing a trade secret or other confidential research, development, or commercial information. . . ." Fed.R.Civ.P. 45(d)(3)(B)(i). The Court may order production of trade secret or confidential information "under specific conditions if the serving party:  (i) shows a substantial need for the . . . material that cannot be otherwise met without undue hardship. . . ." Fed.R.Civ.P. 45(d)(3)(C).

Here, the redacted portions of the publishing agreements in dispute reveal the royalty rates defendant has negotiated with LWW for publishing services in connection with the JSCR, where the disputed article was published, and for a separate journal, the *Strength and Conditioning Journal* ("SCJ"), which does not appear to have any connection to this lawsuit. The royalty rates "are paid together for both the JSCR and the SCJ." [Doc. No. 104-20, at p. 2.]

In support of its request for a protective order, defendant submitted the Declaration of Keith Cinea, who has worked for defendant since 1999. Mr. Cinea's current title is Publications and Education Director. Previously, he held two other titles while working for defendant:  (1) Educational Programs and Products Coordinator; and (2) Director of Publications and Communications. [Doc. No. 104-20, at p. 2.] Through his work, Mr. Cinea is familiar with defendant's "negotiated payment and royalty rates with [LWW]." [Doc. No. 104-20, at p. 2.]

In his Declaration, Mr. Cinea outlines defendant's position concerning the sensitive, confidential nature of the information redacted from the royalty agreements:
/ / /
/ / /

      4.     Some of [defendant's] competitors, including but not limited to the American College of Sports Medicine ("ACSM"), also publish journals through LWW.

      5.     [Defendant] has obtained a competitive advantage through negotiating favorable combined payment and royalty rates with LWW for publishing the JSCR and the SCJ.  The NSCA considers this information a trade secret.

      6.     [Defendant] is strongly concerned that disclosure of the redacted financial information in the LWW agreements, even if disclosed under the Joint Protective Order in this case, will result in inadvertent disclosure of the redacted financial information to [defendant's] competitors.

      7.     [Defendant] is further concerned that inadvertent disclosure of the redacted financial information to its competitors will result in a loss of its competitive advantage, ultimately leading to higher combined payments to LWW and lower combined royalty rates from LWW for the JSCR and SCJ.

[Doc. No. 104-20, at p. 2.]

      In sum, Mr. Cinea's Declaration sets forth a plausible explanation as to why defendant seeks to protect the confidentiality of the information redacted from the royalty agreements.  Mr. Cinea's Declaration also identifies specific prejudice or harm that would result if the confidentiality of the redacted information is not protected from competitors.  Accordingly, the Court must balance the competing interests of the parties to determine whether defendant is entitled to protection of the redacted information over and above that already provided in the stipulated Protective Order filed on August 16, 2014.

      Defendant argues that the August 16, 2014 Protective Order does not provide sufficient protection against inadvertent disclosure of the sensitive, confidential information it has redacted from the publishing agreements.  [Doc. No. 104-20, at p. 2.] As evidence of the risk of inadvertent disclosure, defendant refers the Court to a filing error that occurred on or about May 5, 2016.  On May 5, 2016, plaintiff's counsel filed two redacted copies of a document entitled "Joint Motion for Determination of Discovery

Dispute [Peer Reviewer Identities]"[4] and numerous exhibits, totaling 670 pages (the "Peer Review Motion"). [Doc. No. 82.] Since some of the exhibits referenced in the Peer Review Motion had been designated and marked "confidential," plaintiff's counsel also made a separate filing on May 5, 2016, which included an un-redacted copy of the Peer Review Motion and the confidential exhibits (136 pages). [Doc. No. 83.] Contrary to the August 20, 2014 Protective Order and established procedure, plaintiff's counsel did not file a motion on May 5, 2016 requesting to file the confidential, un-redacted Peer Review Motion and the confidential exhibits under seal.[5] [*See* Doc. Nos. 82 and 83.] As a result, defendant understandably believes that the un-redacted, confidential version of the Peer Review Motion and the confidential exhibits were available in the public record as of May 5, 2016. [Doc. No. 104, at p. 12.]

