LATHAM & WATKINS LLP
Daniel Scott Schecter (SBN 171472)
daniel.schecter@lw.com
David F. Kowalski (SBN 265527)
david.kowalski@lw.com
355 South Grand Avenue
Los Angeles, CA  90071
Telephone:  (213) 485-1234
Facsimile:   (213) 891-8763

LATHAM & WATKINS LLP
Blair Connelly (SBN 174460))
blair.connelly@lw.com
William O. Reckler (admitted *pro hac vice*)
william.reckler@lw.com
Paul A. Serritella (admitted *pro hac vice*)
paul.serritella@lw.com
885 Third Avenue
New York, NY  10022
Telephone:  (212) 906-1658
Facsimile:   (212) 751-4864

Micha "Mitch" Danzig (SBN 177923)
mdanzig@mintz.com
Justin Nahama (SBN 281087)
jsnahama@mintz.com
Natalie A. Prescott (SBN 246988)
naprescott@mintz.com
Wynter L. Deagle (SBN 296501)
wldeagle@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
Telephone:  (858) 314-1500
Facsimile:   (858) 314-1501

Attorneys for Plaintiff
CROSSFIT, INC.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CROSSFIT, INC., a Delaware corporation,<br><br>          Plaintiff,<br><br>     v.<br><br>NATIONAL STRENGTH AND CONDITIONING ASSOCIATION, a Colorado corporation,<br><br>          Defendant. | Case No. 3:14-cv-01191-JLS-KSC<br><br>***EX PARTE* APPLICATION TO POSTPONE PRE-TRIAL PROCEEDINGS AND TRIAL DATE DUE TO NEWLY-DISCOVERED DISCOVERY MISCONDUCT**<br><br>Dept.:     4A<br>The Hon. Janis L. Sammartino<br>The Hon. Karen S. Crawford |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Federal Rules of Civil Procedure 6(c)(1)(A), 7, 16, and 40, and United States District Court, Southern District of California Local Rules 7.1(e)(5), 16.1(f)(1)(a), and 83.3(g), on the papers only, Plaintiff CROSSFIT, INC. ("CrossFit") hereby moves for an *ex parte* order modifying the operative case management scheduling orders so as to continue the pretrial dates and deadlines in light of recently-discovered discovery misconduct.

This *ex parte* application and motion is based the grounds that, well after the completion of discovery in this matter and merely weeks before the first pre-trial filing deadlines, Defendant NATIONAL STRENGTH AND CONDITIONING ASSOCIATION ("NSCA") produced hundreds of documents in a related action pending in California state court that – <u>on their face</u> – are directly responsive to discovery propounded in this action and thus should have been produced in the instant litigation.  The NSCA is represented by the same counsel in its related state-court case and thus the production was made by the same team.

<u>These documents reveal that the NSCA's leadership expressly instructed the NSCA team to withhold key documents relating to the NSCA's efforts to compete with CrossFit</u>.  Likewise, the withheld documents provide irrefutable proof that a meaningful search was never done for plainly responsive terms such as "crossfit," "devor" or "erratum."  The NSCA also withheld the identity of at least five NSCA employees with important knowledge relevant to the instant litigation and the key role several NSCA Directors played with respect to the NSCA's efforts to unfairly compete with CrossFit, which was not apparent from the (we now know) incomplete NSCA production in the federal matter.

By failing to produce such highly-relevant documents bearing on CrossFit's claims and the NSCA's anticipated defenses, the NSCA deprived CrossFit of the opportunity to, *inter alia*, explore additional legal theories, question key witnesses regarding the improperly withheld documents, identify additional key witnesses,

confer with its experts about the documents and meaningfully prepare for trial.  In addition, CrossFit was forced to defend a summary judgment motion without the benefit of withheld documents that directly contradicted claims and representations made by the NSCA relating to the NSCA's commercial intent to disparage CrossFit, and CrossFit was unable to file a summary judgment motion on issues that the newly-produced documents reveal the NSCA can no longer reasonably dispute.

Importantly, not only did the NSCA fail to produce these highly probative documents in the instant litigation, but it falsely represented to the court that such documents had already been produced.  CrossFit has therefore filed a Motion for Terminating Sanctions, or in the Alternative, Issue and Evidentiary Sanctions, as a result of this blatant discovery misconduct.

