UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CROSSFIT, INC., a Delaware corporation,<br><br>         Plaintiff,<br><br>v.<br><br>NATIONAL STRENGTH AND CONDITIONING ASSOCIATION, a Colorado corporation,<br><br>         Defendant. | Case No.: 14-CV-1191 JLS (KSC)<br><br>**ORDER DENYING MOTION FOR RECONSIDERATION**<br><br>(ECF No. 186) |

Presently before the Court is Defendant National Strength and Conditioning Association ("NSCA")'s Motion for Reconsideration of Order Granting in Part and Denying in Part Motion for Sanctions ("MTN," ECF No. 186). Also before the Court is Plaintiff Crossfit, Inc.'s Opposition to Defendant's Motion ("Opp'n," ECF No. 195) and Defendant's Reply ("Reply," ECF No. 200). After considering the Parties' arguments and the law, the Court rules as follows.

**BACKGROUND**

The Court's Prior Order contains an extensive summary of this case's factual background. ("Prior Order," ECF No. 176, at 2–3.) The Court does not repeat the factual background here. As to the procedural background: Plaintiff filed a motion for terminating sanctions, or in the alternative issue, evidentiary, and monetary sanctions, ("Prior Motion,"

1

ECF No. 150), to which Defendant filed an opposition, ("Prior Opp'n," ECF No. 156), and Plaintiff filed a reply, ("Prior Reply," ECF No. 170). The Court granted in part and denied in part Plaintiff's motion. Specifically, the Court analyzed the facts and authority regarding terminating sanctions and determined "it is well within its discretion to award terminating sanctions." (Prior Order 10.) However, the Court nonetheless declined to do so and denied Plaintiff's motion as to this regard. (*Id.*) The Court awarded Plaintiff the following issue and adverse inference sanctions:

(1) It is taken as established that the NSCA had a commercial motivation for making the false statement in the Devor Study.
(2) It is taken as established that the NSCA and CrossFit are in commercial competition.
(3) It is taken as established that the NSCA made the false statement in the Devor Study with the intention of disparaging CrossFit and thereby driving consumers to the NSCA.
(4) It is taken as established that the NSCA was aware of the misleading nature of the Erratum.
(5) It is taken as established that the Erratum's statement, that two participants were injured during the course of the Study, misled the public and harmed CrossFit.
(6) It is taken as established that the NSCA's false statement in the Devor Study was disseminated sufficiently to the purchasing public to constitute advertising or promotion.
(7) It is taken as established that the NSCA caused the false statement in the Devor Study to enter interstate commerce.
(8) It is taken as established that it was foreseeable that the false statement in the Devor Study would be circulated to the media.
(9) It is taken as established that a loss in CrossFit's certification revenue was the natural and probable result of the false injury data in the Devor Study.
(10) The jury may, but is not required to, infer from the NSCA's spoliation of documents informing CrossFit's Lanham Act claim that the NSCA violated the Lanham Act as alleged in Count I of CrossFit's Complaint.
(11) The jury may, but is not required to, infer from the NSCA's spoliation of documents informing CrossFit's state law false advertising claim that the NSCA violated California Business and Professions Code § 17500 as CrossFit alleges in Count II of its Complaint.
(12) The jury may, but is not required to, infer from the NSCA's spoliation of documents that the NSCA's false statement in the Devor Study was made in a commercial advertisement about CrossFit's product.
(13) The jury may, but is not required to, infer from the NSCA's spoliation of documents that the NSCA's false statement in the Devor Study was commercial speech.

(14) The jury may, but is not required to, infer from the NSCA's spoliation of documents that CrossFit has been or is likely to be injured as a result of the false statement in the Devor Study.
(15) It is taken as established that the NSCA actively supported state legislation that would regulate personal trainers.
(16) It is taken as established that the NSCA was aware that the false statement in the Devor Study was being circulated to the media.
(17) The NSCA shall not be permitted to enter evidence that it does not compete with CrossFit.

(Prior Order 11–13.)

The Court also granted Plaintiff leave to file an amended complaint, leave to reopen fact and expert discovery on all relevant claims, and awarded Plaintiff $73,550.83 in monetary sanctions. (*Id.* at 13.)[1] Defendant thereafter filed the present Motion for Reconsideration.

## LEGAL STANDARD

In the Southern District of California, a party may apply for reconsideration "[w]henever any motion or any application or petition for any order or other relief has been made to any judge and has been refused in whole or in part." Civ. L. R. 7.1(i)(1).

