James R. Lance (State Bar No. 147173)
 jlance@noonanlance.com
Ethan T. Boyer (State Bar No. 173959)
 eboyer@noonanlance.com
Genevieve M. Ruch (State Bar No. 285722)
 gruch@noonanlance.com
**NOONAN LANCE BOYER & BANACH, LLP**
701 Island Avenue, Suite 400
San Diego, California 92101
Telephone: (619) 780-0880/Fax: (619) 780-0877

Kenneth S. Kawabata (State Bar No. 149391)
 ksk@manningllp.com
**MANNING & KASS,**
**ELLROD, RAMIREZ, TRESTER LLP**
550 West C Street, Ste. 1900
San Diego, California 92101
Telephone: (619) 515-0269/Fax: (619) 515-0268

Bruce Isaacs (State Bar No. 100926)
 bruceisaacs@dwt.com
Sean M. Sullivan (State Bar No. 229104)
 seansullivan@dwt.com
Diana Palacios (State Bar No. 290923)
 dianapalacios@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
865 S. Figueroa St., Suite 2400
Los Angeles, California 90017-2566
Telephone: (213) 633-6800/Fax: (213) 633-6899

Attorneys for Defendant NATIONAL STRENGTH AND CONDITIONING ASSOCIATION

### UNITED STATES DISTRICT COURT

### FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CROSSFIT, INC., a Delaware corporation,<br><br>  Plaintiff,<br><br>  v.<br><br>NATIONAL STRENGTH AND CONDITIONING ASSOCIATION, a Colorado corporation,<br><br>  Defendant. | Case No.: 3:14-CV-01191-JLS-KSC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NSCA'S MOTION TO AMEND SCHEDULING ORDER TO ALLOW DESIGNATION OF EXPERT WITNESSES**<br>Date:     03/08/18<br>Time:     1:30 p.m.<br>Ctrm:     4D<br><br>Judge: Hon. Janis L. Sammartino<br>Magistrate: Hon. Karen S. Crawford |

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 5 |
| II. | RELEVANT BACKGROUND | 7 |
| | A. The Expert Witness Disclosure and Rebuttal Dates. | 7 |
| | B. The Parties' Expert Witness Designations and Expert Depositions. | 7 |
| | C. CrossFit Belatedly Supplements Dr. Solomon and Dr. Morreim's Expert Reports. | 8 |
| | D. The Parties' Meet and Confer Efforts Regarding the Expert Witness Issues. | 9 |
| | E. CrossFit's Motion for Sanctions and Post-Sanctions Discovery. | 10 |
| | F. CrossFit's Second Amended Complaint. | 10 |
| | G. The Current Status of the Case. | 11 |
| III. | DR. SIMONSON AND THE SOLOMON REBUTTAL REPORT | 11 |
| IV. | GOOD CAUSE EXISTS TO ALLOW THE NSCA TO DESIGNATE DR. SIMONSON AS AN EXPERT | 12 |
| | A. Considerations of Fairness Heavily Favor Permitting NSCA to Designate Dr. Simonson as an Expert. | 13 |
| |    1. Dr. Solomon's Supplemental Report States New Opinions that the NSCA Should Be Permitted to Address and Rebut. | 13 |
| |    2. The NSCA Should Be Permitted to Address CrossFit's New Claims Regarding the U.S. Military. | 14 |
| | B. CrossFit Will Suffer No Prejudice or Surprise. | 14 |
| | C. Permitting the NSCA to Designate an Additional Expert Will Not Impact the Orderly and Efficient Conduct of the Trial. | 15 |
| | D. NSCA's Request Is Made in Good Faith. | 15 |
| V. | IN THE ALTERNATIVE, THE COURT SHOULD STRIKE THE SUPPLEMENAL REPORTS OF DR. SOLOMON'S & DR. MORREIM | 16 |
| | A. Proper Supplementation of an Expert Report. | 16 |
| | B. The Court Should Strike Dr. Solomon's Improper Supplemental Report. | 17 |

