FILED

JUL 18 2018

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CROSS-FIT, INC., a Delaware corporation,<br><br>                              Plaintiff,<br><br>v.<br><br>NATIONAL STRENGTH AND CONDITIONING ASSOCIATION, a Colorado corporation,<br><br>                              Defendant. | Case No.: 14cv1191-JLS(KSC)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO AMEND THE SCHEDULING ORDER TO ALLOW ADDITIONAL EXPERT DISCOVERY**<br><br>**[Doc. No. 215]** |

Before the Court are:  (1) defendant's Motion to Amend the Scheduling Order [Doc. No. 215]; (2) plaintiff's Opposition thereto [Doc. No. 221]; and (3) defendant's Reply [Doc. No. 225].[1]  In the Motion, defendant seeks an order:  (1) re-opening expert discovery, so that it can address new allegations in plaintiff's Second Amended Complaint; and (2) re-opening expert discovery to allow for designation of a new expert, Dr. Itamar Simonson, to "counter" an initial expert report and a second or supplemental

---

[1]     Plaintiff also filed an Ex Parte Application to File a Sur-Reply. [Doc. No. 235] Although the Court will file the proposed Sur-Reply for the record, it was unnecessary for the Court to make a determination on defendant's Motion.

expert report prepared by plaintiff's damages expert, Dr. Michael R. Solomon. Alternatively, defendant seeks an order striking Dr. Solomon's second or supplemental expert report as untimely.[2] [Doc. No. 215-1, at pp. 5-6.] For the reasons outlined more fully below, the Court finds that defendant's Motion must be GRANTED in part and DENIED in part.

### *Factual and Procedural History*

Briefly, the allegations in the operative Second Amended Complaint are that defendant engaged in unfair competition and false advertising. Both parties are involved in the fitness industry. [Doc. No. 187, at pp. 2-5.] A key factual allegation is that defendant published false and misleading injury data in an article referred to as the Devor Study that caused harm to plaintiff's business by indicating plaintiff's fitness programs are unsafe. [Doc. No. 187, at pp. 3-4.] Defendant later published an Erratum to address the false and misleading injury data in the Devor Study. However, plaintiff alleges that the Erratum also contains false and misleading statements. [Doc. No. 187, at pp. 25-26.]

The case has now been pending for more than four years since the original Complaint was filed on May 12, 2014. [Doc. No. 1.] The original Scheduling Order was entered on October 3, 2014. [Doc. No. 24.] Since then, the Scheduling Order has been amended a number of times because of discovery disputes and other delays. In the Second Amended Scheduling Order, the Court extended the time for expert designations until November 30, 2015 with all expert discovery to be completed on or before March 1, 2016. [Doc. No. 62, at p. 3.] Pursuant to this Second Amended Scheduling Order,

---

[2] Defendant's Motion also requests an order striking a second or supplemental expert report by another one of plaintiff's experts, Dr. E. H. Morreim. [Doc. No. 215-1, at pp. 8-9.] However, defendant's Motion does not include any justification for striking this report other than the fact that it was served on December 29, 2016, after the deadline for completing all expert discovery. Without more, it appears this report was properly served as a supplemental report under Federal Rule of Civil Procedure 26(e). [Doc. No. 221, at p. 30.] Therefore, defendant's request for an order striking this expert report will be denied without further comment or analysis.

14cv1191-JLS(KSC)

plaintiff designated Dr. Solomon, a marketing professor, as its damages expert on November 30, 2015. [Doc. No. 215-3, at p. 2; Doc. No. 215-6, at p. 2.] Defendant then designated Constantine Boudikis, a forensic financial accountant, as a rebuttal expert on the issue of plaintiff's claimed damages. [Doc. No. 215-3, at p. 2.]

In the Fourth Amended Scheduling Order, which was entered on February 10, 2016, the deadline for exchanging initial expert reports was extended to April 1, 2016, and the exchange of rebuttal expert reports was re-scheduled for April 15, 2016. The deadline for completing all expert discovery was extended until May 13, 2016. [Doc. No. 69, at pp. 1-2.] However, on April 12, 2016, the Fifth Amended Scheduling Order extended the deadline for exchanging rebuttal expert reports to April 22, 2016, and extended the deadline for completing all expert discovery to May 31, 2016. [Doc. No. 79, at p. 2.]

On or about April 1, 2016, plaintiff produced Dr. Solomon's initial expert report on the issue of damages. [Doc. No. 215-6, at pp. 1-145.] On or about April 22, 2016, defendant disclosed its rebuttal expert report on damages, which was prepared by Mr. Boukidis. [Doc. No. 221-2, at pp. 3-11.] Defendant deposed Dr. Solomon on May 25, 2018, and plaintiff deposed Mr. Boudikis on May 27, 2016. [Doc. No. 215-1, at p. 8.]

On September 21, 2016, the District Court issued an Order Granting Plaintiff's Motion for Partial Summary Judgment and Denying in Part Defendant's Motion for Summary Judgment. [Doc. No. 121.] In this Order, the District Court granted partial summary judgment to plaintiff on the issue of falsity, finding that plaintiff presented evidence establishing that the injury data in the Devor Study were in fact false, regardless of whether the authors knew it at the time. [Doc. No. 121, at p. 20.]

Shortly thereafter, on October 6, 2016, the District Court issued an Order granting the parties' Joint Motion for Entry of an Amended Scheduling Order. At this time, the final Pre-Trial Conference was continued from November 17, 2016 to March 23, 2017. [Doc. Nos. 69, 123, 127, 129, at p. 2.] The deadline to comply with pre-trial disclosures

14cv1191-JLS(KSC)

1  under Federal Rule of Civil Procedure 26(a)(3) was extended to February 17, 2017.

2  [Doc. No. 129, at p. 2.]

3      On or about December 29, 2016, long after the May 31, 2016 deadline for

4  completing all expert discovery, plaintiff produced a second or supplemental expert

5  report prepared by Dr. Solomon that is now challenged as untimely by defendant in the

6  instant Motion to Amend the Scheduling Order. [Doc. No. 79, at p. 2; Doc. No. 215-1, at

7  p. 8, citing Doc. No. 215-8, at pp. 1-26.] In the cover letter transmitting Dr. Solomon's

8  second expert report, plaintiff's counsel offered to make Dr. Solomon available once

9  again for deposition "regarding the content" of his second report. [Doc. No. 221, at p. 8;

10  Doc. No. 221-2, at p. 33; Doc. No. 215-1, at p. 9.] According to defendant, the parties

11  met and conferred about several discovery issues on January 9, 2017, including a dispute

12  over the timeliness of Dr. Solomon's second expert report, but the parties were unable to

13  reach an agreement on this issue. [Doc. No. 215-1, at p. 10.]

