UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CROSSFIT, INC., a Delaware corporation,<br><br>                                    Plaintiff,<br><br>v.<br><br>NATIONAL STRENGTH AND CONDITIONING ASSOCIATION, a Colorado corporation,<br><br>                                    Defendant. | Case No.:  14-CV-1191 JLS (KSC)<br><br>**ORDER GRANTING JOINT MOTION FOR AN ORDER APPROVING THE PAYMENT PLAN FOR NATIONAL STRENGTH AND CONDITIONING ASSOCIATION TO PAY REMAINING BALANCE OF MONETARY SANCTIONS**<br><br>(ECF No. 415) |

Presently before the Court is Plaintiff CrossFit, Inc. ("CrossFit") and Defendant National Strength and Conditioning Association's ("NSCA") Joint Motion for an Order Approving the Payment Plan for the NSCA to Pay Remaining Balance of Monetary Sanctions ("Joint Mot.," ECF No. 415).  Good cause appearing, the Court **GRANTS** the Joint Motion.  Accordingly, the Court **ORDERS**:

1.      The terms of this Order reflecting the Parties' agreement are **APPROVED** in their entirety, the Parties **SHALL COMPLY** with the terms hereof, and the NSCA **SHALL PAY** the remaining balance of the monetary sanctions awarded in the Sanctions Award in accordance with the terms of this Order;

/ / /

2.     As used in this Order, the following defined terms shall be given the referenced meaning:

a.     The term "Due Date" shall mean each of the payment due dates of June 30, 2020; September 30, 2020; and December 31, 2020;

b.     The term "Litigation" shall mean the above-captioned case entitled *CrossFit, Inc. v. National Strength and Conditioning Association*, No. 14-CV-1191 JLS (KSC) (S.D. Cal. filed May 12, 2014);

c.     The term "Sanctions Balance" shall mean the balance of monetary sanctions owing to CrossFit under the Sanctions Award in the outstanding amount of $2,007,868.66;

d.     The term "Fee Reimbursement" shall mean the $20,000 payable to CrossFit in reimbursement of certain fees incurred in the negotiation and documentation of the Parties' agreement embodied in this Order;

e.     The term "Outstanding Obligations" shall mean the sum of the Sanctions Balance, the Fee Reimbursement, and all unpaid accrued interest owing under the terms of this Order;

f.     The term "Payment Plan" shall mean the terms of this Order governing the NSCA's payment of the Outstanding Obligations.

3.     Having already paid $1.5 million on January 29, 2020, and $490,000 by wire transfer on April 9, 2020, the NSCA **SHALL PAY** the Outstanding Obligations to CrossFit in three installments:  two payments of $490,000 each on or before each of June 30, 2020, and September 30, 2020; and a balloon payment of the remaining amount of the Outstanding Obligations on or before December 31, 2020.  The NSCA **MAY PREPAY** the Outstanding Obligations, in whole or in part, without penalty;

4.     The Sanctions Balance unpaid after January 31, 2020, **SHALL ACCRUE INTEREST** at the rate set forth in 18 USC § 1961 for post-judgment interest.  In the event the NSCA defaults on any payment obligation, interest shall accrue on the unpaid amount of the Sanctions Balance then due from the date of the default at a fixed rate of ten percent

(10%) per annum and will continue to accrue until the Outstanding Obligations are paid in full;

5.      Subject to the terms of an agreement that will be completed by the Parties and submitted for approval, Stroz (the neutral forensic evaluator appointed by the Court) **SHALL TRANSFER** certain Relativity data being hosted by Stroz to the NSCA's eDiscovery vendor, Inventus.  The NSCA expects that such transfer will create cost savings for the NSCA and enable the NSCA to make the installment payments to CrossFit in the amount set forth herein.   Notwithstanding the Parties' anticipated submission of an agreement and Order regarding the Relativity data, and the NSCA's contemplated cost savings, the NSCA's obligations to pay the Outstanding Obligations to CrossFit on the Due Dates and in the amounts set forth in this Order are in no way contingent or conditioned on the actual transfer of data to Inventus or the amount of cost savings realized by the NSCA. The NSCA's payment obligations **SHALL NOT BE MODIFIED OR AFFECTED** in any way by (i) any variance in the cost savings the NSCA hopes/expects it will achieve from transferring such data to Inventus, or (ii) the time it takes to transfer the Relativity data to Inventus.  For purposes of clarity, in the event the Relativity data is not transferred to Inventus by June 30, 2020, or the cost savings are less than the NSCA expects (or zero), the first payment of $490,000 will still be due and payable by the NSCA on or before June 30, 2020 (subject to the grace period set forth in Paragraph 9 of this Order);

6.      In addition to the Sanctions Balance, the Outstanding Obligations **SHALL INCLUDE** an additional $20,000 to reimburse CrossFit for attorneys' fees incurred in connection with negotiating and documenting the Payment Plan and related agreements;

7.      Pursuant to the Parties' agreement, and CrossFit's separate agreement with the National Strength and Conditioning Association Foundation (the "NSCA Foundation"), the NSCA's obligations under this Order at all times **SHALL BE GUARANTEED** by the NSCA Foundation, which guarantee is memorialized in that certain Guaranty Agreement (the "Guaranty") attached hereto as Exhibit A.  Pursuant to the Guaranty, the NSCA's payment obligations under this Order and the NSCA Foundation's obligations under the