In an e-mail dated May 6, 2016, plaintiff's counsel notified defense counsel that: (1) a Joint Motion involving the submission of confidential documents had been misfiled; (2) someone in the office of plaintiff's counsel had spoken with "the clerk;" and (3) the misfiled document was being re-filed "shortly." [Doc. No. 104-21, at p. 1.] A Notice of Withdrawal filed on May 6, 2016 indicates that Docket No. 82 (*i.e.*, the non-confidential, redacted copy of the Peer Review Motion and the non-confidential exhibits) were withdrawn. However, the confidential, un-redacted copy of the Peer Review Motion and the confidential exhibits were not withdrawn (*i.e.*, Doc. No. 83). [Doc. No. 86, at pp. 1-2.] To correct its failure to file a motion to file confidential documents under seal, plaintiff's counsel made a second filing on May 6, 2016, which included: (1) an

/ / /

---

[4] This Joint Motion shows redactions on some pages because it refers to documents designated "confidential."

[5] The Court has been advised by the Clerk's Office that plaintiff's filing of the Peer Review Motion should have resulted in three separate docket entries on May 5, 2016 in the following order: (1) a non-confidential, redacted copy of the discovery motion and the non-confidential exhibits; (2) a motion or application to file documents under seal; and (3) the un-redacted, confidential version of the motion and the confidential exhibits.

Application to File Materials Under Seal; (2) another non-confidential, redacted copy of the Peer Review Motion; and (3) the non-confidential exhibits (629 pages).

The Court has reviewed the relevant docket entries for May 5 and 6, 2016 and has spoken with the Clerk's office.  The Court has been advised by the Clerk's Office that no un-redacted, confidential documents were available in the public record at any time in connection with plaintiff's filings of the Peer Review Motion on May 5 and 6, 2016. [Doc. No. 82.]  On the other hand, the above-described filing errors did occur.  Under the circumstances, it was understandable that defense counsel believed confidential documents were accessible to the public as a result of the filing errors.

Although no confidential documents were accessible by the public in connection with plaintiff's filings on May 5 and 6, 2016, the errors are enough to raise some concerns about the potential for inadvertent disclosure of confidential documents.  The parties have filed a total of eight Joint Motions seeking the Court's intervention in resolving discovery disputes.  Each of these Joint Motions and accompanying exhibits have been voluminous (120 to 1,435 pages).  Several of these Joint Motions have involved the filing of confidential documents with a corresponding motion to file the confidential documents under seal.  Summary judgment motions have also been filed with confidential documents and a corresponding motion to file documents under seal.

It stands to reason that the risk of filing errors resulting in the inadvertent disclosure of confidential documents in the public record increases whenever the parties are submitting a large volume of electronic filings that are voluminous and complex and that include a significant number of confidential documents attached as exhibits.  The misfiling incident on May 5 and 6, 2016 could easily have resulted in the disclosure of confidential documents in the public record.  In addition, the Court recalls that plaintiff previously initiated a Joint Motion requesting an order striking certain "confidential" designations by defendant so that it could file confidential documents in the public record and use them to publicly discredit defendant in the media.  In this regard, the Court denied plaintiff's request.  [Doc. Nos. 60, 51, 49.]