The Court is vested with inherent and statutory authority to provide for the orderly conduct of the proceedings before it and to control its processes and orders so as to make them conform to law and the interests of justice.  *See, e.g.*, Fed. R. Civ. P. 16, 40; *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 101 (2nd Cir. 2002) ("where, as here, the nature of [an] alleged breach of a discovery obligation is the non-production of evidence, a District Court has broad discretion in fashioning an appropriate sanction, including the discretion to delay the start of trial (at the expense of the party that breached its obligation)"), *superseded by statute*, Fed. R. Civ. P. 37(e)(2).

This *ex parte* application and motion is based on this notice and motion; the attached memorandum of points and authorities; the supporting declaration of Justin Nahama filed concurrently herewith and exhibits thereto; all pleadings, papers, and records in this action; and upon such other oral and documentary evidence or argument as may be presented at any hearing of this motion.

/ / /

/ / /

/ / /

1

2

3   Dated: February 2, 2017

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,

MINTZ LEVIN COHN FERRIS GLOVSKY
AND POPEO PC

By *s/  Micha Danzig*
    Micha Danzig, Esq.
    Justin S. Nahama, Esq.
    Natalie A. Prescott, Esq.
    Wynter L. Deagle, Esq.

    Attorneys for Plaintiff
    CrossFit, Inc.

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ................................................................... 1

II.   FACTUAL BACKGROUND ................................................. 4

    A.   Summary of CrossFit's Claims in the Federal Action ........ 4

    B.   Summary of the NSCA's Claims in State Court Proceeding ................................................................. 5

III.  LEGAL STANDARD ........................................................... 6

IV.   ARGUMENT ........................................................................ 7

    A.   The NSCA Failed To Comply With Its Discovery Obligations in the Federal Action ...................................... 7

        1.   The NSCA's Document-Collection Efforts Are Not Credible Because of the NSCA Publications Director's Misrepresentations ................................... 7

        2.   ███████████████████████████████ ................ 9

        3.   The Recently Produced Documents Prove the NSCA Withheld An Unknown Quantity of Relevant Documents It Agreed to and Was Obligated to Produce ................................................ 11

    B.   CrossFit Will Be Severely Prejudiced Without the Requested Relief ............................................................. 12

    C.   The NSCA's Proposal to Address Its Discovery Misconduct is Unreasonable Further Necessitating a Continuance ................................................................... 123

V.    CONCLUSION ................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Imbach v. Clark*,
   2012 U.S. Dist. LEXIS 109948 (C.D. Cal. 2012) ................................................. 13

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
   306 F.3d 99 (2nd Cir. 2002) ............................................................................ 7, 13

*In re Sulfuric Acid Antitrust Litigation*,
   231 F.R.D. 331 (N.D. Ill. 2005) .............................................................................. 6

*Wei v. Bodner*,
   127 F.R.D. 91 (D.N.J. 1989) .................................................................................... 6

**Other Authorities**

Fed. R. Civ. P. 16(b)(4) ............................................................................................ 6

Fed. R. Civ. P. 37(e)(2) ............................................................................................ 7

Fed. R. Civ. P. 26 ...................................................................................................... 6

8-40 Moore's Federal Practice - Civil § 40.02 ........................................................ 6

<u>**MEMORANDUM OF POINTS & AUTHORITIES**</u>

**I.    INTRODUCTION**

CrossFit has recently learned that Defendant National Strength and Conditioning Association ("NSCA") not only failed to produce numerous responsive and highly-probative documents in its possession, but directly ordered its team to withhold incriminating documents referencing CrossFit.  The NSCA, it turns out, has not litigated this case on an equal playing field.  And as a result of the NSCA's misconduct, CrossFit needs additional time to prepare for trial if the Court does not award terminating sanctions as requested in CrossFit's Motion for Terminating Sanctions, Or in the Alternative Issue, Evidentiary and Monetary Sanctions ("Sanctions Motion").