Generally, reconsideration of a prior order is "appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision

---

[1] The Court also held:
(1) Plaintiff **SHALL** commission a neutral forensic analysis of the NSCA's servers and Defendant **SHALL** pay all costs relating to such forensic analysis;
(2) Defendant **SHALL** within fourteen days, under penalty of perjury, acquire declarations from all relevant NSCA personnel either (a) assuring or reaffirming that no documents relevant to this litigation have been destroyed or (b) admitting to any destruction;
(3) If at the conclusion of the neutral forensic evaluation it appears that documents have been destroyed, or that the discovery misconduct is substantially greater than the scope of which Plaintiff is currently aware, Plaintiff is **GRANTED LEAVE TO RENEW** its Motion for Terminating Sanctions and present the newly discovered evidence; and
(4) Defendant **SHALL LODGE** within fourteen days a copy of the document referenced in Plaintiff's Sanction Motion Exhibit A so that the Court may conduct an *in camera* review of the document. Additionally, Plaintiff **SHALL PROVIDE** a copy of this Order to the neutral forensic analyst so that she may search for other instances of the document referenced in Exhibit A—or its deletion— and any surrounding context.

(Prior Order 10–11.)

was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (citation omitted). Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (citation omitted). Ultimately, "[w]hether or not to grant reconsideration is committed to the sound discretion of the court." *Navajo Nation v. Confederated Tribes*, 331 F.3d 1041, 1046 (9th Cir. 2003) (citing *Kona Enters.*, 229 F.3d at 883). "A [motion for reconsideration] may not be used to raise arguments or present evidence for the first time when such arguments or evidence could reasonably have been raised earlier in the litigation." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003); *Kona Enters.*, 229 F.3d at 890 (citing *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)).

## ANALYSIS

**I.     There Is No New Evidence Warranting Reconsideration**

Defendant argues the Court improperly considered new evidence submitted by Plaintiff in Plaintiff's Prior Reply and this new evidence warrants reconsideration under Civil Local Rule 7.1(i). (MTN 7–8.) Plaintiff's argument is two-fold: (1) the evidence cited by Defendant does not constitute "new" evidence because Plaintiff presented it in response to Defendant's Prior Opposition; and (2) Defendant had an opportunity to rebut the evidence and failed to do so. (Opp'n 10–13.)

The Court referenced Plaintiff's Prior Reply Exhibits CB and CX in its Prior Order. (Prior Order 5, 8.) The Court finds these exhibits "existed" when Defendant filed its Prior Opposition and thus the requirements of Civil Local Rule 7.1(i) are not met.[2] *See* Civ. L. R. 7.1(i)(1) (the party seeking reconsideration must show "what new or different facts and

---

[2] Prior Reply Exhibit CB is an email from an NSCA director to a member of the United States Air Force stating Crossfit is "neither accredited nor was it designed to directly meet the needs of military personnel" and is dated April 21, 2013. Prior Reply Exhibit CX is a compilation of excerpts of the deposition of Keith Cinea which took place on October 23, 2015. Defendant's Prior Opposition was filed March 9, 2017.

4

circumstances are claimed to exist which did not exist, or were not shown, upon [the] prior application [of which the party is seeking reconsideration]"); *see also Sch. Dist. No. 1J*, 5 F.3d at 1263 (holding documents available to a party before it filed its opposition are not "newly discovered evidence"). Accordingly, the Court denies Defendant's Motion as to this ground. *See N.Y. Life Ins. Co. v. Morales*, No. 06CV1022-B(BLM), 2008 WL 11338053, at *2 (S.D. Cal. July 23, 2008) (denying motion for reconsideration because "counsel fail[ed] to explain why [the listed] circumstances could not have been detailed in [its] opposition as they all occurred prior to the Court's imposition of sanctions.")[3]

## II. There is No Intervening Change in Controlling Law Warranting Reconsideration

Defendant argues the Supreme Court's recent decision *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017) justifies this Court reconsidering its ruling. Plaintiff argues (1) *Goodyear* is not "controlling law" and (2) *Goodyear* was decided before the Court's Prior Order and is thus not an "intervening change." (Opp'n 13.)