VI. CONCLUSION ................................................................................................... 19

# TABLE OF AUTHORITIES

**Federal Cases**

*Akeva LLC v. Mizuno Corp.*,
  212 FRD 306 (M.D.N.C. 2002) .................................................................. 16
*Beller ex rel. Beller*,
  221 FRD 696 (D. New Mexico 2003) ............................................. 13, 17, 18
*Fid. Nat. Fin., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*,
  308 F.R.D. 649 (S.D. Cal. 2015) ................................................................ 12
*Keener v. US*,
  181 FRD 639 (D. Montana 1998) ......................................................... 17, 18
*Park v. CAS Enterprises, Inc.*,
  No. 08-cv-00385, 2009 WL 4057888 (S.D. Cal. Nov. 18, 2009) ....... 12, 13, 15, 16
*Plumley v. Mockett*,
  836 F. Supp. 2d 1053 (C.D. Cal. 2010) ................................................ 17, 18
*R & R Sails, Inc. v. Ins. Co. of the Pac.*,
  673 F.3d 1240 (9th Cir. 2012) ................................................................... 14
*Zertuche v. Cty. of Santa Clara*,
  No. 11-CV-3691 YGR, 2013 WL 4111142 (N.D. Cal. Aug. 12, 2013) ......... 13, 14

**Federal Rules**

Fed. R. Civ. P. 16(b)(4) ................................................................................... 12
Federal Rules of Civil Procedure, Rule 16(b) ................................................. 12
FRCP 26(a)(2) ................................................................................................. 16
FRCP 26(e) ................................................................................. 16, 17, 18, 19
FRCP 37(c) ...................................................................................................... 19
FRCP 37(c)(1) ........................................................................................... 17, 18
Rule 16 ............................................................................................................. 12

## I. INTRODUCTION

Seven months after the close of expert discovery, Plaintiff CrossFit, Inc. purported to serve Supplemental Reports of their experts Dr. Michael R. Solomon and Dr. E.H. Morreim. The Solomon Supplemental Report, which was served 218 days after Dr. Solomon was deposed, increased CrossFit's alleged corrective advertising damages by nearly $15 million, from $3.5 million to $18 million. Through its new lead counsel, Noonan Lance Boyer & Banach, Defendant National Strength and Conditioning Association ("NSCA") submits this motion to resolve the Parties' dispute concerning the need to amend the Scheduling Order to set new expert designation dates for both Parties due primarily to the new opinions set forth in Dr. Solomon's Supplemental Report.

Specifically, the NSCA requests that the Court: (1) either amend the Scheduling Order to permit the NSCA to designate Dr. Itamar Simonson as an expert in this case to address the new opinions set forth by CrossFit expert Dr. Solomon, or strike Dr. Solomon's Supplemental Report and Dr. Morreim's Supplemental Report; and (2) amend the Scheduling Order to permit the Parties to designate experts on CrossFit's new military claims set forth in the Second Amended Complaint.

There is good cause to allow the NSCA to designate Dr. Simonson as an expert. CrossFit seeks to make use of an untimely expert report by which it has increased its claim for corrective advertising by nearly $15 million based almost entirely on the publication of a single article which mentions the Devor Article. The NSCA should be permitted to designate Dr. Simonson to counter this new and belated damages opinion as well as other improper opinions stated by Dr. Solomon, which are based on a tainted, biased, leading, and manipulative market survey.

In addition to the issues raised by the supplemental reports submitted by CrossFit after the close of expert discovery, the Scheduling Order should be amended to set expert designation dates related to new claims which CrossFit

alleges in the Second Amended Complaint filed in June 2017, more than a year after the close of expert discovery. The new claims in CrossFit's Second Amended Complaint allege that the NSCA made false statements to the United States Military about CrossFit. The "military claims" were not at issue when the Parties submitted their initial expert designations in 2016, were not addressed in the expert reports, and were not the subject of expert discovery. Therefore, the Scheduling Order should be amended to set deadlines to designate experts on the new military claims.

Importantly, amending the Scheduling Order to address the Solomon Supplemental Report and new military claims will have no impact on the current pre-trial or trial schedule. This Court recently agreed to a stipulation, which initially was requested by CrossFit, to continue the dates set forth in the Scheduling Order by twelve months. The Pre-Trial Conference Date is now set for January 23, 2019, more than a year from now. In this respect, there is no prejudice to CrossFit if the NSCA is permitted to designate Dr. Simonson as an expert in this case.