14      On February 2, 2017, plaintiff filed a Motion for Terminating Sanctions, or in the

15  Alternative, Issue, Evidentiary, and Monetary Sanctions, alleging that defendant engaged

16  in "inexcusable discovery misconduct." [Doc. No. 150, at pp. 1-5; Doc. No. 150-1, at

17  p. 6.] In the Motion for Terminating Sanctions, plaintiff represented that defendant

18  produced documents in a related state-court action that should have been produced in

19  response to discovery requests in this case. [Doc. No. 150-1, at p. 6.] At the same time,

20  plaintiff also filed an Ex Parte Request to Postpone the Pre-Trial Conference pending the

21  outcome of the Motion for Terminating Sanctions. [Doc. No. 153.] The District Court

22  granted the request to postpone the Pre-Trial Conference in an Order filed on February 9,

23  2017. [Doc. No. 155.] At this time, the Pre-Trial Conference was re-scheduled for

24  January 4, 2018. [Doc. No. 155, at p. 2.]

25      On May 26, 2017, the District Court issued an Order Granting in Part and Denying

26  in Part Plaintiff's Motion for Sanctions. [Doc. No. 176, at pp. 1-14.] Although plaintiff's

27  request for terminating sanctions was denied, the District Court did impose monetary

28  sanctions and a number of issue and evidentiary sanctions against defendant. In addition,

the District Court ordered a neutral forensic analysis of defendant's computer system and re-opened fact and expert discovery as to plaintiff only "on all relevant claims." [Doc. No. 176, at pp. 10-14.] Plaintiff was also granted leave to file an amended complaint to add allegations related to discovery that was wrongfully withheld. [Doc. No. 176, at p. 13; Doc. No. 221, at pp. 17-19.] Although defendant filed a Motion for Reconsideration on June 23, 2017, the District Court denied the Motion on October 19, 2017. [Doc. No. 212.] In sum, as a result of the sanctions Motion, the case was essentially stalled from February 2, 2017, when the sanctions Motion was filed, until October 19, 2017, when the District Court denied defendant's Motion for Reconsideration of the sanctions Order.

On October 24, 2017, shortly after defendant's Motion for Reconsideration was denied, the parties requested a 12-month continuance of the final Pre-Trial Conference. [Doc. No. 213, at p. 2.] The main reason for the request was that the parties estimated it would take 12 months to comply with the District Court's sanctions Order. [Doc. No. 213, at pp. 2-5.] At this time, the District Court agreed to postpone the final Pre-Trial Conference until January 23, 2019. [Doc. Nos. 214, at pp. 1-2; Doc. No. 213, at p. 7.] As permitted by the District Court's Order imposing sanctions, plaintiff filed a Second Amended Complaint on June 26, 2017. [Doc. No. 187.]

Defendant filed the instant Motion to Amend the Scheduling Order on February 1, 2018. [Doc. No. 215.] The Motion was originally scheduled to be heard by the District Court but was later transferred to the undersigned Magistrate Judge for consideration. [Doc. Nos. 215, 218, 222.]

### *Discussion*

### I. *Defendant's Request to Re-Open Expert Discovery to Address the New Military Allegations in the Second Amended Complaint.*

"A schedule may be modified only for good cause and with the judge's consent." Fed. R.Civ.P. 16(b)(4). [*See also* Doc. Nos. 24, at p. 5; Doc. No. 34, at p. 5; Doc. No. 62, at p. 5; Doc. No. 69, at p. 4; Doc. No. 79, at p. 2 (indicating that the dates in the Scheduling Order "will not be modified except for good cause shown").] "Rule 16(b)'s

'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Recently, the Ninth Circuit has instructed that the following factors should be considered when ruling on a motion to amend a Rule 16 scheduling order to re-open discovery: "1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence." *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017).

As noted above, defendant has requested that the Court re-open expert discovery to address "new claims" in the Second Amended Complaint that defendant "made false statements to the United States Military about plaintiff." [Doc. No. 215-1, at p. 6.] According to defendant, plaintiff added "79 new paragraphs" to the Second Amended Complaint regarding the military. [Doc. No. 225, at p. 3.] As a result, defendant wants "to designate experts to address [and evaluate] these new issues." [Doc. No. 215-1, at p. 14; Doc. No. 225, at p. 6.] In other words, defendant's request to re-open expert discovery contemplates the designation of new experts, the preparation of new expert reports and rebuttal reports, as well as another round of expert depositions. Defendant believes this additional discovery is necessary, because the new allegations in the Second Amended Complaint "dramatically changed the scope of this case" after the close of expert discovery and will significantly increase plaintiff's claim for damages. [Doc. No. 225, at pp. 3, 5-6; Doc. No. 225, at p. 3.]

Defendant argues there is good cause to re-open expert discovery because the "new claims" in the Second Amended Complaint were not added until June 2017, more than a year after the close of expert discovery on May 31, 2016, and were not at issue when the parties completed their initial expert discovery. [Doc. No. 215-1, at pp. 5-6.] If expert discovery is re-opened, defendant asserts there will be no impact to the current schedule,

6

because the Pre-Trial Conference is now set for January 23, 2019. [Doc. No. 215-1, at p. 6.] If expert discovery is not re-opened to address these "new military claims," defendant argues that it "will be irreparably harmed," because it will be unable to present a full defense to plaintiff's new allegations. [Doc. No. 215-1, at p. 14.]

In its Opposition to defendant's Motion, plaintiff argues that the addition of the new "military allegations" in the Second Amended Complaint does not justify re-opening expert discovery for several reasons. [Doc. No. 221, at pp. 16-17.] First, plaintiff argues that defendant should not be permitted to complete additional expert discovery on the military allegations at this late date, because defendant's efforts to harm plaintiff's business relationship with the military have been "at issue" in the case all along. [Doc. No. 228, at p. 18.] As a result, it is plaintiff's contention that defendant has already had enough time to complete discovery on the military allegations. According to plaintiff, the original Complaint and the First Amended Complaint both include allegations that plaintiff earned revenue from the military; that defendant "took a lead role" in disseminating "the false injury data in the Devor Article" to the military community; and that plaintiff was harmed by the dissemination and re-publication of the false injury data. [Doc. No. 228, at p. 18.]