Guaranty **SHALL BE SECURED** by an irrevocable standby letter of credit issued for the benefit of CrossFit (the "Letter of Credit"), which Letter of Credit **SHALL REMAIN IN PLACE**, irrevocable and in an amount sufficient to cover the guaranteed obligations under this Order until ninety-one (91) days after final payment of the guaranteed obligations, provided there is no intervening bankruptcy or other proceeding initiated by or against the NSCA through which a party could seek to claw back any payment made to CrossFit.  In the event the Letter of Credit has not been issued for the benefit of CrossFit by May 15, 2020, CrossFit may immediately seek a further Order of the Court directing the NSCA to provide CrossFit, by a date certain, with reasonable collateral to secure the NSCA's payment of the Outstanding Obligations.  While the NSCA may make reasonable and good faith objections to the request for collateral based on relevant law and the circumstances, the NSCA may not object that it be relieved of its obligation to provide reasonable collateral commensurate with the Letter of Credit because it is the agreement and the intention of the Parties that the NSCA's payment obligations under this Order be secured by collateral;

8.     For purposes of clarity, the NSCA Foundation is not a party to this Litigation, has not intervened in this Litigation, and has not consented to this Court exercising jurisdiction over the NSCA Foundation.  Nothing in this Order, including, but not limited to, the adoption and approval of the Payment Plan or any reference to the Guaranty, is intended to make the NSCA Foundation a party to this Litigation or exercise jurisdiction over the NSCA Foundation as a third party.  Nor are the terms of this Order intended to modify or alter the terms of the Guaranty or Letter of Credit agreed to by CrossFit and the NSCA Foundation;

9.     The NSCA **SHALL HAVE** a two (2) business day grace period from a Due Date to make the payment that is then due, as required by Paragraph 3 of this Order.  In the event the NSCA fails to make such payment by the end of the grace period, the NSCA **SHALL BE IN DEFAULT** of its obligations under the Payment Plan and this Order.  Upon such default, all unpaid portions of the Outstanding Obligations shall be immediately

due and payable, and CrossFit may collect such amounts under the Guaranty, from the Letter of Credit or by any other procedures allowable by law.  Nothing in this Order is intended to or shall limit the means by which CrossFit may enforce the terms of this Order;

10.     The NSCA's agreement to, timely compliance with, or early performance under, the Joint Motion and this Order **SHALL NOT CONSTITUTE A WAIVER** of the NSCA's right, if any, to appeal the Sanctions Award, any further Orders, the Judgment, or any post-Judgment Orders entered in this Litigation.  Rather, except as to the NSCA's waiver of its right to appeal this Order set forth in Paragraph 11 below, the NSCA reserves its rights, if any, to (i) appeal from, (ii) seek any relief accompanying an appeal from, and (iii) request any remedies associated with an appeal from, any and all appealable Orders, the Judgment, and any post-Judgment Orders entered in this Litigation, including, but not limited to the Sanctions Award, any adverse Judgment, and any post-Judgment Orders entered in this Litigation;

11.     Notwithstanding the foregoing, pursuant to the agreement of the Parties, the NSCA **HAS WAIVED** any right to appeal this Order, including any interlocutory appeal, and **SHALL HAVE NO RIGHT** to seek or obtain a stay of this Order, on an interlocutory basis or otherwise, in connection with any appeal from the Sanctions Award, any other appealable Orders, the Judgment, or any post-Judgment Orders entered in this Litigation, including the final Judgment in this Litigation.  The NSCA is further **PROHIBITED** from arguing for or otherwise seeking a stay, modification, or forbearance of enforcement of any term or condition of this Order, including based on the existence of any pending appeal or any claimed right of appeal in this Litigation; and

12.     The terms of this Order **ARE EFFECTIVE** immediately upon entry, and, in the event of any default by the NSCA, CrossFit **SHALL HAVE AN IMMEDIATE**

/ / /

/ / /

/ / /

/ / /

**RIGHT** to enforce the terms of the Payment Plan and this Order by any procedures allowable by law.

      **IT IS SO ORDERED.**

Dated:  April 15, 2020

Hon. Janis L. Sammartino
United States District Judge

14-CV-1191 JLS (KSC)

# EXHIBIT A

## GUARANTY

This Guaranty is entered into as of the Effective Date (defined below) by National Strength and Conditioning Association Foundation, a Colorado non-profit corporation with its principal offices at 1885 Bob Johnson Drive, Colorado Springs, Colorado ("Guarantor"), in favor of CrossFit, Inc., a Delaware corporation with offices at 9999 Businesspark Ave., San Diego, California 92131 ("CrossFit").

## RECITALS

WHEREAS, CrossFit and National Strength and Conditioning Association, a Colorado corporation with its principal offices at 1885 Bob Johnson Drive, Colorado Springs, Colorado ("NSCA"), are parties to pending litigation in the United States District Court for the Southern District of California (the "Court") entitled *CrossFit, Inc. v. National Strength and Conditioning Association*, Case No. 14-cv-01191-JLS-KSC (the "Litigation");

WHEREAS, on December 4, 2019, the Court issued an order (the "Sanctions Award") in the Litigation directing, among other things, that the NSCA pay to CrossFit monetary sanctions in the amount of $3,997,868.66 (the "Total Sanctions");

WHEREAS, on January 16, 2020, the Court issued a further order in the Litigation directing the NSCA to pay $1,500,000.00 of the Total Sanctions to CrossFit on or before January 31, 2020;

WHEREAS, on January 29, 2020, the NSCA paid $1,500,000.00 of the Total Sanctions to CrossFit, and on April 9, 2020 the NSCA paid an additional $490,000.00 of the Total Sanctions to CrossFit, leaving a balance owing to CrossFit under the Sanctions Award in the amount of $2,007,868.66 (the "Sanctions Balance");

WHEREAS, the NSCA thereafter requested CrossFit to agree to accept payment of the Sanctions Balance in the form of three (3) installment payments as follows (the "Payment Plan"): two (2) payments of $490,000.00 each due on or before each of June 30, 2020 and September 30, 2020, with the remaining unpaid balance of the Sanctions Balance due on or before December 31, 2020;