1    Given all the facts and circumstances, this Court cannot conclude that defendant's
2 concern about the potential for inadvertent disclosure of its confidential documents in the
3 public record is groundless.  Nor could the Court presume that the August 16, 2014
4 Protective Order is sufficient to mitigate defendant's concern about the possibility of
5 inadvertent disclosure of documents that could result in significant adverse financial
6 consequences.
7    Plaintiff has not argued convincingly that it has a "substantial need" for un-
8 redacted copies of the publishing agreements that outweighs defendant's interest in
9 maintaining the confidentiality of its financial arrangements with LWW.  Nor does it
10 appear that plaintiff would be prejudiced in its ability to prosecute its case against
11 defendant if it does not obtain un-redacted copies of the publishing agreements.
12    As noted above, plaintiff seeks access to un-redacted copies of the publishing
13 agreements for two reasons.  First, plaintiff believes that the redacted portions of the
14 publishing agreements are relevant to its calculation of its alleged damages based on a
15 theory of disgorgement of profits stemming from the Devor Study.  [Doc. No. 104, at pp.
16 20-21.]  As noted above, it appears undisputed that the redacted portions of the
17 publishing agreements show the royalty rates defendant has negotiated with LWW for
18 publishing services in connection with the JSCR, where the disputed article was
19 published, *and* for the SCJ, a separate journal.  The royalty rates are paid together for
20 both the JSCR and the SCJ.  [Doc. No. 104-20, at p. 2.]
21    The Court acknowledges the possibility that the redacted royalty information may
22 have some tangential relevance to the issue of damages.  However, that is not enough
23 given the evidence submitted by defendant indicating it has a strong interest in
24 maintaining the confidentiality of the redacted royalty information.  Without more, it
25 does not appear that the redacted royalty information would be necessary to calculate
26 profits stemming from the Devor Study.  In other words, it appears that plaintiff's request
27 for access to the redacted royalty information exceeds the scope of information necessary
28 to calculate the type of damages plaintiff is seeking.  The royalty rates redacted from the

publishing agreements would not show information such as defendant's gross revenues from actual sales of the JSCR during the relevant time period; the number of actual sales of the JSCR during the relevant time period less costs; or any increase in actual sales of the JSCR after the Devor Study was published.  In narrowly tailored written discovery requests or during Rule 30(b)(6) depositions, plaintiff should have already obtained the data and other information typically used to calculate any alleged damages based on a disgorgement of profits theory.  In sum, based on the limited information presented, the Court is unable to discern any reason why plaintiff would have a substantial need to invade the confidential, private financial arrangements between defendant and LWW that would be revealed in un-redacted copies of the subject publishing agreements in order to calculate its alleged damages.

Second, plaintiff believes that un-redacted copies of the publishing agreements are relevant to show defendant's alleged financial motive to engage in unfair competition.  However, it is apparent based on the arguments presented in the Joint Motion that plaintiff only seeks access to the private, confidential royalty information as "additional evidence" to corroborate other evidence it has already obtained to use in proving its theory that defendant had a financial incentive to engage in unfair competition.  [Doc. No. 104, at p. 22.]   Defendant's desire for additional corroborating evidence of motive must be balanced against defendant's strong interest in maintaining the confidentiality of the royalty payments it has negotiated with its publisher, LWW, which is not a party to the action.  [Doc. No. 104-20, at p. 2.]  Based on the arguments and information presented, it is this Court's view that the burden to defendant of having un-redacted copies of the publishing agreements disclosed in this litigation exceeds any likely benefit to plaintiff in prosecuting its case against defendant.

In sum, defendant submitted enough evidence to establish a strong interest in maintaining the confidentiality of the royalty information redacted from the publishing agreements.  Defendant also made some showing as to why it does not believe the August 16, 2014 Protective Order is enough to protect the confidentiality of this

information. Plaintiff did not show a substantial need for the redacted information that would outweigh defendant's strong interest in maintaining the confidentiality of its royalty arrangements with third party LWW.

### *Conclusion*

Based on the foregoing, IT IS HEREBY ORDERED THAT:

1. Plaintiff's request for an order requiring production of un-redacted copies of defendant's publishing agreements with LWW is DENIED;

2. Plaintiff's Rule 45 subpoena served on served on third party Lippincott Williams & Wilkins ("LWW") is QUASHED to the extent it seeks un-redacted copies of plaintiff's publishing agreements with LWW;

3. Defendant's request for a protective order precluding disclosure of un-redacted copies of its publishing agreements with LWW is GRANTED; and

4. Plaintiff's request to recover reasonable expenses for participating in bringing the instant Joint Motion is DENIED.

IT IS SO ORDERED.

Dated: October 7, 2016

Hon. Karen S. Crawford
United States Magistrate Judge