Mere weeks before the pre-trial filing deadlines requiring CrossFit to lay out its contentions of law and fact, as well as its witness and exhibit lists, CrossFit learned that the NSCA withheld an unknown quantity (at least several hundred) of critically-important documents responsive to CrossFit's document requests and central to the issues remaining to be tried (in light of the Court's summary judgment holding that the injury data was false).  Most of these documents center on two issues heavily litigated thus far and expected to be litigated at trial: the NSCA's (1) historic and current efforts to compete with CrossFit's popularity and certification business in the civilian and military communities and (2) commercial intent to do so.  Egregiously, dozens of the withheld documents contain obvious terms like "CrossFit," "Devor," and "Erratum" – key terms in this case and terms that certainly should have been included in any competent search of the NSCA's files.  Indeed, among the withheld documents there are at least *fifty* that will be key trial exhibits in this case, but CrossFit has been deprived of the opportunity to explore these documents in discovery.

The "new" documents were recently produced in the NSCA's related state-court case against CrossFit by the same counsel representing the NSCA here.  As one

1

of many disturbing examples of inexcusable discovery misconduct, the NSCA's Certification Director instructed the NSCA team to withhold documents created in 2012 (the same year CrossFit alleges the NSCA was coercing the false injury data from the Devor Study's authors) expressly identifying CrossFit's certifications that the NSCA considered "CRITICAL TO THE SUCCESS OF OUR CERTIFICATION PROGRAM - THIS REPORT AND FULL INFORMATION SHOULD NOT BE SHARED WITH ANYONE."  (Declaration of Justin Nahama, Ex. A.)[1]  Based on CrossFit's review of the respective state and federal productions, it appears this order was followed and an unknown number of key documents were intentionally withheld during discovery in this action.

Equally as flagrant as the express order by an NSCA employee to withhold key documents, two representatives central to the NSCA's certification business made false representations under oath to this Court and CrossFit to create the illusion that the NSCA had fulfilled its discovery obligations in this action.  For example, after reviewing CrossFit's first motion to compel, the Court characterized the NSCA's initial production as "slow and incomplete" and on July 15, 2015, ordered the NSCA to supplement its production and provide information about how it located responsive documents (the "Discovery Order"). (Dkt. 59, pp. 9-10.)  In response, the NSCA's Publications Director Keith Cinea – who was deposed twice as an NSCA 30(b)(6) – submitted a declaration representing that he personally oversaw a detailed search for all documents and "any emails containing the word 'crossfit.'"  (Ex. B.)  We now know that this representation is unequivocally false; the withheld documents reveal dozens of glaring examples of emails and reports – including various emails to and from Mr. Cinea himself – referencing CrossFit and the Devor Study **created both before and after Cinea's August 2015 declaration**, including, but not limited to:

/ / /

/ / /

---

[1] All references to Exhibits will be to the Nahama declaration unless noted otherwise.

2

- ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████ (Ex. C.)

- A **September 2014** email, subject line "More CrossFit Media," where the NSCA's Marketing Project Manager is tracking media covering the Devor Study's false injury data and updating Keith Cinea and the NSCA Media Manager Michael Hobson on the same.  (Ex. D.)  Notably, the NSCA also withheld the identity of several members of its Marketing Team that were tracking and updating the NSCA Directors on CrossFit and the Devor Study.

In addition, these withheld documents made CrossFit aware for the first time of at least *eight* additional witnesses who CrossFit did not have a reason to depose because CrossFit either never had any reason to suspect they had knowledge relevant to the dispute because the NSCA omitted these witnesses from their Rule 26 disclosures, or because the NSCA failed to produce in this action the documents revealing these witnesses identities and their respective roles relating to the subject matter of this action.  (Nahama Decl., ¶ 3.)

The NSCA's discovery abuses have severely prejudiced CrossFit's development of its case and preparations for trial.  CrossFit was forced to complete its discovery without being able to question a number of the NSCA's deponents in this action regarding these key documents, identify and question additional witnesses who should be deposed (*e.g.*, the entire marketing team whose identities were withheld by the NSCA), or share these documents with their experts.  Moreover, CrossFit was forced to oppose (at great cost) a motion for summary judgment and related appeal request, and was denied the opportunity to move for summary judgment, on the critical issue of whether the NSCA's false statements were commercial speech.