Defendant claims the Supreme Court held there must be a "'causal link' between one party's misconduct and the other party's injury before a discovery sanction can be imposed" and all sanctions must not be punitive and "may go no further than to redress the wronged party 'for losses sustained.'" (MTN 4 (quoting *Goodyear*, 137 S. Ct at 1186).) But the Supreme Court makes it clear the *Goodyear* holding only applies to awarding attorney's fees as sanctions. The Court held when a district court is issuing <u>attorney fee sanctions</u>, it must "establish a causal link between the litigant's misbehavior and legal fees

---

[3] Even if the Court did not deny Defendant's Motion on this basis, it determines the exhibits were presented by Plaintiff in direct response to Defendant's Prior Opposition. Evidence submitted in direct response to evidence raised in the opposition is not "new." *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1205 n. 31 (C.D. Cal. 2007); *see Terrell v. Contra Costa Cnty.*, 232 Fed. Appx. 626, 629 n.2 (9th Cir. 2007) (Unpub. Disp.) (holding evidence adduced in reply was not new where "[t]he Reply Brief addressed the same set of facts supplied in [Plaintiff's] opposition to the motion but provides the full context to [Plaintiff's] selected recitation of the facts."). Further, because it denies Defendant's Motion on this ground, the Court declines to address Plaintiff's second argument that Defendant had an opportunity to respond to the evidence after Plaintiff filed its Prior Reply but Defendant failed to do so.

5

14-CV-1191 JLS (KSC)

paid by the opposing party" i.e., a district court must "determine whether a given legal fee . . . would or would not have been incurred in the absence of the sanctioned conduct." *Goodyear*, 137 S. Ct. at 1186–87. The Court did not extend its holding to <u>all sanctions</u>, as Defendant argues, but held "[o]ne permissible sanction [that may be issued by a court] is an assessment of attorney's fees against a party that acts in bad faith. Such a sanction must be compensatory, rather than punitive, when imposed pursuant to civil procedures." *Id.* at 1186.

Therefore, Defendant's argument that reconsideration is required to address *Goodyear* because the "issue and adverse inference sanctions imposed by the Court go far beyond what is needed to correct the harm allegedly suffered by the plaintiff" misses the mark. (MTN 4.) And Defendant has specifically stated it is not asking for reconsideration of the $73,550.83 in attorney's fees awarded to Plaintiff. (*Id.* at 25.) Therefore, *Goodyear* does not warrant reconsideration in this matter.[4]

### III. Defendant Has Presented No Clear Error or Manifest Injustice Warranting Reconsideration

"Clear error or manifest injustice occurs when 'the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed.'" *Young v. Wolfe,* CV 07-03190 RSWL-AJWx, 2017 WL 2798497, at *5 (C.D. Cal. June 27, 2017) (quoting *Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013)).

#### A. *There is No Clear Error in the Court's Reliance on the "Extent" of Documents Defendant Failed to Produce*

Defendant argues the Court erred in issuing sanctions against Defendant "based on the Court's perception of the *extent* of the alleged failure by the defendant to fully respond to the discovery propounded by the plaintiff." (MTN 14.) Specifically, Defendant argues

---

[4] The Supreme Court decided *Goodyear* on April 18, 2017. This was after all papers had been submitted in this matter and after the Court took the matter under submission, but before the Court issued its Prior Order. The parties disagree as to whether this qualifies as an intervening change in law based on the timing. Because the Court determines *Goodyear* is not controlling law, it declines to determine whether *Goodyear* qualifies as an "intervening change" in law for purposes of reconsideration.

the Court imposed sanctions based on the perception the missing discovery involved "hundreds of documents" but Plaintiff only identified 70 documents[5] that should have been produced. (*Id.*)  Defendant is not contesting that there are "at least some documents" that should have been produced in discovery but argues the Court relied on an erroneous factual foundation of "numerous" unproduced documents and thus should reconsider its ruling. (*Id.* at 14–15.)

There is no question that Plaintiff asserted in its Prior Motion that "hundreds of documents" should have been produced in response to Plaintiff's discovery requests. (*See* Prior Motion 15–17, "Nahama Decl.," ECF No. 150-2, at ¶¶ 6, 8.)  Yet, Defendant did not address the number of unproduced documents in its Prior Opposition.  Defendant has missed its chance to do so and cannot argue it here, as a motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters.*, 229 F.3d at 890.

Even so, nowhere in the Court's Order does it state the Court relied on the specific assertion that "hundreds" of documents had not been produced.  In the procedural background section, the Court quoted Plaintiff's Prior Motion wherein Plaintiff stated it ran searches in the state-court production which "'yielded hundreds of documents material to the issues in this action and that NSCA should have produced in response to CrossFit's discovery requests in this case.'" (Prior Order 3–4 (quoting Prior Motion 6).)  Later in its Order, the Court found there were "<u>numerous</u> previously undisclosed documents" and documents "too numerous to comprehensively catalog." (Prior Order 4.)  The Court finds no clear error in its reliance on the volume of unproduced documents in determining sanctions.

\ \ \

\ \ \

---

[5] Plaintiff argues the number of unproduced documents is 80. (Opp'n 25.) In its Reply, Defendant agrees Plaintiff is correct. (Reply 4, n. 1.)