On the other hand, the NSCA would suffer severe prejudice if it is not permitted to designate Dr. Simonson as an expert to rebut Dr. Solomon's new opinions on several critical issues. Most notably, Dr. Solomon's Supplemental Report now asserts corrective advertising damages of over $18 million. This opinion reflects a nearly $15 million increase in damages more than seven months after the NSCA took Dr. Solomon's deposition and is based, primarily, on the publication of a single subsequent article. Thus, if the Court is not inclined to allow NSCA to designate Dr. Simonson as its expert, NSCA requests that the Court instead strike Dr. Solomon's Supplemental Report (and Dr. Morreim's Supplemental Report) as improper and untimely to avoid irreparable prejudice to the NSCA.

For the foregoing reasons, the NSCA requests that the Court: (1) either amend its Scheduling Order (Dkt. No. 69) to allow the NSCA to designate Dr. Itamar Simonson as an expert or strike Dr. Solomon's Supplemental Report and Dr.

Morreim's Supplemental Report; and (2) amend its Scheduling Order to permit the Parties to designate experts on CrossFit's new military claims.

## II. RELEVANT BACKGROUND

### A. The Expert Witness Disclosure and Rebuttal Dates.

In the initial Scheduling Order, the parties were directed to designate their respective experts in writing by March 23, 2015. Dkt. No. 14. Rebuttal experts were to be exchanged by April 6, 2015, and the last day for expert discovery was scheduled for June 22, 2015. *Id.* The Court's Scheduling Order was subsequently amended, extending the expert discovery deadlines for both sides. *See* Dkt. Nos. 34, 62.

On December 31, 2015, the parties jointly requested that the Court extend the expert-related deadlines to allow the parties to focus on the then pending first mediation while not incurring expert-related costs. *See* Dkt. No. 66. The Court granted the joint motion and extended the expert discovery cut-off date to April 1, 2016. Because the parties were not able to obtain a date for private mediation until March 16, 2016, the parties once more jointly moved to extend expert discovery, which the Court granted. As a result, the expert-related deadlines were set as follows:

- April 1, 2016: Expert Witness Disclosures Due.
- April 15, 2016: Last Day to Disclose Expert Rebuttal Evidence.
- May 13, 2016: Expert Discovery Cutoff.

Dkt. No. 69. While the Court has since amended its Scheduling Order, the expert discovery deadlines remained the same. *See* Dkt. No. 129, 155.

### B. The Parties' Expert Witness Designations and Expert Depositions.

On November 30, 2015, CrossFit designated Dr. Michael R. Solomon as its expert on damages, corrective advertising damages, and marketing issues and survey issues. *See* Declaration of Kenneth Kawabata ("Kawabata Dec.") ¶ 3. CrossFit also designated Dr. E.H. Morreim as its expert on the peer review process. *Id.* In his

initial expert report (the "Solomon Initial Report"), Dr. Solomon opined that CrossFit had suffered corrective advertising damages in the amount of $3.5 million. *See id.* at ¶ 4, Ex. 1 at p. 67 (excerpt of Solomon Initial Report); Ex. 2 at p. 67 (entire Solomon Initial Report).

On November 30, 2015, the NSCA designated Dr. Peter Wagner as its expert on the peer review process and standard of care issues concerning the publication of scholarly works in academic journals. Kawabata Dec. ¶ 5. On December 15, 2015, pursuant to the Court's Scheduling Order then in effect, the NSCA designated Constantine Boudikis, a forensic financial accountant, as a rebuttal expert to the issue of CrossFit's claim of financial damages. *Id.* at ¶ 6.

The parties proceeded with depositions of each other's experts. Kawabata Dec. at ¶ 7. On May 25, 2016, the NSCA deposed Dr. Solomon. *Id.* At his deposition, Dr. Solomon testified that he was not provided with specific financial documents of CrossFit so as to provide testimony as to the specific amount of financial loss attributed to the dissemination of the Devor Article in the public space. Dr. Solomon also testified he did not have any expertise in the field of forensic financial analysis. *Id.* On May 27, 2016, the NSCA deposed Dr. Morreim. *Id.* at ¶ 8. On May 27, 2016, CrossFit deposed Mr. Boudikis, who testified that Dr. Solomon's financial opinions on damages were not appropriate because he did not have the expertise to conduct a forensic investigation into the specific financial losses claimed by CrossFit that were, in Dr. Solomon's opinion, a legal cause which resulted from the publication of the Devor Article. *Id.* at ¶ 9.