A review of the original Complaint reveals allegations that plaintiff earned significant revenue from the military since its business had grown to include "approximately 300 military and law-enforcement affiliate boxes" or gyms. [Doc. No. 1, at pp. 6, 8.] As examples of re-publication of the false injury data that allegedly caused substantial harm to plaintiff's business reputation with the military, the original Complaint cites articles in four military publications. The original Complaint also mentions an article that was cited in the Devor Study. The article was co-authored by defendant's editor-in-chief and allegedly includes speculation about the increased potential for injuries in military conditioning programs associated with plaintiff. [Doc. No. 1, at pp. 15, 11-12.]

/ / /

Although the Second Amended Complaint does not add any new causes of action, it does include new, more specific allegations that defendant made "false" and disparaging" statements to members of the military about plaintiff's business. Allegedly, these "false" and "disparaging" statements were made in an effort to compete with plaintiff by convincing members of the military that plaintiff's fitness training programs are unsafe. As a result of these "false" and "disparaging" statements, plaintiff claims that its military revenue has decreased and that its business reputation "has been irreparably tarnished." [Doc. No. 187, at pp. 14-18.] However, based on a review of the original Complaint, the First Amended Complaint, the Second Amended Complaint, and the District Court's May 26, 2017 sanctions Order [Doc. Nos. 1, 71-6, 176, 187], this Court agrees with plaintiff's contention that the new military allegations in the Second Amended Complaint were "no surprise" to defendant. [Doc. No. 228, at p. 18.] To the extent the new military allegations increase the scope of the case and the potential for damages, it is the direct result of defendant's willful failure to produce relevant, responsive documents during discovery. Thus, any discovery related to these allegations has been foreseeable since the beginning of the case. As a result, it is this Court's view that defendant has already had sufficient time to prepare its defense to the military allegations in the Second Amended Complaint.

Second, plaintiff believes defendant's request to re-open expert discovery for the purpose of addressing the new, military-related allegations is an attempt to "side-step" or "nullify" the District Court's May 26, 2017 sanctions Order. [Doc. No. 221, at pp. 14, 16-17.] The District Court's sanctions Order only allowed plaintiff to file the Second Amended Complaint with these new allegations, because of defendant's discovery abuses (*i.e.*, lying about its efforts to compete with plaintiff and concealing numerous relevant documents that should have been produced during discovery). As plaintiff contends, "the military-related factual allegations in the [Second Amended Complaint] are only 'new' because [defendant] concealed its 2013 communications and lied under oath about [its] efforts to compete with [plaintiff] in the military." [Doc. No. 221, at p. 17 and

14cv1191-JLS(KSC)

documents cited therein. *See also* Doc. No. 176, at pp. 4-5, 7-8.] Therefore, plaintiff argues defendant would be benefiting from its own discovery abuses if the Court grants defendant's request to re-open expert discovery on the new military allegations. [Doc. No. 221, at p. 19.]

The District Court's May 26, 2017 sanctions Order not only granted plaintiff leave to file the Second Amended Complaint to address the military-related allegations, it also stated in the same paragraph that: ***[Plaintiff]—and only [plaintiff]—is GRANTED LEAVE to reopen fact and expert discovery on all relevant claims."*** [Doc. No. 176, at p. 13 (emphasis added).] As this Court reads the sanctions Order, the District Court re-opened fact and expert discovery "on all relevant claims" ***for plaintiff only***, because defendant willfully and wrongfully withheld relevant, responsive documents from disclosure. At least in part, the wrongfully withheld documents related to defendant's efforts to compete with plaintiff, including documents revealing its efforts to compete with plaintiff in the military community. [Doc. No. 176, at pp. 1-13.] Therefore, this Court agrees with plaintiff that allowing defendant additional time for expert discovery to address the new military allegations in the Second Amended Complaint would be contrary to the District Court's sanctions Order and would permit defendant to side-step or nullify a portion of this Order. [Doc. No. 221, at pp. 9-10.] Despite defendant's argument to the contrary, the District Court's Order does not preclude defendant from preparing or presenting an effective defense to the new military allegations at trial, it only prevents defendant from obtaining additional discovery to do so.

Third, plaintiff argues that the Court should not grant defendant's request for additional time to complete expert discovery on the new military allegations, because defendant is unable to show good cause. According to plaintiff, defendant inexcusably "sat silent for nearly two years" after the expiration of the deadline to complete expert discovery before submitting its request to the Court. [Doc. No. 221, at p. 21.] The Court notes that the deadline for completing all expert discovery was May 31, 2016. [Doc. No. 79.] Plaintiff filed the Second Amended Complaint on June 26, 2017. [Doc. No. 187.]

1  Defendant then waited until February 1, 2018, about seven (7) months after the filing of
2  the Second Amended Complaint, to request that the Court re-open expert discovery to
3  address the new military allegations. [Doc. No. 215.] The reason for this delay is
4  unclear. Defendant did indicate in its Reply that it has been inundated with additional
5  discovery requests from plaintiff since the May 26, 2017 sanctions Order was issued and
6  has been "diligently working" to respond to these discovery requests and "to complete
7  the forensic investigation." [Doc. No. 225, at p. 10.] For example, in a supporting
8  Declaration, defendant's counsel represented that plaintiff served 160 new discovery
9  requests after the District Court issued the sanctions Order on May 26, 2017. [Doc. No.
10  225-1, at pp. 1-4.]

11    Under other circumstances, having to complete a large volume of discovery under
12  difficult conditions would be enough to establish good cause for extending time to
13  complete discovery. "'[G]ood cause' means scheduling deadlines cannot be met despite
14  [a] party's diligence." *Johnson v. Mammoth Recreations*, Inc., 975 F.2d at 609. Here,
15  however, the large volume of discovery at hand is directly related to defendant's
16  discovery abuses (*i.e.*, failure to produce relevant, responsive documents and information
17  during the extended periods of time that were allowed in this case under the various
18  Scheduling Orders). Therefore, defendant's difficulties in complying with the discovery
19  required by the District Court's sanctions Order cannot be used to excuse defendant's
20  seven-month delay in requesting time to complete additional discovery on the new
21  allegations in the Second Amended Complaint.