WHEREAS, CrossFit agreed to the Payment Plan, subject to various conditions precedent, including (i) that CrossFit and the NSCA agree upon the terms of, and submit to the Court for entry, a stipulated order memorializing the Payment Plan and other terms and conditions negotiated by the parties (the "Stipulated Order"), (ii) that Guarantor shall have executed and delivered to CrossFit this Guaranty of the obligations of the NSCA under the Payment Plan and Stipulated Order, and (iii) that Guarantor shall have obtained issuance of a standby letter of credit acceptable to and for the benefit of CrossFit to secure the guarantied obligations of the NSCA and Guarantor under the Payment Plan, the Stipulated Order and this Guaranty; and

WHEREAS, the Guarantor is a non-profit corporation whose mission includes the promotion of the education of members of NSCA, its sole member,and the Guaranty is within the permissible purposes of Guarantor.

## AGREEMENT

NOW, THEREFORE, for valuable consideration received, in consideration of the premises and the agreements herein, and for the express purpose and as a material condition of inducing CrossFit to agree to the Payment Plan and the terms of the Stipulated Order, Guarantor hereby agrees with CrossFit as follows:

SECTION 1.   Definitions.  Reference is hereby made to the Stipulated Order for a statement of the terms thereof.  All terms used in this Guaranty which are defined in the Stipulated Order and not otherwise defined herein shall have the same meanings herein as set forth in the Stipulated Order.  The "Effective Date" of this Guaranty shall be the date of entry of the Stipulated Order.

SECTION 2.   Guaranty of Obligations.  Guarantor hereby (a) irrevocably, absolutely and unconditionally guaranties the prompt payment by the NSCA, as and when due and payable (whether by scheduled maturity, acceleration, demand or otherwise), of all amounts now or hereafter owing under the Stipulated Order (the "Guarantied Obligations"), including (i) the Sanctions Balance, (ii) all interest on the Sanctions Balance (including interest accruing on or after the filing of any petition in bankruptcy, reorganization, liquidation or similar insolvency proceeding affecting the NSCA, whether or not a claim for post-petition interest is allowed in such proceeding), (iii) reasonable attorneys' fees and expenses, whether expressly payable to CrossFit under the Stipulated Order or otherwise, and whether accruing before or subsequent to the filing of a petition initiating a bankruptcy, reorganization, liquidation or similar insolvency proceeding affecting the NSCA (notwithstanding the operation of the automatic stay under Section 362(a) of Title 11 of the United States Code), and (iv) the due performance and observance by the NSCA of its other obligations set out in the Stipulated Order; and (b) agrees to pay any and all reasonable expenses (including attorneys' fees and expenses) incurred by CrossFit in enforcing its rights under this Guaranty, which shall be due and payable upon demand by CrossFit.  Without limiting the generality of the foregoing, Guarantor's liability shall extend to all amounts that would constitute part of the Guarantied Obligations and owed by the NSCA under the Stipulated Order but for the fact that such document is unenforceable or not allowable due to the existence of a bankruptcy, reorganization, liquidation or similar insolvency proceeding relating to or affecting the NSCA.

SECTION 3.   Letter of Credit.

(a)    It is the intention of the Parties that Guarantor's performance under this Guaranty will be collateralized at all times by an irrevocable standby letter of credit (the "Letter of Credit") issued by a financial institution acceptable to CrossFit (the "Issuer"), in the amount of $2,027,868.66 (the "Maximum Stated Amount").  Guarantor shall take all reasonable steps to ensure the Letter of Credit is issued for the benefit of CrossFit as soon as practicable after execution of this Guaranty, but in no event later than May 15, 2020.

- 2 -

(b)     The Letter of Credit shall provide for draws by CrossFit in the full amount of the unpaid Guarantied Obligations upon delivery to Issuer by CrossFit or its counsel only of a certification sworn under penalty of perjury (the "Draw Certification") (i) that an Event of Default has occurred under the Stipulated Order and/or this Guaranty, and (ii) the unpaid amount of the Guarantied Obligations then due and owing.  The Letter of Credit shall remain irrevocable and available as collateral for the Guarantied Obligation in the full Maximum Stated Amount until CrossFit provides notice to the Issuer that the Guarantied Obligations have been satisfied in cash in full (the "Satisfaction Notice").  CrossFit shall provide the Satisfaction Notice to the Issuer upon the passage of ninety-one (91) days after CrossFit has received, in available funds, final payment from the NSCA of all Guarantied Obligations.

(c)     Guarantor agrees that in the event Guarantor receives notice that the Letter of Credit will not be renewed, Guarantor will immediately secure a replacement letter of credit acceptable to CrossFit on the same terms and conditions set forth herein.  In the event Guarantor fails to obtain such replacement Letter of Credit prior to the date that is five (5) business days prior to expiration of the existing Letter of Credit, an Event of Default shall have occurred under this Guaranty and CrossFit shall be entitled to draw on the Letter of Credit an amount equal to the full unpaid Guarantied Obligations.  The Draw Certification and Satisfaction Notice may be delivered by email to the Issuer at an email address to be provided by Issuer, with a copy by email to Guarantor, in .pdf format, such that original signatures will not be required; provided, however, that CrossFit or its counsel shall maintain the original Draw Certification and Satisfaction Notice for a period of not less than one year following submission to the Issuer.