Given the newly-produced documents, neither CrossFit nor this Court should have any confidence in the adequacy of the NSCA's discovery efforts to date.  CrossFit should not be forced to try this case without the opportunity to explore the

impact of these newly discovered documents and whether there may be additional discovery that the NSCA wrongfully withheld.  But the rapidly approaching trial and pretrial deadlines require CrossFit to expend significant resources immediately to ready a case for trial, the scope of which has been dramatically altered by the revelation of these new documents – and the need for which may be eliminated or significantly narrowed pending the outcome of CrossFit's concurrently filed herewith Sanctions Motion.  CrossFit therefore requests that this Court reset the Pretrial Conference currently scheduled for March 23, 2017 to January 4, 2018, and continue the corresponding pretrial deadlines in accordance therewith, in order to permit CrossFit a full and fair opportunity to prepare for trial, free of the taint from the NSCA's discovery abuses.

## II.     FACTUAL BACKGROUND

### A. Summary of CrossFit's Claims in the Federal Action

This lawsuit stems from the NSCA knowingly publishing and then re-publishing an article in its captive scientific journal, the Journal of Strength and Conditioning Research ("JSCR"), that falsely reported that a CrossFit regime resulted in injuries to 16% of participants – a figure that dwarfs injury rates of other fitness programs by a factor of at least three (hereinafter, the "Federal Action").  CrossFit has always contended that the NSCA has engaged in a lengthy campaign to disparage CrossFit's training methods to regain market share in the military and civilian fitness communities.  And although the NSCA is a non-profit prohibited from actively supporting legislation, CrossFit suspected the NSCA was actively supporting state legislation to support government regulation of fitness professionals that would essentially outlaw CrossFit's certifications.

But what the NSCA was missing to help with its anti-CrossFit campaign was any scientific proof that CrossFit was actually unsafe.

That all changed when an opportunistic NSCA seized on a submission to its JSCR that touted the health benefits of a 10-week CrossFit program.  Although the

original manuscript of the article (hereinafter, the "Devor Article") contained no injury data and, indeed, did not mention any injury data whatsoever, the NSCA coerced the authors into disclosing injury data that the NSCA knew was false and adding a lengthy discussion of the unique risks associated with CrossFit.  The NSCA also gratuitously inserted into the final version of the Devor Article the false claim that the subject CrossFit study and workout regime (which led to the false 16% injury rate) was "closely supervised" by ACSM certified exercise professionals, something the NSCA alleged doesn't occur "at most CrossFit gyms."  CrossFit's lawsuit thus seeks relief pursuant to the Lanham Act (15 U.S.C. § 1125(a)), California Business and Professions Code section 17500 (false advertising) and 17200 (unfair competition), and Trade Libel.

CrossFit later moved for summary judgment on the element of falsity based on declarations it obtained from the study participants whose injuries were supposedly reported in the Devor Article; each participant stated that he/she was not injured by their participation in CrossFit training and had never told anyone they were.  This Court concluded that these declarations "show the data were false."  (Dkt. 121 at 13.)

Nearly nine months after CrossFit originally filed the dispositive participant declarations in this action, the NSCA issued an "Erratum" that half-heartedly addressed the false injury data.  Far from dispelling the myth that participants were injured doing CrossFit, the Erratum's carefully-crafted wording suggested that two study participants were injured during the Study, and failed altogether to address the Devor Article's significant discussion of the now-debunked "unique concern" of frequent injuries associated with CrossFit.  CrossFit amended its complaint to include the additional harm it suffered from the misleading nature of the Erratum and the NSCA's failure to issue a full retraction.

### B. Summary of the NSCA's Claims in State Court Case

Two years into litigating CrossFit's claims against the NSCA, the NSCA filed a lawsuit in San Diego Superior Court alleging trade libel, defamation, and unfair

business practices based on statements that the NSCA contends were made by CrossFit or its representatives (Case No. 37-2016-00014339-CU-DF-CTL, hereinafter, the "State Court Case").  Importantly, the majority of the alleged defamatory statements directly overlap with the subject matter of the instant litigation.  For example, in the State Court Case, the NSCA criticizes CrossFit's efforts to inform the fitness community that the NSCA coerced and intentionally published the false information in the Devor Article and that the NSCA has been disparaging CrossFit in an effort to regain market share in key military and civilian fitness communities.  There is substantial overlap in the discovery propounded in each case.