### B. *There Is No Clear Error in the Court's Finding That Defendant Failed to Produce Documents Willfully or in Bad Faith*

The Court found "ample evidence of willfulness, bad faith, or fault" in Defendant's failure to produce documents. (Prior Order 7.) Defendant argues there is no evidence that it deliberately withheld documents or in any way acted in bad faith. (MTN 15.)

To begin with, Defendant does not state the Court's finding was clearly erroneous or manifestly unjust, only that there does not "appear to be factual support" for, and the facts are "not consistent" with, the Court's "inference" of bad faith. (MTN 15, 17.) Simply because there does not "appear" to be sufficient evidence to Defendant does not constitute a basis for a motion for reconsideration. To the extent Defendant argues there is clear error in the Court's finding, the Court reviews its finding of bad faith for clear error.

Defendant attacks the three examples the Court cited in its finding of bad faith. (MTN 17.) The Court first found evidence of bad faith in Defendant's failure to produce documents detailing Defendant's planning, funding, and receipt of Nick Clayton's Competitive Analysis. (Prior Order 7–8.) Defendant argues it is "fully possible" that Defendant's failure to produce these documents occurred at a time when Defendant was using deficient methods for locating responsive documents and Plaintiff "has not offered any evidence" to prove otherwise. (MTN 16.) Defendant also argues because it produced the documents in the state court action, this demonstrates no bad faith. (*Id.*) But Defendant's argument that it is "possible" there was no bad faith or willfulness in its actions does not demonstrate clear error. Further, the fact that the documents were produced in state court does not mean there was no bad faith in this action.

The Court next found bad faith in Mr. Clayton's perjury. (Prior Order 8 (citing Prior Motion Ex. I).)[6] There is no question that Mr. Clayton admitted to perjury as evidenced in Exhibit H (wherein Mr. Clayton testified that the statement in his declaration that said "the

---

[6] In its Prior Order, the Court erroneously labeled this as Exhibit I. (*See* Prior Order 3.) The Court intended to refer to the excerpts of Mr. Clayton's deposition, which is Exhibit H.

competitive analysis document [he] drafted was never circulated to other NSCA employees before CrossFit's litigation against the NSCA" is "not a true statement"). Defendant now argues Mr. Clayton did not "lie" but made "inaccurate" statements, and there is no evidence of a bad faith intent. (MTN 18.) In its Prior Order, the Court specifically noted "Defendant does not once address this [perjury], let alone mention it, in its Opposition." (Prior Order 8.) The present Motion may not be used to raise arguments for the first time that could reasonably have been raised earlier. *Kona Enters.*, 229 F.3d at 890. Defendant failed to address Mr. Clayton's perjury in its Prior Opposition and cannot now argue the Court erred in relying on the evidence.

Defendant also argues the Court erroneously wrote Mr. Clayton attended CrossFit Level 1 certification "only" for his own personal interest, (*see* Prior Order 4), when Mr. Clayton's declaration states he attended "primarily" for his own interest. (MTN 18.) The Court nowhere held it relied on this specific statement in finding bad faith; it cited documents related to Mr. Clayton's Competitive Analysis as examples of withheld discovery that prove Mr. Clayton attended the certification for other reasons. (Prior Order 4.)

The Court next found bad faith in Defendant's failure to produce "multiple documents" referencing the Erratum (especially considering Mr. Cinea stated Defendant was not concerned the Erratum was misleading). (Prior Order 8.) Defendant now argues the two documents cited by the Court do not merit the label "multiple"[7] and the failure to produce these "isolated" documents does not show bad faith. (MTN 19.) The Court's Prior Order notes "the Opposition nowhere addresses or even mentions" Defendant's failure to produce the documents. (Prior Order 8.) Defendant therefore cannot make the argument now. Further, Defendant's nit-picking and attacking of singular words and documents within the Court's Order disregards the big picture: Defendant failed to produce

---

[7] The Court disagrees. The dictionary defines multiple as "consisting of, including, or involving more than one." Merriam-Webster Online Dictionary, Multiple, http://www.merriamwebster.com/dictionary/multiple (last visited Sept. 22, 2017).

9

14-CV-1191 JLS (KSC)

numerous discovery documents. Some of these documents concerned the Erratum, which Defendant agrees it should have produced. (*See* MTN 19.) While the Court cited these unproduced documents as evidence of Defendant's bad faith, these documents are not the only evidence the Court relied on in finding bad faith and Defendant cannot look at the documents as "isolated." (*See* Prior Order 8 (the Court stated, after citing various pieces of evidence demonstrating bad faith, "[u]nfortunately, the Court could go on. But the Court does not need to."))