C. **CrossFit Belatedly Supplements Dr. Solomon and Dr. Morreim's Expert Reports.**

In a letter dated December 29, 2016, CrossFit forwarded to the NSCA two supplemental reports from CrossFit's experts, Dr. Solomon and Dr. Morreim. Kawabata Dec. at ¶ 10. Both of these supplemental reports were untimely, in violation of the Scheduling Order then in effect, and were provided *after* the

8

depositions of the expert witnesses already had taken place and the expert discovery cut-off date had passed. *Id.* While the NSCA already had deposed both experts, CrossFit offered to produce them for a second deposition regarding the content of their respective supplemental reports if, in exchange, the NSCA did not make an issue of the untimeliness of the supplemental reports. *Id.* The NSCA never agreed to CrossFit's proposal.

These supplemental reports, and in particular the supplemental report of Dr. Solomon (the "Solomon Supplemental Report"), are extremely significant because both purport to make major changes in the expert opinions provided by CrossFit's experts. Kawabata Dec. at ¶ 12. In the Solomon Supplemental Report, Dr. Solomon changed his opinion on the amount of corrective advertising damages from $3.5 million to $18 million, an increase of nearly $15 million. Kawabata Dec. Ex. 1 at p. 67, Ex. 3 at p. 24. Moreover, Dr. Solomon's opinion on corrective advertising damages, and the marketing conditions which gave rise to it, were based not only on the subsequent publication of a *single* article (referred to in the Solomon Supplemental Report as the "Iron Tribe article") which itself made reference to the Devor Article, but on inappropriate survey evidence he gathered, and other erroneous market conclusions he reached. *Id.* Ex. 3 at p. 24 (excerpt of Solomon Supplemental Report); Ex. 4 at p. 24 (entire Solomon Supplemental Report).

### D. The Parties' Meet and Confer Efforts Regarding the Expert Witness Issues.

On January 9, 2017, the parties met and conferred on several discovery issues, including the issue of CrossFit's experts' supplemental reports. Kawabata Dec. ¶ 13. Regarding the supplemental expert reports, the parties discussed the following proposal: (1) NSCA would treat the supplemental reports and, in particular, the Solomon Supplemental Report, as timely; (2) NSCA would be permitted to take a subsequent deposition of Dr. Solomon; and (3) the likely need for the NSCA to augment its expert designation to include an expert similar to Dr. Solomon to

address the damages, corrective advertising damages, and marketing and survey issues now raised by CrossFit, especially given the greatly increased corrective damages of nearly $15 million. *Id.* CrossFit did not formally respond to the issue of the NSCA designating another expert, and the Parties never finalized an agreement on the issues raised by CrossFit's supplemental expert reports. *Id.*

### E.  CrossFit's Motion for Sanctions and Post-Sanctions Discovery.

On February 2, 2017, CrossFit filed its Motion for Terminating Sanctions, or in the Alternative Issue, Evidentiary, and Monetary Sanctions. Kawabata Dec. ¶ 15. The Court issued its order granting in part and denying in part CrossFit's motion on May 26, 2017. Dkt. 176; Kawabata Dec. ¶ 16. In its Order, allowed CrossFit to file an amended complaint alleging new claims related to the U.S. military. Dkt. 176 at 10:22-23.

Since the Court's ruling on the sanctions motion, CrossFit has propounded four sets of Requests for Production, totaling 156 new Requests. Kawabata Dec. ¶ 18. CrossFit has also propounded three sets of interrogatories. *Id.* Many, if not most, of these discovery requests pertain to the new military claims raised by CrossFit. The NSCA is still in the process of collecting, reviewing, and producing documents responsive to the numerous Requests for Production. To date, the NSCA has provided over twelve terabytes of data to its electronic discovery vendor. *Id.* At CrossFit's request, the NSCA also engaged contract attorneys to review the documents to be produced for confidentiality and privilege. *Id.* Responding to CrossFit's post-sanctions discovery has been a significant and time consuming undertaking. *Id.*

### F.  CrossFit's Second Amended Complaint.

After the Court issued its Order on the sanctions motion, CrossFit filed a Second Amended Complaint ("SAC") on June 26, 2017 containing 79 new paragraphs not included in the First Amended Complaint. Dkt. 187; Kawabata Dec. ¶ 17. The SAC contains new allegations regarding the NSCA's interactions with the

United States military. *See, e.g.*, Dkt. 187 at ¶¶ 35-90. CrossFit now alleges that the NSCA made misrepresentations to the military, including that CrossFit's Level 1 Trainer Course is not accredited, is unsafe, and was not designed to meet the needs of the military. Dkt. 187 at ¶¶ 76-78.