22    As noted above, the Ninth Circuit recently indicated that other factors besides
23  diligence should be considered when ruling on a motion to re-open discovery, such as
24  whether the trial is imminent. Here, these factors do not weigh in favor of defendant's
25  request to re-open expert discovery. It is true that the trial in this case is not imminent as
26  the final Pre-Trial Conference is currently scheduled for January 23, 2019. [Doc. Nos.
27  213, 214.] The District Court continued the final Pre-Trial Conference for a full year
28  from January 4, 2018 to January 23, 2019 just to give the parties enough time to comply

14cv1191-JLS(KSC)

with the sanctions Order. [Doc. Nos. 213, 214.] In their request for this continuance, the parties explained they needed an additional year to comply with the sanctions Order for several reasons. First, defendant needed more time because of the "volume of responsive documents located." [Doc. No. 213, at p. 2-4.] Second, plaintiff was unable to complete discovery allowed under the sanctions Order, such as taking or re-taking depositions and amending its expert reports, until the document production and forensic evaluation were completed. [Doc. No. 213, at p. 4.] Third, the forensic expert indicated his evaluation could not be completed until at least December 2017 "given the complexity and volume of [defendant's] servers, electronic devices and document custodians." [Doc. No. 213, at p. 5.] Finally, plaintiff represented that it had reason to believe the scope of defendant's discovery misconduct was "far greater than previously identified" and anticipated filing another sanctions motion. [Doc. No. 213, at p. 4.]

Based on the foregoing, trial is not imminent only because the parties estimated it would take a full year just to comply with the sanctions Order. Despite defendant's argument to the contrary, a new round of expert discovery at this late date in the proceedings is likely to disrupt progression of the parties' efforts to comply with the District Court's sanctions Order and result in a further, unreasonable delay of trial in a case that has already been pending since 2014. "Prejudice from unreasonable delay is presumed." *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1236 (9th Cir. 2006).

Plaintiff filed a strong Opposition to defendant's Motion that presents a number of very convincing reasons why defendant should not be granted additional time to complete new expert discovery on the military-related allegations. The record shows that defendant not only failed to meet its discovery obligations in the case but also has not been diligent in making its request for additional discovery. As noted above, defendant waited about seven (7) months after the filing of the Second Amended Complaint to make its request to re-open expert discovery to address these new allegations. Given the allegations related to the military that have been in the case since the beginning and the

content of the documents defendant willfully withheld from discovery on this issue, the type of discovery defendant is now seeking has long been foreseeable.

As noted above, the sanctions Order re-opened fact and expert discovery for plaintiff only. Allowing defendant additional time to obtain discovery on the military allegations would not only violate the District Court's sanctions Order but would allow defendant to benefit from its discovery abuses. Therefore, the Court finds that defendant's request for an order re-opening expert discovery to address the new, military allegations in the Second Amended Complaint must be DENIED for failure to establish good cause.

## II. *Defendant's Request to Re-Open Expert Discovery to "Counter" Expert Reports Prepared by Plaintiff's Damages Expert, Dr. Solomon.*

As summarized above, an initial expert report by Dr. Solomon on the issue of damages was timely served on defendant on April 1, 2016. Defendant then served a timely rebuttal expert report on plaintiff which was prepared by Mr. Boudikis. The parties then completed timely depositions of both of these experts. Then, on December 29, 2016, long after the May 31, 2016 deadline for completing all expert discovery, plaintiff served defendant with a second expert report by Dr. Solomon.

In the Motion to Amend, defendant now seeks to name a new damages expert to "counter" ***both*** of the reports prepared by Dr. Solomon. Although the parties' moving and opposing papers conflate the issues, different rules and standards apply, so the Court must separately consider whether defendant may: (1) "counter" Dr. Solomon's initial expert report; (2) "counter" Dr. Solomon's second expert report; and (3) designate a new damages expert.

### A. *Defendant's Request to Re-Open Expert Discovery to "Counter" Dr. Solomon's Initial Expert Report.*

In the Motion to Amend the Scheduling Order, defendant requests that the Court "set new expert designation dates . . . *due primarily to the new opinions set forth in Dr. Solomon's Supplemental Report.*" [Doc. No. 215-1, at p. 5 (emphasis added).]

Defendant's Motion also indicates that it seeks to re-open expert discovery so that it can counter "*other improper opinions* stated by Dr. Solomon, which [it believes] are based on a tainted, biased, leading, and manipulative market survey." [Doc. No. 215-1, at p. 5 (emphasis added).] In support of the Motion, defendant submitted a lengthy Declaration signed by its proposed expert, Dr. Itamar Simonson. Dr. Simonson's Declaration reveals that defendant not only seeks to "counter" Dr. Solomon's supplemental expert report of December 29, 2016, it also wants to "counter" Dr. Solomon's initial expert report that was completed prior to the May 31, 2016 deadline for completing expert discovery. [Doc. No. 215-9.] Defendant seeks to "counter" Dr. Solomon's initial expert report even though it has already had an opportunity to do so in a rebuttal report by its own expert, Mr. Boukidis, and has already deposed Dr. Solomon about the contents of his initial expert report. [Doc. No. 221, at p. 8; Doc. No. 79, at p. 2.]

To the extent defendant seeks to amend the Scheduling Order to re-open expert discovery to "counter" Dr. Solomon's *initial expert report*, defendant must establish good cause under Rule 16(b)(4), as explained in the preceding section of this Order. Dr. Solomon's initial expert report was disclosed on or about April 1, 2016. [Doc. No. 221, at p. 8.] There appear to be two main reasons why defendant is seeking to re-open expert discovery to "counter" Dr. Solomon's initial expert report. First, defendant's Motion includes a conclusory statement that opinions in Dr. Solomon's initial expert report are "improper," because they are "tainted, biased, leading, and manipulative." [Doc. No. 215-1, at p. 5.] If that is the case, these deficiencies would have been apparent on April 1, 2016, when the report was disclosed, and should have been addressed in the rebuttal by Mr. Boukidis. Defendant's newly discovered dissatisfaction with the content of Dr. Solomon's initial expert report does not justify a second chance for rebuttal.

Second, defendant has stated in its Reply that the new military allegations in the Second Amended Complaint are likely to result in an increase in the amount of damages set forth in Dr. Solomon's *initial* expert report, so it would be unfair to deny defendant's request to designate a new expert to "counter" this report. [Doc. No. 225, at p. 3]

13

However, as this Court reads the District Court's sanctions Order, fact and expert discovery were only re-opened for plaintiff because of defendant's discovery abuses. These discovery abuses were, at least in part, directly related to defendant's failure to produce relevant, responsive documents about its attempts to compete with plaintiff in the military community. Thus, as outlined more fully in the preceding section, it appears that this request is also an attempt to side-step or nullify the District Court's sanctions Order. In addition, defendant cannot show diligence in seeking another chance to "counter" Dr. Solomon's initial expert report, because it waited so long to do so after the new allegations were added to the Second Amended Complaint. For these reasons, and the reasons set forth in the preceding section, the Court finds that defendant's request for an order re-opening expert discovery so that defendant can "counter" Dr. Solomon's initial expert report must be DENIED.