(d)     Notwithstanding the provisions of Sections 3(b) and 3(c) above, to the extent the Issuer requires reasonable modifications of Sections 3(b) and 3(c) as a condition to issuance of the Letter of Credit, the Parties will negotiate such modifications in good faith and execute an amendment of this Guaranty to memorialize such terms; provided, however, that Guarantor understands and agrees that no modifications shall be made to the requirement in this Section 3 that the Letter of Credit remain irrevocable and available as collateral for the Guarantied Obligation in the full Maximum Stated Amount until ninety-one (91) days after CrossFit has received, in available funds, final payment from the NSCA of all Guarantied Obligations.

SECTION 4.   Events of Default.  In addition to the Event of Defaults under the Stipulated Order and otherwise set forth in this Guaranty, each of the following shall constitute Events of Default under this Guaranty, the occurrence of which shall cause all unpaid Guarantied Obligations to become immediately due and payable, and entitle CrossFit to pursue collection of such amounts, and all other amounts due under this Guaranty, from Guarantor, the Letter of Credit or both:

(a)     Guarantor breaches any of the representations, warranties, covenants and other promises made by Guarantor under this Guaranty, other than as set forth in Section 4(f) below;

(b)     Guarantor fails to obtain issuance of a replacement letter of credit as set forth in the preceding Section 3;

- 3 -

(c)      Guarantor fails to take action required by the Issuer to maintain the Letter of Credit as required in the preceding Section 3;

(d)      Guarantor takes any action to attempt to revoke the Letter of Credit or disclaim CrossFit's rights thereunder;

(e)      Guarantor takes any other action that could reasonably hinder, delay, impede or obstruct in any way CrossFit's rights under the Stipulated Order, this Guaranty or the Letter of Credit; or

(f)      Guarantor fails to obtain issuance of a Letter of Credit by May 15, 2020, and the NSCA fails to provide CrossFit any alternative collateral that may be directed by the Court pursuant to Section 7 of the Stipulated Order.

SECTION 5.   Guarantor's Obligations Unconditional.

(a)      Guarantor hereby guaranties that the Guarantied Obligations will be paid strictly in accordance with the terms of the Stipulated Order, regardless of any law, regulation or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of CrossFit with respect thereto, subject to the provisions of Section 14 below.  Guarantor agrees that this Guaranty constitutes an absolute and unconditional guaranty of payment when due and not merely of collection, and waives any right to require that any resort be made by CrossFit to attempt collection from the NSCA or any of its assets.  Guarantor acknowledges that its liability hereunder is primary and that CrossFit, at CrossFit's option, may join Guarantor in any action or proceeding commenced by CrossFit against the NSCA in connection with or based upon the Stipulated Order or any term, covenant or condition thereof, and recovery may be had against Guarantor in such action or proceeding or in any independent action or proceeding against Guarantor, without CrossFit first asserting, prosecuting, or exhausting any remedy or claim against the NSCA.  Guarantor further acknowledges that the obligations of Guarantor under this Guaranty are independent of the obligations of the NSCA under the Stipulated Order, and a separate action or actions may be brought and prosecuted against Guarantor to enforce this Guaranty, irrespective of whether any action is taken or brought against the NSCA or whether the NSCA is joined in any such action against Guarantor, or vice-versa.

(b)      The liability of Guarantor hereunder shall be absolute and unconditional, irrespective of: (i) any lack of validity or enforceability of the Stipulated Order or any agreement or instrument relating thereto; (ii) any change in the time, manner or place of payment of, or in any other term in respect of, all or any of the Guarantied Obligations, or any other amendment or waiver of or consent to any departure from the Stipulated Order; (iii) any release or amendment or waiver of or consent to any departure from any other guaranty for all or any of the Guarantied Obligations; (iv) the existence of any claim, set-off, defense or other right that Guarantor may have at any time against any person, including, without limitation, CrossFit; (v) any extension, renewal, settlement, compromise, waiver or release in respect of any obligation of the NSCA under the Stipulated Order, by operation of law or otherwise; (vi) any change in the existence, structure, management or ownership of the NSCA, or any insolvency, bankruptcy, reorganization, liquidation or similar proceeding (an "Insolvency Proceeding") affecting the NSCA or its assets, or any resulting release or discharge of any obligation of the NSCA; (vii) any

- 4 -

provision of any applicable law or regulation purporting to prohibit the payment by the NSCA of the principal of or interest on the Sanctions Balance or any other amount payable by the NSCA under the Stipulated Order; (viii) any appeal by the NSCA of the Sanctions Award or any other order or judgment issued in the Litigation; (ix) any claim of fraudulent inducement; or (x) any other circumstance which might otherwise constitute a defense available to, or a discharge of, the NSCA.

(c)     This Guaranty (i) is a continuing guaranty and shall remain in full force and effect until the satisfaction in full of the Guarantied Obligations under the Stipulated Order and the payment of the other expenses to be paid by Guarantor pursuant hereto; and (ii) shall continue to be effective or shall be reinstated, as the case may be, if at any time any payment of any of the Guarantied Obligations is rescinded or must otherwise be returned by CrossFit upon the insolvency, bankruptcy or reorganization of the NSCA or otherwise, all as though such payment had not been made.

(d)     No delay on the part of CrossFit in exercising any right hereunder or under the Stipulated Order shall operate as a waiver of such right or of any other right of CrossFit as against Guarantor, nor shall any delay, omission or waiver on any one occasion be deemed to be a bar to or a waiver of the same or any other right on any further occasion.

(e)     If CrossFit shall be obligated by any bankruptcy, insolvency or other legal proceedings to repay to Guarantor or to the NSCA, or to any trustee, receiver or other representative of any of them, any amounts previously paid by the NSCA or by Guarantor, this Guaranty shall be deemed reinstated to the extent of that repayment made by CrossFit, unless such obligation arises from vacatur, reversal, or other amendment of the Stipulated Order. CrossFit shall not be required to litigate or otherwise dispute its obligation to make such repayments if, in good faith and on the advice of counsel, CrossFit believes that such obligation exists.