## III.   LEGAL STANDARD

Courts considering a motion to continue a trial date established in the district court's scheduling order apply Federal Rule of Civil Procedure 16(b)(4)'s "good cause" standard.  Under that standard, the Court has significant discretion on motions to modify a scheduling order.  "[I]t is clear that a district court has substantial inherent power to control and to manage its docket, and, in doing so, the court must strike a balance between the needs of judicial efficiency and the rights of litigants." 8-40 Moore's Federal Practice - Civil § 40.02 (Matthew Bender, 3d ed.).

Where, as here, the motion is necessitated by efforts of the non-moving parties to thwart discovery, the circumstances underscore the well-settled policy favoring adjudication on the merits, as the alternative is an outcome dictated by tactics and pre-trial gamesmanship.  *See Wei v. Bodner*, 127 F.R.D. 91, 95-96 (D.N.J. 1989) ("The framework provided for discovery by Fed. R. Civ. P. 26 evinces a broad policy favoring full disclosure of facts before trial to aid the search for the truth."); *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 331, 342 (N.D. Ill. 2005) ("The concept of trial by ambush has long ago fallen into desuetude in both state and federal courts.

Modern discovery practices seek to facilitate (however haltingly and ineffectively) open and even-handed development of the relevant facts so that justice

6

may be delivered on the merits and not shaped by surprise or like tactical stratagems.") [citations and internal quotation marks omitted]; *see also Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 101 (2nd Cir. 2002) ("where, as here, the nature of [an] alleged breach of a discovery obligation is the non-production of evidence, a District Court has broad discretion in fashioning an appropriate sanction, including the discretion to delay the start of trial (at the expense of the party that breached its obligation)"), *superseded by statute*, Fed. R. Civ. P. 37(e)(2).

## IV.   ARGUMENT

### A. The NSCA Failed To Comply With Its Discovery Obligations in the Federal Action

Throughout this litigation, CrossFit's efforts to obtain discovery from the NSCA were plagued by the NSCA's apparent strategy to deliberately withhold key evidence from CrossFit in order to hamper CrossFit's case analysis and trial preparations.  This strategy included making misrepresentations to CrossFit and to the Court.  Although CrossFit has long been concerned that the NSCA was not being properly forthcoming in this action with required discovery, its suspicions were only recently confirmed when the NSCA produced nearly 2,000 documents in the NSCA's State Court Action. [Nahama Decl., ¶ 1.]

#### 1.   The NSCA's Document-Collection Efforts Are Not Credible Because of the NSCA Publications Director's Misrepresentations.

In December 2014, the parties filed a Joint Motion for Determination of Discovery Dispute, in which CrossFit argued that the NSCA's production in the federal case was inadequate and had failed to locate all responsive documents.  (Dkt. 32.)  Agreeing that the NSCA's initial production was "slow and incomplete," this Court ordered the NSCA to supplement its production and to provide information about how it located responsive documents.  (Dkt. 59.)  In response, the NSCA's Publications Director Keith Cinea – who was also deposed twice as a 30(b)(6) witness for the NSCA – submitted an August 2015 declaration representing that he

personally worked with the NSCA's directors to gather responsive documents.  (Ex. B.)  Among other things, Cinea's declaration specifically emphasized that he oversaw a detailed search for documents and "any emails containing the word 'crossfit.'"  *Id.*

Recently produced documents in the NSCA's State Court Action, however, show that Cinea's assurance was demonstrably false.  Dozens of emails in the NSCA's state court production – including several that Cinea himself sent or received – expressly reference CrossFit in connection with the subject matter of the Federal Action.  (Nahama Decl., ¶ 2 .) **Many of these documents and emails referencing CrossFit and/or the Devor Study were created just months *before* Cinea's declaration.**  Yet, none of these emails were produced in this action and many more likely exist.