The Court next found bad faith because Defendant stated it did not view Plaintiff as a competitor and therefore had no commercial incentive to take any action against Plaintiff, (Prior Order 8 (citing Answer to Compl. ¶ 27, ECF No. 27)), but numerous previously undisclosed documents indicate the opposite. (Prior Order 8 (citing Prior Motion Ex. C; and Reply Ex. CB).) Defendant argues there is no evidence the failure to produce these documents was deliberate, and because Plaintiff's requests for production are time restricted "it is impossible to determine if there even was an actual obligation on the part of the defendant to produce any individual document." (MTN 20.)

The Court does not agree. For example, Plaintiff's first request for production is time restricted from "January 1, 2008 to the present" (and the request is dated June 25, 2014). (*See* Prior Motion Ex. T.) Prior Motion Exhibit C, which Defendant does not dispute was not produced, is dated November 2013. It is disingenuous for Defendant to now argue it is "impossible" to determine if there was an obligation for it to produce certain documents like Prior Motion Exhibit C. Defendant has not proven clear error in the Court's determination of bad faith.

### C. *There Is No Clear Error in the Issuance of Issue and Evidentiary Sanctions*

Defendant argues the Court's issue and evidentiary sanctions "are the functional equivalent of defaulting the defendant on the issue of liability" and these sanctions are harsher than are required to undo Plaintiff's prejudice. (MTN 23–26.) Defendant also argues there is "no basis" for sanctions number 9-14; sanctions numbers 1-8 and 15-17 are not necessary in light of the other sanctions imposed; and many of the sanctions are not

"related" to the claim at issue. (*Id.*) Plaintiff argues the Court issued no default or dismissal sanctions in this matter and argues the purpose of sanctions is not solely to restore the status quo but also to deter misconduct and subsequent abuses. (Opp'n 21.)

The Court finds no clear error in its issuance of issue and evidentiary sanctions. First, the Court finds it did not decide liability against Defendant and issued no default or dismissal sanctions, nor are the issue and evidentiary sanctions equivalent of a dismissal. And even if these sanctions were construed as a dismissal, and it has been held a court "should consider lesser sanctions before resorting to dismissal or default" and sanctions "equivalent of a dismissal[] are only appropriate upon a showing of willfulness or bad faith[,]"[8] this Court did in fact find bad faith, (*see supra* Section III.B), and did consider issuing harsher sanctions.[9]

Second, the Court finds there is a basis for its issuance of sanctions number 9-14 (which allow the jury to infer various issues from Defendant's spoliation of documents). Defendant argues there is no evidence Defendant destroyed documents. (MTN 23.) But "spoliation" refers to "[t]he intentional destruction, mutilation, alteration, or concealment of evidence . . . ." *Spoliation,* Black's Law Dictionary (10th ed. 2014). And "[i]f proven, spoliation may be used to establish that the evidence was unfavorable to the party responsible." *Id.* Based on the evidence of concealed documents, the Court finds no clear error in its issuance of sanctions number 9-14. The Court also finds no basis to reconsider its issuance of sanctions 1-8 and 15-17; Defendant has not argued the issuance of the sanctions was clear error (only that the sanctions are "not necessary") and the Court finds no clear error. *See* 8B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 2284 (3d ed. 2017) ("The district court may, within reason, use as many and as varied sections as are necessary to hold the scales of justice even.").

---

[8] *See In re Rubin*, 769 F.2d 611, 617 (9th Cir. 1985) and *Qualcomm Inc. v. Broadcom Corp.*, No. 05cv1392-B (BLM), 2007 WL 935617 (S.D. Cal. March 13, 2017)

[9] *See* Prior Order 10 (the Court determined it was "well within its discretion to award terminating sanctions[]" but declined to do so, instead issuing issue and evidentiary sanctions).

Finally, the Court disagrees with Defendant that some of the issue sanctions are not "'specifically related to the "claim" that was at issue' in the discovery." (MTN 26 (citing *In re Rubin*, 769 F.2d at 615).) Defendant misquotes *In re Rubin*—the case held sanctions must be "specifically related to the particular 'claim' that was at issue <u>in the order to provide discovery</u>." *In re Rubin,* 769 F.2d at 615 (emphasis added). There was no order to provide discovery here, and in any event, the Court finds its sanctions are related to Defendant's discovery misconduct. Defendant has not proven any clear error or manifest injustice in the Court's issuance of sanctions. The Court denies Defendant's Motion as to this ground.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's Motion for Reconsideration.

**IT IS SO ORDERED.**

Dated: October 19, 2017

*[signature: Janis L. Sammartino]*

Hon. Janis L. Sammartino
United States District Judge