G.  **The Current Status of the Case.**

In August 2017, attorneys James R. Lance, Ethan T. Boyer and Genevieve M. Ruch of Noonan Lance Boyer & Banach LLP entered an appearance as co-counsel for the NSCA in this action. Noonan Lance is now lead counsel for the NSCA.

Thereafter, on October 24, 2017, pursuant to CrossFit's request for additional time, the Parties filed a joint motion requesting the continuance of the Pre-Trial Conference date and related deadlines by twelve months, which the Court granted on October 26, 2017. Dkt. Nos. 213, 214. The current Pre-Trial Conference date is now January 23, 2019. Kawabata Dec. at ¶ 19.

III.  **DR. SIMONSON AND THE SOLOMON REBUTTAL REPORT**

Dr. Simonson is the Sebastian S. Kresge Professor of Marketing at the Graduate School of Business, Stanford University. Simonson Decl. ¶ 1. He has reviewed the Solomon Initial Report and the Solomon Supplemental Report (collectively, the "Solomon Reports"). After reviewing the Solomon Reports, Dr. Simonson reached the following conclusions, among others, all of which are explained, in detail, in the attached Simonson Declaration:

- The Solomon Reports, in particular the Solomon Supplemental Report, are tainted by focalism and impact bias.
- There is no evidence in the Solomon Reports that the Devor Article had a negative effect on the reputation of CrossFit.
- The Solomon Reports fail to take into account the numerous other negative articles and communications about CrossFit and the effect of those negative articles and communications on the decision-making process of consumers.
- The Solomon Reports are based on a fatally flawed survey.

11

- The Solomon Reports are based on a meaningless and contrived "web scrape" that ignores other negative articles and communications about CrossFit.
- The Solomon Reports are based on a biased interpretation of the data.
- The Solomon Reports attempt to explain away other negative articles about CrossFit without any justification or logical basis for doing so.
- The notion of "corrective advertising" would not, in any event, address or remedy the alleged negative impact of the Devor Article as basic principles of consumer decision-making will demonstrate.

If the NSCA's Motion is granted, Dr. Simonson will conduct a similar experiment and/or survey to that conducted by Dr. Solomon, but will do so in a fair and unbiased fashion, to determine the impact, if any, of the Devor Article on CrossFit.

## IV.  GOOD CAUSE EXISTS TO ALLOW THE NSCA TO DESIGNATE DR. SIMONSON AS AN EXPERT

In the Southern District of California, courts evaluate requests to supplement an expert designation after the expert discovery deadline under Federal Rules of Civil Procedure, Rule 16(b). *Fid. Nat. Fin., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*, 308 F.R.D. 649, 652 (S.D. Cal. 2015); *Park v. CAS Enterprises, Inc.*, No. 08-cv-00385, 2009 WL 4057888, at *2-3 (S.D. Cal. Nov. 18, 2009).

Under Rule 16, a district court may amend the scheduling order for "good cause." Fed. R. Civ. P. 16(b)(4). Under this standard, the Court has significant discretion to modify the scheduling order: "[I]t is clear that a district court has substantial inherent power to control and to manage its docket, and, in doing so, the court must strike a balance between the needs of judicial efficiency and the rights of litigants." 8-40 Moore's Federal Practice - Civil § 40.02 (Matthew Bender, 3d ed.).

In determining whether to exercise its discretion to amend a scheduling order, "a court should examine four factors: (1) degree of prejudice or surprise to the opposing party if the court modifies the order; (2) the opposing party's ability to

cure the prejudice; (3) the proposed modification's impact on the orderly and efficient conduct of the trial; and (4) the moving party's willfulness or bad faith." *Park*, 2009 WL 4057888, at *3. Here, all four factors weigh in favor of permitting the NSCA to designate Dr. Simonson as an expert.