**B.** **_Defendant's Request to "Counter" Dr. Solomon's Second Expert Report_**.

With respect to Dr. Solomon's second expert report, defendant contends that plaintiff "seeks to make use of an untimely expert report" to increase its claimed damages for corrective advertising by nearly $15 million based in large part on "a single article" that mentions the Devor Study. [Doc. No. 215-1, at p. 5.] According to defendant, Dr. Solomon's second expert report is untimely, because it was served on December 29, 2016, long after the May 31, 2016 deadline for completing all expert discovery. [Doc. No. 215-1, at pp. 8-9; Doc. No. 79, at p. 2.] As a result, defendant argues that "good cause" and "considerations of fairness" weigh in favor of the Court permitting defendant "to counter [plaintiff's] new and belated damages opinion." [Doc. No. 215-1, at pp. 5, 12-14 (emphasis added).] Alternatively, defendant requests that the Court "strike" Dr. Solomon's second expert report as untimely under Federal Rule of Civil Procedure 37(c)(1). Resolution of this issue depends on whether Dr. Solomon's second expert report is a timely supplement under Federal Rule of Civil Procedure 26(e) or an untimely expert disclosure subject to exclusion under Federal Rule of Civil Procedure 37(c)(1).

/ / /

Federal Rule of Civil Procedure 26(a)(2)(E), provides that: "[T]he parties must supplement [expert disclosures] when required under Rule 26(e)." Fed.R.Civ.P. 26(a)(2)(E). Federal Rule of Civil Procedure 26(e) states in part as follows: "A party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure or response: (A) *in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect*, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court." Fed.R.Civ.P. 26(e)(1)(A)&(B). In addition, Federal Rule of Civil Procedure 26(e)(2) states as follows:

> For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. *Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.*

Fed.R.Civ. P 26(e)(2) (emphasis added).

In this case, the Scheduling Orders have not included a deadline to supplement an expert report. The Scheduling Orders have only included deadlines for designating initial and rebuttal experts; exchanging initial and rebuttal expert reports; and completing all expert discovery. [Doc. Nos. 24, 34, 62, 65, 67, 69, 79.] Where there is no deadline in the Scheduling Order, the time limits provided in the Federal Rules of Civil Procedure apply. Therefore, the deadline for supplementing an expert report in this case is the same as the deadline for the pretrial disclosures required under Rule 26(a)(3).

By the time plaintiff served defendant with Dr. Solomon's second expert report on or about December 29, 2016, the deadline for completing pre-trial disclosures under Rule 26(a)(3) had been extended to February 17, 2017. [Doc. No. 129, at p. 2.] Therefore, Dr. Solomon's second expert report was timely when served if it meets the general requirements of a "supplement" under Rule 26(e). If Dr. Solomon's second report does not meet the general requirements of a "supplement" under Rule 26(e), the report is untimely and would be subject to exclusion under Rule 37(c)(1).

14cv1191-JLS(KSC)

"Supplementation [under Rule 26(e)] means correcting inaccuracies, or filling the interstices of an incomplete report **based on information that was not available at the time of the initial disclosure**." *Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont. 1998) (emphasis added). The duty to supplement under Rule 26(e) "does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' [original] report. [Citation omitted.]" *Reinsdorf v. Skechers U.S.A.*, 922 F. Supp. 2d 866, 880 (C.D. Cal. 2013).

Rule 26(e) is also not "a loophole through which a party who submits partial expert witness disclosures, or who wishes to revise [its] disclosures in light of [its] opponent's challenges to the analysis and conclusions therein, can add to them to [its] advantage after the court's deadline for doing so has passed." *Luke v. Family Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009). Otherwise, Rule 26(e) "would essentially allow for unlimited bolstering of expert opinions" which "would [wreak] havoc in docket control and amount to unlimited expert opinion preparation." *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002). "Accordingly, a supplemental expert report that states additional opinions or 'seeks to 'strengthen' or 'deepen' opinions expressed in the original expert report' is beyond the scope of proper supplementation and subject to exclusion under Rule 37(c)." *Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1062 (C.D. Cal. 2010), quoting *Cohlmia v. Ardent Health Servs., LLC*, 254 F.R.D. 426, 433 (N.D.Okla.2008).

In *Keener v. United States*, 181 F.R.D. 639, for example, an initial report by a defense medical expert only included "a summary of his general opinions" which consisted of "four sentences" that were "tantamount to a non-opinion." *Id.* at 639-641. Later, the defendant disclosed the expert's "supplemental" report after the deadline for exchanging rebuttal expert reports and after the expert was able to review all of the opinions expressed by the plaintiff's medical experts. *Id.* at 640. The defense expert's "supplemental" report was dramatically different from his initial report. In contrast to the initial report, the "supplemental" report tracked the plaintiff's medical history; included

"extensive responses" to the opinions expressed by the plaintiff's experts; drew "specific conclusions;" offered "precise reasons" as to the basis of his opinions; and provided opinions "that go to the heart of the case." *Id.* at 641. All of these opinions were based on medical records in existence at the time of the expert's initial report and therefore could have been included in the initial report. *Id.* As a result, the District Court concluded that the "supplemental" report was untimely and did not qualify as a supplement under Rule 26(e)(1)(a). *Id.* at 640-642. The District Court excluded the "supplemental" expert report as a sanction under Rule 37(c)(1) and limited the expert's testimony at trial to the undeveloped opinions expressed in the initial report. *Id.* at 642.

Rule 37(c)(1) states in part as follows: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless. . . ." Fed.R.Civ.P. 37(c)(1). "[T]he burden is on the party facing sanctions to prove harmlessness." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). District Courts have "particularly wide latitude . . . to issue sanctions under Rule 37(c)(1)." *Id.* "Courts have upheld the use of the sanction even when a litigant's entire cause of action or defense has been precluded." *Id.*

When sanctions for violating Rule 26 could, in effect, result in a dismissal or default, the Ninth Circuit has indicated that District Courts should consider: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to [the party seeking sanctions]; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990); *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997) (applying these factors where exclusion of expert testimony was imposed as a sanction for violating Rule 26(a)).