(f)     Guarantor's obligations hereunder shall not be subject to any reduction, limitation, impairment or termination for any reason, including, without limitation, any claim of waiver, release, surrender, attention or compromise, and shall not be subject to, and Guarantor hereby irrevocably waives, any defense or set-off, counterclaim, recoupment or termination whatsoever by reason of the invalidity, illegality or unenforceability of any of Guarantor's obligations hereunder or otherwise, except for defenses or rights of set-off based on prior payment of the Guarantied Obligations or arising from vacatur, reversal, or other amendment of the Stipulated Order.

(g)     All payments due under this Guaranty and the Letter of Credit shall be made in lawful money of the United States of America in immediately available funds free and clear of, and without deduction or withholding for or on account of, any taxes, levies, fees, imposts, duties, expenses, commissions, withholdings, assessments or other charges, or any penalties, fines, additions to tax or interest thereon (collectively, "Taxes") to the extent that any such Taxes would reduce the amount CrossFit would otherwise have received had the NSCA made such payment.

SECTION 6.   <u>Waivers</u>.

(a)   Guarantor hereby waives (a) promptness and diligence; (b) notice of acceptance and notice of the incurrence of any Guarantied Obligation by the NSCA; (c) notice of any actions taken by CrossFit or the NSCA under the Stipulated Order or any other agreement or instrument relating thereto; (d) all other notices, demands and protests, and all other formalities of every kind in connection with the enforcement of the Guarantied Obligations or of the obligations of Guarantor hereunder, the omission of or delay in which, but for the provisions of this Section 6, might constitute grounds for relieving Guarantor of its obligations hereunder; (e) any right to compel or direct CrossFit to seek payment or recovery of any amounts owed under this Guaranty from any one particular fund or source; (f) any requirement that CrossFit protect, secure, perfect or insure any security interest in any property offered as collateral for the Guarantied Obligations or exhaust any right or take any action against the NSCA or any other person or any collateral; and (g) any other defense available to Guarantor, except for defenses or rights of set-off based on prior payment of the Guarantied Obligations or arising from vacatur, reversal, or other amendment of the Stipulated Order.  Guarantor agrees that CrossFit shall have no obligation to marshal any assets in favor of Guarantor or against or in payment of any or all of the Guarantied Obligations, except that any money that CrossFit collects from NSCA shall first be applied to the satisfaction of NSCA's obligations under the Stipulated Order and Sanctions Award before being applied to any other obligation NSCA may have to CrossFit. For purposes of clarity, CrossFit is not required to notify Guarantor of any of the following events, and Guarantor will not be released or exonerated from its obligations under this Guaranty if it is not notified of the following events: (i) the NSCA's failure to pay timely any amount owed under the Stipulated Order or to pay or perform any other Guarantied Obligations; (ii) the NSCA's failure to perform any other obligation under the Stipulated Order; (iii) any adverse change in the NSCA's financial condition or business; or (iv) all other notices to which it might be entitled. Without limiting the foregoing or any other waiver or provision of this Guaranty, Guarantor waives, to the maximum extent permitted by law, all benefits or defenses directly or indirectly arising under California Civil Code §§ 2787, 2799, 2808, 2815, 2819, 2820, 2821, 2822, 2838, 2839, 2845, 2847, 2848, 2849, 2850 and 2855, Chapter 2 of Title 14 of the California Civil Code, California Commercial Code §§ 1103 and 9501 *et seq.*, and California Code of Civil Procedure §§ 580a, 580b, 580c, 580d and 726, or any similar laws of any other applicable jurisdiction. The reference herein to certain provisions of California law is not intended to imply their specific application to this Guaranty.

(b)   Guarantor hereby expressly waives any right, if any, to contest enforcement of CrossFit's rights under this Guaranty and rights under and to the Letter of Credit based on the commencement or pendency of any appeal of the Sanctions Award, the Stipulated Order or any other order or judgment issued in the Litigation (an "<u>Appeal</u>"), except that Guarantor does not waive any right to any defense based on the vacatur, reversal, or other amendment of the Sanctions Award or the Stipulated Order.  Guarantor further agrees and acknowledges that the Stipulated Order is not subject to Appeal, and the NSCA has expressly waived any rights, if any, to appeal the Stipulated Order.

(c)   In the event the NSCA becomes subject to a voluntary or involuntary Insolvency Proceeding, CrossFit may immediately pursue its rights under this Guaranty, even

though CrossFit may be stayed from accelerating or collecting the Guarantied Obligations from the NSCA.

SECTION 7.   <u>Subrogation</u>.  Guarantor waives and will not exercise any rights which it may acquire against the NSCA by way of subrogation, indemnification, reimbursement or contribution hereunder, by any payment made by it hereunder or otherwise, including any rights under California Civil Code §§ 1432, 2846, 2847, 2848 and 2849 or Section 509 of Title 11 of the United States Code, until such date after all Guarantied Obligations and all other amounts and expenses to be paid by Guarantor pursuant to this Guaranty shall have been satisfied in full in cash payment to CrossFit.  If any amount shall be paid to Guarantor on account of such rights at any time when all of the Guarantied Obligations and all such other expenses shall not have been paid in full in cash to CrossFit, such amount shall be held in trust for the benefit of CrossFit, shall be segregated from the other funds of Guarantor, and shall forthwith be paid over to CrossFit to be applied in whole or in part by CrossFit against the Guarantied Obligations, whether matured or unmatured, and all such other expenses in accordance with the terms of the Stipulated Order and this Guaranty.