For example, the NSCA withheld a June 2015 email chain referencing CrossFit and this lawsuit—and expressly referencing one of the most harmful media articles publishing the false injury data, Outside Magazine's "Is CrossFit Killing Us?"—between the NSCA's marketing team, Cinea, and Levi Boren (both NSCA 30(b)(6) representatives).  (Ex. E.)  In this email chain, Boren and Cinea are both being briefed by NSCA Marketing Team representatives (whose identities were previously unknown to CrossFit) on issues surrounding the state regulation of personal trainers, another core issue in the federal action concerning the NSCA's efforts to compete with CrossFit.  (*Id.*)

As another example, ███████████████████████████
████████████████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
██████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████████████

/ / /

Documents created shortly after Mr. Cinea's August 2015 declaration confirms that the NSCA also disregarded its continuing discovery obligations under FRCP 26. For example, the withheld documents include a September 2015 email from Media Relations Manager Mike Hobson informing Cinea, among others, about an article discussing the Erratum, in which Hobson acknowledges that there is ongoing "confusion on the erratum … based on the two people mentioned who stated injury/medical condition for not completing."  (Ex. F.)  Hobson acknowledges that "[b]ecause we did not clarify that the injury and medical condition were not associated with their workouts at the club people are assuming they were."  (*Id.*)

These and other documents bear on numerous material disputes in this action, including the hotly disputed issue of the NSCA's economic motivation for publishing the Devor Article and, thus, whether the article constitutes commercial speech under CrossFit's Lanham Act claim.  Among other things, the state court production reveals documents that illustrate that the NSCA (1) ███████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████████████████████
██████████████████████

**2.** ████████████████████████████████████
███████████████

CrossFit has repeatedly requested documents detailing the NSCA's efforts to compete with CrossFit, an element CrossFit must establish at trial and an element the NSCA has focused on in its motion for summary judgment.  ████████████████
████████████████████████████████████████████
████████████████████████████████████████████████

---
[2] ████████████████████████████████████████████████
██████████████████████████████████

1 ████████████████████████████████████████████████

2 ████████████████████████████████████████

3 ████████████████████████████████████████████████

4 ███████████████████████████████████████████

5 ██████████████████████████████████████████

6 ██████████████████████████████████████

7 ███████████████████████████████████████████

8 ███████████████████████████████████████████

9 ██████████████████████████████████████████

10 ██████████████████████████████████████████

11 ███████████████████████████

12   ████████████████████████████████████████████

13 ████████████████████████████████████████████

14 ████████████████████████████████████████████

15 ████████████████████████████████████████████████

16 ███████████████████████████████████████████

17 ████████████████████████████████████████

18 ███████████████████████████████████████████

19 ███████████████████████████████████████████

20 ███████████████████████████████████████████

21 █████████████████████████

22        The withheld documents also confirm Clayton had a leading role in the

23 NSCA's business plans for its own certification process to (arguably unlawfully)

24 support legislation that would render their certifications legislatively required – and

25 render CrossFit's certifications legislatively meaningless – in multiple states.  For

26 example, in a January 2015 email (notably before the Cinea August 2015

27

28 ██████████████████████████████████████████

declaration), Hobson seeks input on a draft response to a "**Crossfit** blog posting" that related to NSCA's role in lobbying for such legislation.  (Ex. K.)  Hobson seeks input on how to draw the fine line between "lobbying" and "ensuring that the interest[s] of NSCA certified professionals are represented in any potential regulation."  (*Id*.)

### 3. The State Court Case Documents Prove the NSCA Withheld An Unknown Quantity of Relevant Documents It Agreed to and Was Obligated to Produce

During the course of discovery, the NSCA agreed to produce, *inter alia*:

- "[a]ll documents and communications referring or relating to CrossFit," (RFP Set 1, No. 2);

- "[a]ll documents and communications concerning the Devor Study," (RFP Set 1, No. 7);

- "[a]ll documents and communications referring or relating to the Devor Article, both before and after its publication ....," (RFP Set 1, No. 10);

- "[d]ocuments and communications referring or relating to the NSCA's business plans … with respect to its certification, licensing, and educational programs)," (RFP Set 1, No. 30); and

- "[a]ll Documents … referring or relating to the Erratum," (RFP Set 4, No. 1).