### A. Considerations of Fairness Heavily Favor Permitting NSCA to Designate Dr. Simonson as an Expert.

#### 1. Dr. Solomon's Supplemental Report States New Opinions that the NSCA Should Be Permitted to Address and Rebut.

As an initial matter, the need for the NSCA to designate Dr. Simonson was precipitated by Dr. Solomon's untimely supplemental report, which significantly changed his opinion regarding corrective advertising damages. The Solomon Initial Report estimates a cost of $3.5 million dollars to implement a corrective advertising program to rectify any purported damages caused by the Devor Article. Kawabata Dec. Ex. 1, p. 67. The Solomon Supplemental Report increases this estimate by over five times – estimating it would take $18 million dollars to implement a corrective advertising program based solely on the distribution of one subsequent article, the "Iron Tribe" article, which referenced the false data of the Devor Article. Kawabata Dec. Ex. 3, p. 24. This reflects an almost $15 million increase in Dr. Solomon's initial opinion regarding corrective advertising damages. The NSCA should be given a fair opportunity to address and rebut Dr. Solomon's new and significantly increased damages opinion by designating Dr. Simonson as an expert. *See Beller ex rel. Beller*, 221 FRD 696, 701 (D. New Mexico 2003) (where plaintiff's expert offers new opinions in a supplemental report, the defendant may need to retain new experts to counter the new opinion testimony).

If the NSCA is not permitted to supplement its expert designation, it will be unfairly prevented from presenting a full defense at trial. *Zertuche v. Cty. of Santa Clara*, No. 11-CV-3691 YGR, 2013 WL 4111142, at *4 (N.D. Cal. Aug. 12, 2013) is instructive. In *Zertuche*, plaintiff's counsel failed to designate a medical expert by the deadline due to a "flurry of discovery around this time," and while there was

no justification for the delay, unlike here, the district court permitted the plaintiff to designate an expert because "complete exclusion of Zertuche's expert would be an unduly harsh sanction." *Id.* Similarly, here, not allowing the NSCA to designate an expert would result in the NSCA being unable to address the significant change in Dr. Solomon's report despite its good faith efforts, and would result in an unbalanced trial with CrossFit receiving an unfair advantage on expert and damages issues. *See also R & R Sails, Inc. v. Ins. Co. of the Pac.*, 673 F.3d 1240 (9th Cir. 2012) (because exclusion of discovery "amounted to dismissal of a claim, the district court was required to consider whether the claimed noncompliance involved willfulness, fault, or bad faith.")

### 2. The NSCA Should Be Permitted to Address CrossFit's New Claims Regarding the U.S. Military.

The need to designate an additional expert was further heightened following the Court's ruling on CrossFit's sanctions motion. CrossFit filed a Second Amended Complaint in June 2017 containing new allegations (across 79 additional paragraphs) that the NSCA made false statements to the military, including that its CrossFit Level 1 Trainer Course is not accredited, is unsafe, and was not designed to meet the needs of the military. SAC ¶¶ 60, 76-78; Kawabata Dec. ¶ 17. CrossFit's new focus on statements made to the military was not contemplated at the time of the Parties' initial expert disclosures. The NSCA should be permitted to designate experts to address these new issues which, depending on CrossFit's allegations and the opinions of CrossFit's experts, may include Dr. Simonson. The NSCA will be irreparably harmed if it cannot present a full defense to these new military claims.

### B. CrossFit Will Suffer No Prejudice or Surprise.

Importantly, CrossFit will suffer no prejudice or surprise if the Court grants the NSCA's request to augment its expert designation. *First*, the NSCA already has disclosed its intention to designate an additional expert to address the Solomon Reports in light of the Solomon Supplemental Report. Kawabata Dec. ¶ 13. In

addition, the NSCA has attached to this Motion a detailed declaration from Dr. Simonson explaining his reasoning and setting forth the experiment and/or survey he would like to conduct so that survey evidence, and conclusions and opinions based on survey evidence, are gathered in a fair, appropriate, and unbiased way. *See* Declaration of Dr. Itamar Simonson. With this information, CrossFit can begin to formulate its response and prepare for Dr. Simonson's deposition and trial. The NSCA will make any new expert available for deposition on a mutually convenient date.