In his initial expert report of April 1, 2016, Dr. Solomon applies a theory he calls "The Ripple Effect of Publishing False Data" to opine that the false injury data in the

Devor Study spread to consumers and caused reputational and financial damage to plaintiff. [Doc. No. 215-6, at p. 6-27.] Dr. Solomon's initial expert report also includes an online survey to assess the causal impact of the Devor Study. [Doc. No. 215-6, at p. 47.] Based on the results of his survey, Dr. Solomon reached various conclusions. For example, Dr. Solomon believes that respondents who were exposed to the false injury data in the Devor Study were significantly more likely to rate plaintiff's fitness programs as dangerous and significantly less likely to want to purchase a membership. [Doc. No. 215-6, at pp. 47-48.] In addition, Dr. Solomon "conducted a detailed 'web scrape' of articles on websites and posts on social media platforms" for the period 2004 through 2015 to assess "the magnitude and character of the 'ripple effect'" caused by the false injury data in the Devor Study. [Doc. No. 215-6, at p. 52.] Dr. Solomon's initial expert report includes a number of "key findings" based on the "web scrape." [Doc. No. 215-6, at pp. 52-53.] For example, Dr. Solomon concluded based on the "web scrape" that the false injury data potentially reached about 199 million on-line readers and 7.5 million hard copy readers. [Doc. No. 215-6, at p. 52.] In addition, Dr. Solomon's initial expert report concluded based on the "web scape" that dissemination of the Erratum to the Devor Study "was miniscule" in comparison to the attention given to the Devor Study. [Doc. No. 215-6, at p. 53.]

Citing a theory known as the *Streisand Effect* (*i.e.*, that efforts to suppress information sometimes has the opposite effect), Dr. Solomon further opined in his initial expert report that the Erratum only served to draw more attention to the false injury data, thereby causing an increase in misperceptions about the safety of plaintiff's fitness programs. [Doc. No. 215-6, at pp. 55-56.] It was Dr. Solomon's view that the "ripple effect" continued to impact plaintiff's brand image up to and concluding April 1, 2016, the date he completed his initial expert report. [Doc. No. 216-6, at pp. 57, 70.] In the section of his initial expert report entitled "Summary of Damages," Dr. Solomon estimated that it would cost about $3.5 million to conduct a corrective advertising program to rectify the impact of the false injury data in the Devor Study. [Doc. No. 215-

1  6, at p. 68.]  As noted above, defendant served plaintiff with a rebuttal report prepared by

2  Mr. Boukidis on April 22, 2016, and both of these experts were deposed prior to the

3  May 31, 2016 deadline for completing expert discovery.  [Doc. No. 215-1, at p. 8.]

4      In his second expert report, Dr. Solomon mostly addressed information he says he

5  learned about **_after_** he prepared his initial expert report and this "prompted the question

6  of how the passage of time has affected the frequency of citation to the Devor Article. . . .

7  In other words, the question was whether the ripple effect was fading or increasing."

8  [Doc. No. 215-8, at pp. 4, 17.]  The title of the second report is:  "Update:  The Ripple

9  Effect Continues."  [Doc. No. 215-8, at p. 4.]  Dr. Solomon states in his second expert

10 report that he believes based on newly discovered information that the ripple effect

11 continues to result in the spread of the false injury data from the Devor Study.  As a

12 result, Dr. Solomon believes that plaintiff continues to be damaged by the spread of this

13 information.  [Doc. No. 215-8, at p. 17.]

14      To prepare his second report, it is apparent that Dr. Solomon conducted a

15 significant amount of additional research.  On December 7, 2016, Dr. Solomon searched

16 the website for defendant's "wholly-owned journal" that published the Devor Study and

17 learned it is unlikely that researchers would discover the Erratum.  As a result, it is

18 Dr. Solomon's view that the false injury data "will continue to appear in subsequent

19 journal articles on this topic."  [Doc. No. 215-8, at p. 4.]

20      Defendant complains that this portion of Dr. Solomon's second expert report is

21 based on information that could have been included in his initial expert report.  [Doc. No.

22 215-1, at p. 18.]  Since plaintiff alleges in the Second Amended Complaint that defendant

23 published the Erratum in September 2015, and Dr. Solomon's initial expert report was

24 completed on April 1, 2016, it appears that defendant may be correct on this point.  [Doc.

25 No. 187, at 25.]

26      On some unspecified date, Dr. Solomon also "caused a Google search" to be

27 completed for the Devor Study, and he states in his second report that the results of this

28 search continue to discuss the false injury data.  [Doc. No. 215-8, at p. 4.]  Dr. Solomon

14cv1191-JLS(KSC)

further states in his second report that he learned in November 2016 about the "Iron Tribe article," which was "published ahead of print on October 19, 2016." [Doc. No. 215-8, at p. 4.] According to Dr. Solomon, the Iron Tribe article "reiterated the Devor Study's false injury data." [Doc. No. 215-8, at p. 4.] Dr. Solomon believes that researchers are "likely to discover [the Iron Tribe] article promulgating the Devor Study's false injury data," because the abstract for the article includes the term "Crossfit" and was published on websites that are considered credible sources. [Doc. No. 215-8, at p. 4-5.]

Finally, Dr. Solomon completed some "web scrapes" using "multiple methodologies" to assess "whether the Iron Tribe article had an impact" since October 19, 2016, when it became available online. [Doc. No. 215-8, at p. 7.] Based on his new, updated research, Dr. Solomon concluded that the damage from the false injury data "continues to spread" and that "the frequency of citation is increasing rather than decreasing or disappearing." [Doc. No. 215-8, at p. 17.] According to Dr. Solomon, "[t]he ongoing ripple effect of the Devor Study, even to the present, reinforces the assertion I made in my original Report that multiple exposures will be required to correct the damage its false data caused and continues to cause." [Doc. No. 215-8, at p. 18.] To implement "a reasonable corrective advertising campaign in both print and digital media" involving "multiple exposures," Dr. Solomon estimates total corrective damages to be $18,018,413. [Doc. No. 215-8, at pp. 24-25.] This new estimate of total corrective damages represents a significant increase. As noted above, Dr. Solomon estimated in his original expert report that it would cost about $3.5 million to conduct a corrective advertising program to rectify the impact of the false injury data in the Devor Study. [Doc. No. 215-6, at p. 68.]