SECTION 8.   <u>Representations and Warranties</u>.  Guarantor hereby represents and warrants, as of the Effective Date as follows:

(a)     Guarantor has the legal capacity to execute, deliver and perform this Guaranty and to consummate the transactions contemplated hereby, and the individual executing this Guaranty on behalf of Guarantor has been duly-authorized by Guarantor and has the requisite actual authority to bind Guarantor to the terms of this Guaranty and the promises made herein;

(b)     The execution, delivery and performance by Guarantor of this Guaranty is authorized under Guarantor's Articles of Incorporation, Bylaws, and other documents governing the creation and operation of Guarantor as a non-profit corporation under Colorado law;

(c)     The execution, delivery and performance by Guarantor of this Guaranty, (i) does not and will not contravene any applicable law (including any law applicable to non-profit corporations organized under Colorado law), rule, regulation, judgment, order or decree, or any contractual restriction binding on or otherwise affecting Guarantor or any of its property, and (ii) does not and will not result in or require the creation of any lien, security interest, encumbrance upon or with respect to any of Guarantor's property, other than with respect to any lien arising on Guarantor's property to support the Letter of Credit;

(d)     The execution, delivery and performance by Guarantor of this Guaranty does not constitute a voidable transfer or conveyance of property under Section 5 of Title 11 of the United States Code, the Uniform Voidable Transactions Act (as adopted under applicable state law), or any similar state or Federal law governing creditor rights and/or voidable transactions;

(e)     No authorization, approval or license from, filing with or notice to, and no other action by, any governmental authority or any other person is required in connection with the due execution, delivery and performance by Guarantor of this Guaranty;

- 7 -

(f)     This Guaranty is a legal, valid and binding obligation of Guarantor, enforceable against Guarantor, its assets and the Letter of Credit in accordance with its terms;

(g)     There is no pending or, to Guarantor's knowledge, threatened action, suit, proceeding or investigation against or affecting Guarantor before any court, any governmental authority, agency or official or any arbitrator which is reasonably likely to have a material adverse effect on Guarantor's ability to fulfill its obligations under this Guaranty;

(h)     Guarantor is not in violation of (i) any applicable law, rule, regulation, judgment, order or decree or (ii) any material term of any agreement, instrument or other document binding on or otherwise affecting Guarantor or any of Guarantor's property;

(i)     Based on the financial condition of Guarantor as of the Effective Date, both before and after incurring the obligations and liabilities incurred under this Guaranty, (i) the fair saleable value of Guarantor's assets exceeds the amount that will be required to be paid on or in respect of Guarantor's existing debts and other liabilities (including known contingent liabilities) as they mature, (ii) Guarantor's assets do not constitute unreasonably small capital to carry on its business as now conducted and as proposed to be conducted, including its capital needs taking into account the particular capital requirements of the business conducted by Guarantor, projected capital requirements and capital availability thereof, (iii) the current cash flow of Guarantor, were it to liquidate all of its assets, after taking into account all anticipated uses of the cash, would be sufficient to pay all amounts on or in respect of its liabilities when such amounts are required to be paid, (iv) Guarantor does not intend to incur debts beyond its ability to pay such debts as they mature (taking into account the timing and amounts of cash to be payable on or in respect of its debt), and (v) Guarantor has no knowledge of any facts or circumstances which lead it to believe that it will commence an Insolvency Proceeding within one year from the Effective Date;

(j)     Based on the information known to or available to Guarantor as of the Effective Date, Guarantor has no knowledge of any facts or circumstances which lead it to believe the NSCA intends to or will commence an Insolvency Proceeding within one year from the Effective Date;

(k)     Guarantor is not entitled to immunity from judicial proceedings;

(l)     All federal and state income and material local and material foreign tax returns and other reports required by applicable law to be filed by Guarantor have been filed, and all taxes, assessments and other governmental charges imposed upon Guarantor or any property of Guarantor and which have become due and payable on or prior to the date hereof have been paid, except to the extent contested in good faith by proper proceedings which stay the imposition of any penalty, fine or lien resulting from the non-payment thereof and with respect to which adequate reserves have been set aside for the payment thereof;

(m)     CrossFit has not made any representation to Guarantor as to the creditworthiness of the NSCA and Guarantor is delivering this Guaranty based solely on Guarantor's independent investigation of (or decision not to investigate) the financial condition of the NSCA and is not relying on any information furnished by CrossFit;

(n)      Guarantor now has and will continue to have independent means of obtaining information concerning the affairs, financial condition and business of the NSCA, and has no need for, or right to obtain from CrossFit, any credit or other information concerning the affairs, financial condition or business of the NSCA that may come under the control of CrossFit; and

(o)      Guarantor has copies of and is fully familiar with the terms and conditions of the Sanctions Award, the Stipulated Order and Payment Plan therein.

SECTION 9.   <u>Affirmative Covenants</u>.  So long as any of the Guarantied Obligations remain outstanding, and continuing until CrossFit's delivery of the Satisfaction Notice, Guarantor will, unless CrossFit shall otherwise consent in writing:

(a)      furnish to CrossFit, promptly after the commencement thereof but in any event not later than three (3) business days after service of process with respect thereto on, or the obtaining of knowledge thereof by, Guarantor, notice of each action, suit or proceeding before any court or other governmental authority or other regulatory body or any arbitrator with respect to or affecting Guarantor;

(b)      comply in all material respects with all applicable laws, rules, regulations, judgments, treaties, orders and decrees, such compliance to include, without limitation, (i) paying before the same become delinquent all taxes, assessments and governmental charges or levies imposed upon Guarantor or upon its income or profits or upon any of its property, and (ii) paying all lawful claims which if unpaid might become a lien, interest or encumbrance upon any of Guarantor's property, except to the extent contested in good faith by proper proceedings which stay the imposition of any penalty, fine, lien, encumbrance or interest resulting from the non-payment thereof and with respect to which adequate reserves have been set aside for the payment thereof;