The documents identified above and in the Sanctions Motion merely provide a sample of the documents the NSCA withheld in the present action that preclude CrossFit from fairly preparing for trial.  Further, the documents confirm that the NSCA has yet to provide a complete production in the Federal Action.  CrossFit should not bear the costly burden of reviewing the state-court production and speculating about whether those documents sufficiently address the obvious gaps in the NSCA's previous production.  Likewise, CrossFit should not be forced to present key evidence at trial without an opportunity to explore the evidence in discovery. / / /

**B. CrossFit Will Be Severely Prejudiced Without the Requested Relief**

Presently, the trial for this matter is imminent, and CrossFit has thus far been forced to litigate its case without the benefit of (at least) hundreds of documents that bear directly on hotly disputed issues.  Rapidly approaching trial milestones will require CrossFit to expend vast resources preparing, among other things, a memorandum of contentions of law and fact, an exhibit list, and witness list – the contents of which are directly impacted by the newly discovered information from the State Court Case.  CrossFit should not be forced to go through this process twice.  Moreover, CrossFit should be permitted time to investigate whether the NSCA's discovery failures are limited to the newly produced state-court documents, or whether, perhaps, there may be additional information that the NSCA has also improperly withheld.  The NSCA's gamesmanship in delaying production of these documents until after the close of discovery in this action, however, makes this impossible.  Without the requested continuance of trial and pretrial deadlines, CrossFit will have to expend significant resources immediately to ready a case for trial.  Moreover, the scope of that trial is likely to be altered once this Court has an opportunity to weigh in on CrossFit's Motion for Sanctions filed concurrently herewith.

CrossFit seeks a moderate continuance of trial and pretrial deadlines to permit discovery related to the new documents – including deposing the newly identified witnesses whose identities were previously withheld and re-deposing individuals who never had to face questioning on documents (incredibly bearing their names) which were never produced in this action and which also (perhaps not coincidentally) severely undermine the NSCA's positions and bolster CrossFit's case.

In light of the expansive discovery abuses and their prejudicial impact on the development of CrossFit's case, this Court should exercise its significant discretion to continue the Pretrial Conference and corresponding pretrial deadlines, so that the NSCA does not get to maintain the benefit of its discovery gamesmanship.  *See*

12

*Morris*, 461 U.S. at 11-12; *Garrett*, 170 F.3d at 1144-1145; *see also Residential Funding Corp.*, 306 F.3d at 10.  Given the failure to produce plainly responsive and probative documents in this action as well as the concurrently filed Sanctions Motion, this continuance plainly serves the interests of justice and judicial economy.  *Imbach v. Clark*, 2012 U.S. Dist. LEXIS 109948, at *38 (C.D. Cal. 2012).

### C. The NSCA's Proposal to Address Its Discovery Misconduct is Unreasonable Further Necessitating a Continuance.

At an in-person meet and confer on January 9, 2017, in a letter dated January 17, 2017, and in follow-up emails CrossFit identified dozens of examples of withheld documents that gravely prejudice CrossFit's trial preparation.  (Ex. L.)  CrossFit asked the NSCA for a proposal to meaningfully address the prejudice to CrossFit with trial approaching.  On January 30, 2017, the NSCA responded and said it would consider allowing CrossFit to list the previously-withheld documents on CrossFit's exhibit list (but would not stipulate to admissibility), and potentially allow CrossFit to take one or two additional depositions.  (Ex. M.)  Merely listing these withheld documents on CrossFit's exhibit list without a fair opportunity to explore them in discovery does not remotely address the harm to CrossFit.  The NSCA did not provide any assurances that its federal production is somehow complete and CrossFit should not bear the burden of speculating as to what gaps exist in the federal production and whether the state-court production fills those gaps.

### D. The Parties Agree a Continuance is Warranted, But Disagree on the Amount of Time Necessary to Address the Prejudice to CrossFit.

Meet and confer efforts to stipulate to a trial continuance were not successful. On February 1, 2017 Mintz Levin requested that the NSCA stipulate to an approximately 10 month continuance of all pre-trial deadlines to allow CrossFit to have its Sanctions Motion heard by the Court.  (Ex. N).  In addition, if the Court does not grant the terminating sanctions, the 10-month continuance would afford time for CrossFit to: (1) take sufficient steps to ensure the NSCA has made a full and fair

13

production in the federal action; (2) review and analyze the complete productions; (3) fairly address the new information in fact and expert discovery, including depositions of the newly-identified NSCA employees/directors whose identity or relevant knowledge was previously withheld from CrossFit; (4) file dispositive motions based on the newly-discovered evidence; and (5) prepare for trial. (Nahama Decl., ¶ 17 & Ex. N). The NSCA responded on February 2, 2017 by agreeing that the pre-trial "dates should be continued" but was only willing to stipulate to a five month continuance. (Ex. O). Five months, however, is simply not sufficient time for CrossFit's Sanctions Motion to be heard and, if terminating sanctions are not awarded, complete discovery, file its dispositive motions based on the newly discovered evidence, and adequately prepare for trial. (Nahama Decl., ¶ 19.)