In addition, while the expert discovery deadline has passed, expert discovery is effectively still ongoing. CrossFit itself supplemented its expert reports after the expert discovery deadline, and the NSCA must still depose CrossFit's experts on this new material and additional opinions. Kawabata Dec. at ¶¶ 10, 14.

Further, the Final Pre-Trial Conference has been continued until January 23, 2019. This leaves CrossFit with more than enough time to depose Dr. Simonson and to cure any purported or potential prejudice. *See Park*, 2009 WL 4057888 at *3 ("the continuance of pretrial dates [by 120 days] . . . alleviate[d] any potential prejudice to [the defendant] by the substitution of [plaintiff's] damages expert.").

Thus, neither CrossFit nor the NSCA will be prejudiced if this motion is granted so as to give both sides a fair opportunity to explore, rebut and ultimately present the various expert and damages issues at trial.

### C. Permitting the NSCA to Designate an Additional Expert Will Not Impact the Orderly and Efficient Conduct of the Trial.

Likewise, allowing the NSCA to designate Dr. Simonson will not cause any delay nor require the Court to continue the final Pre-Trial Conference date, which is more than twelve months away. CrossFit will have sufficient time to review Dr. Simonson's report and depose him under the current deadlines.

### D. NSCA's Request Is Made in Good Faith.

The NSCA filed this motion with the utmost good faith. In approximately

December 2016, seven months after the NSCA deposed Dr. Solomon, and well after the close of expert discovery, CrossFit served the NSCA with Dr. Solomon's Supplemental Report, which significantly increased Dr. Solomon's corrective advertising damages, from $3.5 million to $18 million. Kawabata Dec. at ¶ 12.

The NSCA quickly determined that it would require an expert to rebut Dr. Solomon's supplemental report. In January 2017, the parties met and conferred regarding CrossFit's untimely supplemental report and the NSCA's need to designate an additional expert. Kawabata Dec. at ¶ 13. The NSCA indicated that it would need to designate another expert similar to Dr. Solomon, but CrossFit did not formally respond to the NSCA's request. *Id.*

In addition, in June 2017, CrossFit filed a Second Amended Complaint alleging new claims regarding alleged misrepresentations made by the NSCA to the United States military. Kawabata Dec. ¶ 17. These new claims further support the right of the NSCA to designate additional experts.

In short, in order to ensure a fair trial with a balanced expert presentation to the jury, the Court should grant the NSCA's motion and allow it to designate Dr. Simonson as an expert and additional experts to address CrossFit's new military claims.

### V. IN THE ALTERNATIVE, THE COURT SHOULD STRIKE THE SUPPLEMENAL REPORTS OF DR. SOLOMON'S & DR. MORREIM

#### A. Proper Supplementation of an Expert Report.

FRCP 26(a)(2) requires parties to disclose an expert report, including a "complete statement of all opinions the witness will express and the basis and reasons for them", within the deadlines set by the Court. An expert must timely supplement his report: (1) "if the party learns that in some material respect the disclosure or response is incomplete or incorrect"; or (2) as ordered by the Court. FRCP 26(e). Rule 26(e) envisions supplementation when an expert's report is defective in some way and is therefore misleading. *Akeva LLC v. Mizuno Corp.*,

212 FRD 306, 310 (M.D.N.C. 2002).

While FRCP 26(e) does allow for supplementation under certain circumstances, an expert is not permitted to issue new or different opinions under the guise of a supplemental report. *See Keener v. US*, 181 FRD 639, 642 (D. Montana 1998); *Beller*, 221 FRD at 701-702. A purported supplemental disclosure that is **substantially different** from the initial disclosure is not a proper supplemental disclosure. *Keener*, 181 FRD at 642; *Beller*, 221 FRD at 701-702. Such a report is instead considered an untimely disclosure. *See Keener*, 181 FRD at 642.

A party that fails to timely disclose an expert opinion is not permitted to use that opinion unless the failure was "substantially justified" or harmless. FRCP 37(c)(1). The party facing the sanction bears the burden of demonstrating that its failure to comply with the rules is substantially justified or harmless. *Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1064 (C.D. Cal. 2010).