Based on a review of both of Dr. Solomon's expert reports, it is apparent that the second report is, in part, a timely Rule 26(e) supplement and, in part, an untimely report under Rule 37(c)(1). A side-by-side comparison reveals that the second expert report is a new, different report that is more extensive than one would expect to see from a party who is merely "correcting inaccuracies, or filling the interstices of an incomplete

14cv1191-JLS(KSC)

report. . . ." *Keener v. United States*, 181 F.R.D. at 640. In fact, it is quite apparent that the purpose of the December 29, 2016 report is not merely to correct inaccuracies or fill in small gaps that were incomplete. Dr. Solomon prepared a whole new, updated addition to his initial report based on a significant amount of additional research after the close of expert discovery. The sole purpose of his research appears to have been to uncover additional evidence to bolster his initial opinion that the "ripple effect" of the false injury data is continuing and far reaching. The new estimate of total corrective damages is increased so dramatically based on this additional research that any party in receipt of such a report after the close of expert discovery would understandably believe it had been sandbagged with an untimely expert report. It is true that plaintiff offered to make Dr. Solomon available for another deposition, but no party would consider that adequate under the circumstances and would want the opportunity for a qualified expert to review, analyze, and rebut a new expert report that could so dramatically increase a party's exposure in a case.

On the other hand, the second report does not raise any new damages theories and it is primarily based on new information that was not available when Dr. Solomon prepared his initial expert opinion. It is also understandable that damages may increase and damages assessments may change over time, especially when a case experiences lengthy delays such as those in this case. In addition, it could also be said that "in some material respect" the new information uncovered by Dr. Solomon in November and December of 2016 made his initial expert report "incomplete or incorrect," and Rule 26(e)(1)(A) permits a party to supplement an expert report under these circumstances. Fed.R.Civ.P. 26(e)(1)(A).

The Court, exercising its discretion, will assume that Dr. Solomon's second expert report is a "supplement" under Rule 26(e)(1)(A), as plaintiff asserts.[3] Assuming this

---

[3] From this point forward, however, any purported supplements to expert reports in this case will be subject to exclusion under Rule 37(c)(1) if a side-by-side comparison

second report qualifies as a supplement, it was not only disclosed before the Rule
26(e)(2) deadline (*i.e.*, before the deadline for pretrial disclosures under Rule 26(a)(3)), it
was also disclosed in a "timely manner," as required by Rule 26(e)(1)(A). Pursuant to
Rule 26(e)(1)(A), plaintiff produced the second report within a reasonable time after
discovering the initial report was incomplete or incorrect. Dr. Solomon states in his
second report that he learned in November 2016 about the new Iron Tribe article, which
was "published ahead of print on October 19, 2016." [Doc. No. 215-8, at p. 4.] He also
completed additional research on December 7, 2016, after discovering the Iron Tribe
article. Plaintiff then served defendant with Dr. Solomon's second expert report on
December 29, 2016. [Doc. No. 215-1, at p. 8.]

Assuming Dr. Solomon's second expert report is a Rule 26(e)(1)(A) "supplement,"
it effectively renders the rebuttal report prepared by defendant's expert, Mr. Boukidis,
"incomplete" or "incorrect." Fed.R.Civ.P. 26(e)(1)(A). Mr. Boukidis did not have an
opportunity to address any of the new, updated material in Dr. Solomon's second expert
report. As a result, it is this Court's view that defendant would be entitled under
Rule 26(e)(2) to supplement the rebuttal report by Mr. Boukidis to address the new
material contained in Dr. Solomon's supplemental report on or before December 11,
2018 (*i.e.*, the current deadline for completing Rule 26(a)(3) disclosures), ***without the
need to re-open expert discovery***. Fed.R.Civ.P. 26(e)(2). [Doc. No. 213, at p. 7; Doc.
No. 214.]

Plaintiff argues that defendant should not be permitted to "counter" Dr. Solomon's
second expert report, because it waited too long to make the request and cannot establish
good cause. It is true that defendant could have addressed this matter sooner, as
Dr. Solomon's second expert report was served on December 29, 2016, and defendant did
not file the instant Motion until February 1, 2018. However, the Scheduling Orders in

reveals a whole new report rather than minimal corrections and additions necessary to
make a prior report complete.

1 | this case have not included a deadline for seeking sanctions under Rule 37(c)(1) and did
2 | not alter the deadline in Rule 26(e)(2) for disclosing supplements to expert reports. Since
3 | the Court construed Dr. Solomon's second expert report as a supplement under Rule
4 | 26(e)(1), it is this Court's view that defendant does not need a Scheduling Order
5 | amendment to serve its own supplement to the rebuttal report of Dr. Boukadis. Unless
6 | the Court orders otherwise, defendant's deadline for serving a Rule 26(e)(2) supplement
7 | to the rebuttal report by Dr. Boukadis is December 11, 2018 (*i.e.*, the current deadline for
8 | completing pre-trial disclosures under Fed.R.Civ.P. 26(e)(2)).

9       Plaintiff also contends that allowing defendant to counter Dr. Solomon's second
10 | report would nullify portions of the District Court's issue sanctions. In support of this
11 | argument, plaintiff cites a Declaration submitted by defendant's proposed expert,
12 | Dr. Simonson, in support of the Motion to Amend the Scheduling Order. As plaintiff
13 | contends, Dr. Simonson's Declaration does include statements that contradict at least two
14 | of the District Court's issue sanctions. For example, paragraph 2 of Dr. Solomon's report
15 | states that: "There is no evidence in the Solomon Reports that the Devor Study at issue
16 | had a negative effect on the reputation of [plaintiff]." [Doc. No. 215-9, at p. 2.] The
17 | District Court's May 26, 2017 sanctions order establishes that plaintiff was indeed
18 | harmed by the false injury data in the Devor Study. [Doc. No. 176, at p. 12.] To the
19 | extent any such statements are incorporated into an expert report to "counter"
20 | Dr. Solomon's second expert report, plaintiff may seek to exclude them in a motion *in*
21 | *limine* at the time of trial. In other words, these potential conflicts are not enough for the
22 | Court to completely deny defendant's request for an opportunity to "counter"
23 | Dr. Solomon's second expert report with a supplement by its own expert. [Doc. No. 215-
24 | 1, at p. 5.]