(c)      after the occurrence and during the continuance of an Event of Default under the Stipulated Order, permit CrossFit or any agents or representatives thereof at any reasonable time and from time to time to examine and make copies of and abstracts from Guarantor's records and books of account; and

(d)      do, execute, acknowledge and deliver, at the sole cost and expense of Guarantor, all such further reasonable acts and assurances as CrossFit may reasonably require from time to time in order to better assure, convey, grant, assign, transfer and confirm unto CrossFit the rights now or thereafter intended to be granted to CrossFit under this Guaranty or any other instrument under which Guarantor may be or may hereafter become bound to effect the intention or facilitate the performance of the terms of this Guaranty.

SECTION 10. <u>Negative Covenants</u>.  So long as any of the Guarantied Obligations remain outstanding, and continuing until CrossFit's delivery of the Satisfaction Notice, Guarantor shall not:

(a)      Participate in the commencement of any Insolvency Proceeding relating to or affecting the NSCA or its assets;

- 9 -

(b)     Commence, or consent to the commencement, of any Insolvency Proceeding relating to or affecting Guarantor or its assets;

(c)     Claim judicial immunity in the event CrossFit brings any suit, action or proceeding in California or any other jurisdiction to enforce any obligation or liability of Guarantor arising, directly or indirectly, out of or relating to this Guaranty;

(d)     Assert any defense to enforcement of CrossFit's rights under and with respect to the Letter of Credit based on the commencement or pendency of any Insolvency Proceeding relating to or affecting the NSCA or Guarantor, or their respective assets, it being expressly agreed by Guarantor that the Letter of Credit does not constitute property of Guarantor or any estate created by virtue of any such Insolvency Proceeding;

(e)     Assert or pursue any claim, cause of action, right, security interest, mortgage, lien, encumbrance, or other interest, whether at law or equity, against the NSCA or its assets which would, under any circumstances, affect the NSCA's ability to timely pay the Guarantied Obligations to CrossFit or otherwise adversely affect CrossFit's rights, it being expressly agreed by Guarantor that such asserted interest of Guarantor is hereby expressly subordinated to the interests of CrossFit in pursuing its rights against the NSCA and its assets with respect to the Guarantied Obligations;

(f)     Assert any defense to enforcement of CrossFit's rights under and with respect to this Guaranty or the Letter of Credit based on the commencement or pendency of an Appeal; nor

(g)     Without the express consent of CrossFit, (i) accept payment or transfer from the NSCA of any funds or other assets, or (ii) encourage, assist with or consent to the payment or transfer by the NSCA of any funds or other assets to any third person other than CrossFit, except with respect to transfers made in the ordinary course of the NSCA's business or relating to this Guaranty, the Stipulated Order or the Letter of Credit.

SECTION 11. <u>Notices</u>.  Except as expressly stated in this Guaranty, all notices and other communications provided for hereunder shall be in writing and shall be mailed, sent by overnight courier or personally delivered to the parties' respective addresses in the preamble hereto or, in the event a party desires notice at a different address, to such other address as shall be designated by such party in a written notice to the other party, complying as to delivery with the terms of this Section 11.  All such notices and other communications shall be effective (i) if mailed, when received or three (3) business days after mailing, whichever occurs first, (ii) if sent by overnight courier, upon delivery, and (iii) if personally delivered, upon delivery.

SECTION 12. <u>Consent to Jurisdiction</u>.  Guarantor hereby irrevocably and unconditionally: (a) submits for Guarantor and its property in any action, suit or proceeding relating to this Guaranty, or for recognition and enforcement of any judgment in respect thereof, to the exclusive general jurisdiction of the courts of the State of California located in the County of San Diego, the courts of the United States of America for the Southern District of California, and appellate courts thereof, respectively; (b) agrees that any such action, suit or proceeding shall be brought exclusively in such courts and waives any objection that Guarantor may now or

- 10 -

hereafter have to the venue of any such action, suit or proceeding in any such court or that such action, suit or proceeding was brought in an inconvenient court and agrees not to plead or claim the same; (c) irrevocably consents to the service of any and all process in any such action, suit or proceeding by the mailing of copies of such process by registered or certified mail (or any substantially similar form of mail), postage prepaid, to Guarantor at its address set forth in the preamble hereto or at such other address of which CrossFit shall have been notified in accordance with Section 11 hereof; (d) to the extent that Guarantor has or hereafter may acquire any immunity from jurisdiction of any court or from any legal process (whether through service or notice, attachment prior to judgment, attachment in aid of execution, execution or otherwise) with respect to itself or its property, Guarantor hereby irrevocably waives such immunity in respect of its obligations under this Guaranty; (e) agrees that nothing herein shall affect the right of CrossFit to effect service of process in any other manner permitted by law or shall limit the right of CrossFit to sue in any other jurisdiction; (f) waives any right it may have to claim or recover in any legal action or proceeding referred to in this Section 12 any special, exemplary, punitive or consequential damages; and (g) agrees that Guarantor's submission to jurisdiction and consent to service of process by mail is made for the express benefit of CrossFit. Notwithstanding the foregoing, final judgment against Guarantor in any such action, suit or proceeding shall be conclusive and may be enforced in other jurisdictions (i) by suit, action or proceeding on the judgment, a certified or true copy of which shall be conclusive evidence of the fact and of the amount of any indebtedness or liability of Guarantor therein described; or (ii) in any other manner provided by or pursuant to the laws of such other jurisdiction, provided that CrossFit may at its option bring suit, or institute other judicial proceedings against Guarantor or any of the Guarantor's assets in any state or federal court of the United States or of any country or place where either Guarantor or such assets may be found.