## V.   CONCLUSION

CrossFit provided only a small sample of the subject [withheld] documents in this motion to illustrate the prejudicial nature of the NSCA's discovery misconduct. Many more documents are identified in the Sanctions Motion. Should the Court desire further examples of the significance of the withheld documents, at the Court's request, CrossFit will provide additional examples for *in camera* review to demonstrate that the withheld documents are clearly responsive and significant to the disputed matters at issue.

CrossFit respectfully requests the Court continue the Pretrial Conference to January 4, 2018, and continue the corresponding pretrial deadlines in accordance therewith, in order to permit CrossFit a full and fair opportunity to prepare for trial, subject to the Court's ruling on CrossFit's Sanctions Motion:

/ / /

/ / /

/ / /

/ / /

| Task | Current Deadline[3] | Proposed Deadline |
|------|--------------------|--------------------|
| Rule 26(a)(3) Disclosures | February 17, 2017 | December 5, 2017 |
| Memorandum of Contentions of Fact and Law | February 17, 2017 | December 7, 2017 |
| Meeting of Counsel | February 24, 2017 | December 14, 2017 |
| Proposed Pretrial Order | March 16, 2017 | December 30, 2017 |
| Final Pretrial Conference | March 23, 2017 | January 4, 2018 |

Respectfully Submitted,

Dated: February 2, 2017

MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC

By *s/  Micha Danzig*

Micha Danzig, Esq.
Justin S. Nahama, Esq.
Natalie A. Prescott, Esq.
Wynter L. Deagle, Esq.

Attorneys for Plaintiff
CrossFit, Inc.

---

[3] *See* Dkt. 129

15

## CERTIFICATE OF SERVICE

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of San Diego, State of California, and am not a party to the above-entitled action.

On February 2, 2017, I filed a copy of the foregoing document by electronically filing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

- **David Samuel Bederman**
  dsb@manningllp.com,exi@manningllp.com

- **Micha Danzig**
  mdanzig@mintz.com,amjahnke@mintz.com,docketing@mintz.com,TLMayo@mintz.com,acarozza@mintz.com

- **Wynter L. Deagle**
  wldeagle@mintz.com,docketing@mintz.com,KCosta@mintz.com

- **Anthony J Ellrod**
  aje@manningllp.com,nxl@manningllp.com

- **Bruce Isaacs**
  bruceisaacs@dwt.com,linapearmain@dwt.com

- **Kenneth Shoji Kawabata**
  ksk@manningllp.com,knn@manningllp.com

- **David F. Kowalski**
  david.kowalski@lw.com,cary.port@lw.com,alison.montera@lw.com

- **Justin S. Nahama**
  JSNahama@mintz.com,docketing@mintz.com,kjenckes@mintz.com

- **James D. Nguyen**
  jimmynguyen@dwt.com,deekeegan@dwt.com,LAXDocket@dwt.com

- **Diana Palacios**
  dianapalacios@dwt.com,nancygonzalez@dwt.com

- **Natalie Prescott**
  NAPrescott@mintz.com,docketing@mintz.com,KWinterson@mintz.com

- **William O. Reckler**
  william.reckler@lw.com,william-reckler-5795@ecf.pacerpro.com,jessica-bengels-2198@ecf.pacerpro.com

- **Daniel Scott Schecter**
  daniel.schecter@lw.com

- **Paul A. Serritella**
  paul.serritella@lw.com,rachel.kohn@lw.com,jessica.bengels@lw.com,sadie.diaz@lw.com,elizabeth.evans@lw.com,katelyn.beaudette@lw.com

- **Andrew D Skale**
  askale@mintz.com,KCosta@mintz.com,adskale@mintz.com,Docketing@mintz.com

- **Sean M. Sullivan**
  seansullivan@dwt.com,deekeegan@dwt.com,LAXDocket@dwt.com

Executed on February 2, 2017, at San Diego, California. I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

*s/ Micha Danzig*
Micha Danzig, Esq.