**B.      The Court Should Strike Dr. Solomon's Improper Supplemental Report.**

Dr. Solomon presents his December 2016 report as a "Supplemental Report." This report, which was served seven months after the close of expert discovery, significantly increases Dr. Solomon's opinion regarding corrective advertising damages, from $3.5 million to $18 million. Kawabata Dec. ¶ 12. This opinion is substantially different from the opinion set forth in the Solomon Initial Report and is not a proper supplemental report.

*Beller ex rel. Beller* is instructive. There, the plaintiff's expert issued an initial report opining that total economic damages ranged between approximately $5 million - $6.9 million. *Beller*, 221 FRD at 699. The expert issued a second report after his deposition, and after the close of discovery, increasing his opinion regarding total economic damages to approximately $5.1 million - $7.1 million. *Id.* at 697, 699. The Court found that a side-by-side comparison of the two reports made it "abundantly clear" that the opinions in the second report were not the same

the expert previously offered. *Id.* at 699-700.  In addition, the plaintiff did not seek leave to modify the Court's case management deadlines to belatedly file the second report. *Id.* at 702.  The Court granted the defendant's motion to strike the untimely "supplemental" report. *Id.*

As in *Beller*, here a side-by-side comparison of the Solomon Reports clearly demonstrates that the opinions in the Solomon Supplemental Report are new opinions that are substantially different from those set forth in the Solomon Initial Report.  The disparity in this case – a $15 million increase – greatly exceeds the approximately $200,000 increase in *Beller*.  This opinion cannot be considered a proper supplemental report. *Beller*, 221 FRD at 699-700, 702; *see also Keener*, 181 FRD at 642 (second opinion not a proper supplemental report where "the nature of the second disclosure is so substantially different from the first that it falls far outside any reasonable notion of correcting an incomplete or inaccurate expert report.").  CrossFit also did not seek leave of the Court to serve a supplemental report after the close of expert discovery. Kawabata Dec. ¶ 11.

Moreover, the Solomon Supplemental Report contains material that was readily available at the time of the Solomon Initial Report.  Dr. Solomon describes a search he performed on the website of the NSCA's Journal of Strength and Conditioning Research, which led to the opinion that certain users may not be notified that an Erratum to the Devor Article has been published.  Kawabata Dec. Ex. 3, p.3.  Dr. Solomon had the ability to discern this information prior to serving his Initial Report, and thus this opinion is not a proper supplement under FRCP 26(e). *Plumley*, 836 F. Supp. 2d at 1063-1064; FRCP 26(e).

Finally, CrossFit's failure to timely disclose Dr. Solomon's new opinions is not harmless or substantially justified. FRCP 37(c)(1).  If the Solomon Supplemental Report is not struck, the NSCA will have to incur additional attorney fees to depose Dr. Solomon a second time.  In addition, absent relief from the Court allowing the NSCA to designate an expert to address Dr. Solomon's new opinions,

the NSCA will be prevented from having a full and fair opportunity to address and rebut Dr. Solomon's significantly increased damages opinion. This would irreparably harm and prejudice the NSCA. Also, CrossFit's failure to timely disclose these opinions is not justified. Rather, CrossFit is attempting to increase its corrective advertising damages claim over five times under the guise of a "supplemental report".

The sanctions set forth in FRCP 37(c) are mandatory. If the Court does not permit the NSCA to designate an expert to address and rebut the new opinions set forth in the Solomon Supplemental Report, the Court must strike the Solomon Supplemental Report (and Morreim Supplemental Report) as improper under FRCP 26(e). Of course, the easiest solution to promote fairness to both sides is to grant the NSCA's Motion and allow it to designate Dr. Simonson to address Dr. Solomon's opinions.

## VI. CONCLUSION

For the reasons set forth above, the NSCA respectfully requests that the Court: (1) amend its Scheduling Order to permit NSCA to designate Dr. Itamar Simonson as an expert in this case or strike Dr. Simonson's Supplemental Report and Dr. Morreim's Supplemental Report; and (2) amend its Scheduling Order to permit the Parties to designate experts on CrossFit's new military claims.

Dated: February 1, 2018    NOONAN LANCE BOYER & BANACH, LLP

By: /s/James R. Lance
James R. Lance
Ethan T. Boyer
Genevieve M. Ruch
Attorneys for Defendant NATIONAL STRENGTH AND CONDITIONING ASSOCIATION