25       In sum, for the reasons outlined above, the Court finds that defendant's request for
26 | an opportunity to "counter" Dr. Solomon's second expert report must be GRANTED.
27 | Defendant may serve plaintiff with an expert report that rebuts the arguments and
28 | ///

14cv1191-JLS(KSC)

evidence in Dr. Solomon's second expert report.[4]  Under Federal Rule of Civil Procedure 26(a)(2)(D)(ii), the scope of a rebuttal expert report is limited.  An expert report qualifies as a rebuttal report if it "is intended solely to contradict or rebut evidence on the same subject matter" that is identified in another party's expert report.  Fed.R.Civ.P. 26(a)(2)(D)(ii).  A rebuttal report may not be used to advance "new arguments" that are outside the scope of the opposing expert's report.  *Blake v. Securitas Sec. Servs., Inc.*, 292 F.R.D. 15, 17 (D.D.C. 2013).  However, "[a] rebuttal expert may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert."  *Glass Dimensions, Inc. ex rel. Glass Dimensions, Inc. Profit Sharing Plan & Tr. v. State St. Bank & Tr. Co.*, 290 F.R.D. 11, 16 (D. Mass. 2013).

### C.  *Defendant's Request to Designate a New Damages Expert.*

Courts have applied the "good cause" standard in Rule 16(b) to a party's request to designate a new expert after the deadline in the Scheduling Order has expired.  *Fid. Nat. Fin., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 308 F.R.D. 649, 652 (S.D. Cal. 2015).  In the Motion to Amend the Scheduling Order, defendant seeks an order allowing it to designate a new expert, Dr. Itamar Simonson, to "address the new opinions" set forth in Dr. Solomon's second expert report.  [Doc. No. 215-1, at p. 5.]  Defendant also wants Dr. Solomon to address opinions included in Dr. Solomon's initial expert report. However, for the reasons outlined above, the Court found that defendant has not established good cause to "counter" opinions expressed by Dr. Solomon in his initial report of April 1, 2016.  As a result, the Court also finds that defendant cannot designate a new expert to "counter" opinions in Dr. Solomon's initial expert report.

/ / /

---

[4]     If Dr. Solomon's second expert report is an untimely disclosure subject to exclusion under Rule 37(c)(1), the Court would reach the same result.  The Court would find that the untimely disclosure was not harmless to defendant and look to the availability of lesser sanctions.  To prevent prejudice, the Court would allow defendant sufficient time to "counter" the second expert report.

14cv1191-JLS(KSC)

1    Defendant's request to designate a new expert, Dr. Simonson, to "counter"
2    Dr. Solomon's second expert report is a separate issue. Dr. Solomon's second expert
3    report was timely served as a "supplement" under Rules 26(e)(1) and (e)(2). As outlined
4    above, the Scheduling Orders in this case have not included a deadline for disclosing
5    supplements, so the deadline for serving a supplemental expert report is the same as the
6    deadline for completing pre-trial disclosures under Rule 26(a)(3). Fed.R.Civ.P. 26(e)(2).
7    Therefore, unless the Court orders otherwise, defendant's deadline for serving a
8    supplement to the rebuttal report by Dr. Boukadis is December 11, 2018 (*i.e.*, the current
9    deadline for completing pre-trial disclosures under Rule 26(e)(2)).

10    Under these circumstances, it is this Court's view that defendant should be
11    permitted to designate a new expert to prepare a supplemental expert report under
12    Rules 26(e)(1) and (e)(2) upon a showing of good cause. In this context, a showing of
13    good cause means a plausible reason that would not prejudice an opposing party.
14    Essentially, defendant wants to designate Dr. Simonson to "counter" Dr. Solomon's
15    second expert report, because Dr. Solomon "significantly changed his opinion regarding
16    corrective advertising damages" and "[t]his almost $15 million increase in corrective
17    advertising damages completely changes the case from a damages perspective." [Doc.
18    No. 215-1, at p. 19; Doc. No. 225, at p. 4.] Defendant represents that Dr. Simonson is
19    better qualified "to defend an $18 million case." [Doc. No. 225, at p. 4.] Plaintiff does
20    not dispute these representations.

21    Based on defendant's representations, the Court finds there is good cause to allow
22    the designation of Dr. Simonson to "counter" Dr. Solomon's second expert report in
23    place of Dr. Boukidas. The facts and circumstances indicate justice would be better
24    served if defendant is able to designate its preferred expert for this particular purpose.
25    However, plaintiff must be afforded an opportunity to depose Dr. Simonson prior to trial.
26    In sum, the Court finds there is good cause to permit defendant to designate
27    Dr. Simonson as an expert in this case for the sole purpose of rebutting Dr. Solomon's
28    second expert report. Accordingly, the Court finds that defendant's Motion must be

GRANTED to the extent it seeks to designate Dr. Simonson to rebut Dr. Solomon's second expert report on the issue of damages.

### *Conclusion*

Based on the foregoing, IT IS HEREBY ORDERED that defendant's Motion to Amend the Scheduling Order [Doc. No. 215] is GRANTED in part and DENIED in part as follows:

1.      Defendant's request to "counter" or "strike" the second expert report of Dr. E. H. Morreim is DENIED.

2.      Defendant's request to re-open expert discovery to address the new military allegations in the Second Amended Complaint is DENIED for failure to establish good cause. In addition, the District Court's May 26, 2017 sanctions Order re-opens fact and expert discovery for plaintiff only, and re-opening expert discovery for defendant on these issues would be contrary to the District Court's Order and would permit defendant to benefit from its discovery abuses. [Doc. No. 176, at p. 13.]

3.      Defendant's request to re-open discovery to "counter" Dr. Solomon's initial expert report is DENIED for failure to establish good cause.

4.      Defendant's request to serve plaintiff with an expert report that "counters" (*i.e.*, rebuts) Dr. Solomon's second expert report is GRANTED. ***No later than August 17, 2018***, defendant may depose Dr. Solomon about the content of his second expert report. Defendant may serve plaintiff with an expert report that rebuts Dr. Solomon's second expert report ***no later than September 17, 2018***.

5.      Defendant's alternative request to exclude or "strike" Dr. Solomon's second expert report under Rule 37(c)(1) is DENIED as moot.

5.      Defendant's request to designate a new expert, Dr. Itamar Simonson, to prepare an expert report to "counter" (*i.e.*, rebut) Dr. Solomon's second expert report is

///

///

///

GRANTED. ***No later than October 17, 2018***, plaintiff may also depose Dr. Simonson about the content of his rebuttal report.

IT IS SO ORDERED.

Dated: July 18, 2018

Hon. Karen S. Crawford
United States Magistrate Judge