SECTION 13. <u>Waiver of Jury Trial</u>.  GUARANTOR HEREBY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM CONCERNING ANY RIGHTS UNDER THIS GUARANTY OR UNDER ANY AMENDMENT, WAIVER, CONSENT, INSTRUMENT, DOCUMENT OR OTHER AGREEMENT DELIVERED OR WHICH IN THE FUTURE MAY BE DELIVERED IN CONNECTION THEREWITH, OR ARISING FROM ANY RELATIONSHIP EXISTING IN CONNECTION WITH THIS GUARANTY, AND AGREES THAT ANY SUCH ACTION, PROCEEDING OR COUNTERCLAIM SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.

SECTION 14. <u>Right to Seek Repayment of Amounts Paid by Guarantor</u>.  In the event the Sanctions Award is vacated, reversed, or amended, in whole or in part, by a final, non-appealable order of a court of competent jurisdiction, Guarantor preserves all rights to pursue repayment from CrossFit of amounts paid to CrossFit under this Guaranty or the Letter of Credit, as the case may be, that exceed any modified amount owed to CrossFit under the Sanctions Award as vacated, reversed or amended.

SECTION 15. <u>Miscellaneous</u>.

(a)     This Guaranty shall (i) be binding on Guarantor and Guarantor's permitted successors and assigns, including any trustee, receiver or other fiduciary appointed in any Insolvency Proceeding affecting or relating to Guarantor, and (ii) inure, together with all rights

- 11 -

and remedies of CrossFit hereunder, to the benefit of CrossFit and its successors, transferees and assigns; provided that, without limiting the generality of clause (ii) of the immediately preceding sentence, none of the rights or obligations of Guarantor hereunder may be assigned or otherwise transferred without the prior written consent of CrossFit (it being understood that any such unauthorized assignment or transfer shall be null and void).

(b)     No amendment of any provision of this Guaranty shall be effective unless it is in writing and signed by Guarantor and CrossFit, and no waiver of any provision of this Guaranty, and no consent to any departure by Guarantor therefrom, shall be effective unless it is in writing and signed by CrossFit, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

(c)     All remedies afforded to CrossFit by reason of this Guaranty are separate and cumulative remedies and it is agreed that no one remedy, whether exercised by CrossFit or not, shall be deemed to be in exclusion of any other remedy available to CrossFit and shall not limit or prejudice any other legal or equitable remedy which CrossFit may have.

(d)     No failure on the part of CrossFit to exercise, and no delay in exercising, any right hereunder or under the Stipulated Order shall operate as a waiver thereof, nor shall any single or partial exercise of any right preclude any other or further exercise thereof or the exercise of any other right.  The rights and remedies of CrossFit provided in this Guaranty and in the Stipulated Order are cumulative and are in addition to, and not exclusive of, any rights or remedies provided by law.  The rights of CrossFit under this Guaranty and the Stipulated Order against any party thereto are not conditional or contingent on any attempt by CrossFit to exercise any of its rights under any other agreement against such party or against any other person.

(e)     Any provision of this Guaranty which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining portions hereof or thereof or affecting the validity or enforceability of such provision in any other jurisdiction.

(f)     This Guaranty shall be governed by and construed in accordance with the internal laws of the State of California, without regard to principles of conflicts of law, and such laws shall apply in any action or proceeding arising out of or under this Guaranty.

(g)     This Guaranty, Stipulated Order and the Letter of Credit represent the entire agreement of Guarantor and CrossFit with respect to the subject matter hereof, and there are no promises, undertakings, representations or warranties by CrossFit relative to the subject matter thereof not expressly set forth or referred to herein or therein.

(h)     Guarantor hereby acknowledges that (i) Guarantor has had full and ample opportunity to be advised by counsel in the negotiation, execution and delivery of this Guaranty, and (ii) Guarantor has been represented by counsel in such negotiation, execution and delivery of this Guaranty.

(i)     All of the obligations of Guarantor under this Guaranty are several with respect to the NSCA's obligations under the Stipulated Order.

- 12 -

(j)      Section headings used in this Guaranty are for convenience only.  They are not a part of this Guaranty and shall not be used in construing it.  Wherever appropriate in this Guaranty, the singular shall be deemed to also refer to the plural, and the plural to the singular.

(k)      This Guaranty may be executed in counterparts, each of which shall be deemed an original, but all of which, when taken together, shall be deemed one and the same agreement.  Delivery of an executed counterpart of a signature page of this Guaranty by facsimile, .pdf or other electronic transmission shall be effective as delivery of a manually executed counterpart of this Guaranty.

(l)      In the event of any litigation arising under this Guaranty, the prevailing party shall recover its reasonable attorneys' fees and costs of collection.

[Signature Page Follows]

- 13 -

IN WITNESS WHEREOF, Guarantor has executed this Guaranty as of the Effective Date indicated above in this Guaranty.

NATIONAL STRENGTH AND CONDITIONING ASSOCIATION FOUNDATION

By: _Carissa A Gump_____

    Name:  Carissa Gump
    Title:  Executive Director
    Duly Authorized on behalf of Guarantor,
    National Strength and Conditioning Association
    Foundation

**Accepted and Agreed:**

CROSSFIT, INC.

DocuSigned by:

Marshall Brenner

By: ____FF97D8EDBF50485..._____

    Name:   Marshall Brenner
    Title:   General Counsel
    Duly Authorized on behalf of
    CrossFit, Inc.

31726303v.3